UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CLAIRE R. KELLY,
JENNIFER CHOE-GROVES, JUDGES

———————————————————————————— :
                                                                   :
IN RE SECTION 301 CASES                     :  Court No. 21-00052-3JP
                                                                   :
————————————————————————————:

## **DEFENDANTS' MASTER ANSWER**

Pursuant to the Court's Standard Procedure Order No. 21-01 (Order) of February 10, 2021, the United States respectfully responds to the Court's directive that it submit a "master answer" that incorporates defenses in law or fact to claims made in the Section 301 Cases.  As guided by the Order, this answer does "not attempt to provide a cross-reference to particular paragraphs or counts of the various complaints."  Rather, it provides "generic" responses to "allegations typically included in claims" in the Section 301 Cases, not an exhaustive catalog of responses to all claims raised in the more than 3,500 individual cases.  For example, many complaints include allegations concerning exclusions to the Section 301 tariffs, which may be case specific, and are therefore not included in the master answer.

We reserve the right to provide additional responses to allegations and claims that are not addressed in this master answer.  In addition, none of our answers below constitutes an admission that any plaintiff has stated a claim for relief, consistent with the Court's instruction that this pleading "will be considered without prejudice to the defendants raising any arguments concerning any plaintiff's failure to state a claim upon which relief can be granted."  *Id.*

After responding to the "typical" claims below, we list our anticipated defenses, in accordance with the Court's instruction that we incorporate "defenses in law or fact to claims made against [defendants] in the Section 301 Cases." Order at 2. We anticipate developing these defenses more fully in forthcoming dispositive briefing, and we respectfully reserve the right to raise additional defenses at that time, after the test cases have been chosen, including, but not limited to, defenses related to jurisdiction and/or timeliness.

## ALLEGATIONS

### A.    <u>Background Factual Allegations Regarding The Section 301 Investigation</u>

1.  On August 14, 2017, the President directed the United States Trade Representative (USTR) to consider investigating China's unfair trade practices pursuant to Section 301 of the Trade Act of 1974 (Trade Act). *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017). According to the President, certain Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

    <u>Response</u>:  Admits to the extent supported by the cited document and the administrative record, which are the best evidence of their contents; otherwise denies.

2.  On August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b)] of the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

Response:  Admits to the extent supported by the cited notice and the administrative record, which are the best evidence of their contents; otherwise denies.

3.  On March 22, 2018, USTR released its findings that certain acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are "unreasonable or discriminatory and burden or restrict U.S. commerce."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018) at 17, *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.

Response:  Admits to the extent supported by the cited document and the administrative record, which are the best evidence of their contents; otherwise denies.

4.  USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171.  In its report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

Response:  Admits to the extent supported by the cited document and the administrative record, which are the best evidence of their contents; otherwise denies.

5.  On the same date, USTR published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. USTR also indicated that, consistent with a directive from President Trump, it would "propose additional tariffs" of 25 percent *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies."  *Id.*; *see also Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

Response:  Admits to the extent supported by the cited documents and the administrative record, which are the best evidence of their contents; otherwise denies.

6. Between April and August 2018, defendants undertook a series of actions in response to the 301 investigation, which ultimately led to a $34 billion trade action (List 1) and a $16 billion trade action (List 2).  USTR issued List 1 on June 20, 2018 and List 2 on August 16, 2018.  *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018); *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823 (Aug. 16, 2018).  Neither list is at issue in the 301 litigation.

Response:  Admits to the extent supported by the cited notices and the administrative record, which are the best evidence of their contents; otherwise denies.

7. In April 2018, shortly after the President directed USTR to consider imposing duties on $50 billion in Chinese products, China threatened to impose retaliatory duties on the same value of imports from the United States.  In response, the President "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation."  THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional -proposed-section-301-remedies/.

Response:  Admits to the extent supported by the cited document and the administrative record, which are the best evidence of their contents; otherwise denies.

8. When USTR finalized List 1 in mid-June 2018, the President warned China that he would consider imposing additional tariffs on Chinese goods if China retaliated against the United States.  *E.g.*, Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion in Chinese Goods*, THE HILL (June 15, 2018), *available at* http://thehill.com/homenews/administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods.

Response:  Admits to the extent supported by the administrative record, which is the best evidence of its contents; otherwise denies.

9. On July 6, 2018 and August 23, 2018, China retaliated by imposing 25 percent *ad valorem* tariffs on $50 billion in U.S. goods, implemented in two stages of $34

billion and $16 billion on the same dates that the United States began collecting its own 25 percent tariffs under List 1 and List 2.

Response:  Admits to the extent supported by the administrative record, which is the best evidence of its contents; otherwise denies.

**B.     Background Factual Allegations Regarding The List 3 Trade Action**

10. On June 18, 2018, the President directed USTR to consider whether the United States should impose additional duties with an estimated trade value of $200 billion, a decision that was motivated by China's threatened retaliatory "tariffs on $50 billion worth of United States exports."  THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/.  On the same date, USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0.

Response:  Admits to the extent supported by the cited documents and the administrative record, which are the best evidence of their contents; otherwise denies.

11. On July 17, 2018, USTR issued a notice proposing to modify the initial 301 action by "maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty" on products from China with an annual trade value of approximately $200 billion.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018) (July 2018 Request for Comments). USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate."  *Id*. at 33,609.

Response:  Admits to the extent supported by the cited notice and the administrative record, which are the best evidence of their contents; otherwise denies.

12. In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action.  *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in

the investigation and its refusal to change its acts, policies, and practices"). USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.*; *see also id.* (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *Id.*

<u>Response:</u>  Admits to the extent supported by the cited notice and the administrative record, which are the best evidence of their contents; otherwise denies.

13. USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory duties motivated its proposed action. Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practices." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

<u>Response:</u>  Admits to the extent supported by the cited documents and the administrative record, which are the best evidence of their contents; otherwise denies.

14. On July 10, 2018, President Trump suggested that the United States' trade imbalance with China supported the decision. @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PMEDT), https://twitter.com/realDonaldTrump/status/1005982266496094209. Over the following weeks, President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations. *See, e.g.*, @realDonaldTrump, Twitter (July 20, 2018, 8:43 AM EDT), https://twitter.com/realDonaldTrump/status/1020287981020729344; @realDonaldTrump, TWITTER (July 20, 2018, 8:51 AM EDT), https://twitter.com/realDonald Trump/status/1020290163933630464; @realDonaldTrump, TWITTER (July 25, 2018, 7:20 AM EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504; @realDonaldTrump, Twitter (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/status/1022074 252999225344.

<u>Response:</u>  Admits to the extent supported by the cited documents and the administrative record, which are the best evidence of their contents; otherwise denies.

15. On August 1, 2018, USTR announced that, in light of China's retaliatory duties, he would propose to increase the additional duty from 10 percent to 25 percent *ad valorem*.  Rather than addressing the practices that USTR investigated pursuant to Section 301 of the Trade Act, he stated that China "[r]egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/ august/statement-us-trade-representative.

<u>Response:</u>  Admits to the extent supported by the cited document and the administrative record, which are the best evidence of their contents; otherwise denies.

16. On August 7, 2018, USTR, at the direction of the President, formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent."  *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018) (August 2018 Extension of Public Comment Period).

<u>Response:</u>  Admits to the extent supported by the cited notice and the administrative record, which are the best evidence of their contents; otherwise denies.

17. On September 17, 2018, the President announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China."  THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.  The President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motivated his decision, and he immediately promised to proceed with "phase three" of the plan—an additional $267 billion tariff action—"if China takes retaliatory action against our farmers or other industries." *Id.*

<u>Response:</u>  Admits to the extent supported by the cited document and the administrative record, which are the best evidence of their contents; otherwise denies.

18. On September 21, 2018, USTR published notice of the final List 3 trade action. *Notice of Modification of Section 301 Action: China's Acts, Policies, and*

*Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) (Notice of List 3 Trade Action). The notice announced a 10 percent *ad valorem* tariff that was set to rise automatically to 25 percent on January 1, 2019. USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.*

Response: Admits to the extent supported by cited notice and the administrative record, which are the best evidence of their contents; otherwise denies.

19. As legal support for his action, USTR, for the first time, cited Section 307(a)(1)(B) of the Trade Act, stating that the relevant burden "continues to increase, including following the one-year investigation period," and that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.* The notice also cited Section 307(a)(1)(C) of the Trade Act and stated that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.* at 47,975.

Response: Admits to the extent supported by the cited notice and the administrative record, which are the best evidence of their contents; otherwise denies.

20. After USTR issued List 3, China and the United States engaged in trade negotiations. Based on the progress made with China in those negotiations, the Trump administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase from 10 to 25 percent in the List 3 duty rate. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

Response: Admits to the extent supported by the cited notices and the administrative record, which are the best evidence of their contents; otherwise denies.

21. In May 2019, after trade negotiations fell apart, USTR announced its intent to raise the tariff rate on List 3 goods to 25 percent, effective either May 10, 2019 or June 1, 2019, depending on the date of export. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) (List 3 Rate Increase Notice); *see also Implementing Modification to Section 301 Action:*

8

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019).  The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate.  *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459.

Response:  Admits to the extent supported by the cited notice and the administrative record, which are the best evidence of their contents; otherwise denies.

22.  The duties imposed on products covered by List 3 remain in effect as of the date of the filing of the Section 301 Cases, as defined in Standard Procedure Order No. 21-01.

Response:  Admits to the extent supported by the administrative record, which is the best evidence of its contents; otherwise denies.

## C.   Background Factual Allegations Regarding The List 4 Trade Action

23.  On May 17, 2019, USTR announced his intent to proceed with additional duties of 25 percent *ad valorem* on products from China with an annual trade value of $300 billion (List 4).  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019) (May 2019 Request for Comments).  The notice stated that the proposed trade action was motivated by China's "retreat[] from specific commitments made in previous [negotiation] rounds [and] announce[ment of] further retaliatory action against U.S. Commerce."  *Id.*

Response:  Admits to the extent supported by the cited notice and the administrative record, which are the best evidence of their contents; otherwise denies.

24.  On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, the President announced that the List 4 tariffs would become effective September 1, 2019, at a rate of 10 percent *ad valorem*.  @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/real DonaldTrump/status /1156979446877962243.

Response:  Admits to the extent supported by the cited document and the administrative record, which are the best evidence of their contents; otherwise denies.

25.  On August 20, 2019, USTR issued a final notice of List 4, which would take effect in two tranches.  List 4A would impose a 10 percent *ad valorem* duty on

goods worth roughly $120 billion, effective September 1, 2019. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019) (Notice of List 4 Trade Action). List 4B would impose a 10 percent *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id.*

Response:  Admits to the extent supported by the cited notice and the administrative record, which are the best evidence of their contents; otherwise denies.

26. As legal support for his action, USTR cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." However, instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*

Response:  Admits to the extent supported by the cited notice and the administrative record, which are the best evidence of their contents; otherwise denies.

27. On August 30, 2019, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10 to 15 percent, based on China's retaliatory measures, its retreat from its negotiation commitments and devaluation of its currency. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822. USTR once again cited China's retreat from his negotiation commitments and devaluation of its currency as grounds for its action. *Id.*

Response:  Admits to the extent supported by the cited notice and the administrative record, which are the best evidence of their contents; otherwise denies.

28. On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that he would "suspend indefinitely the

imposition of additional duties of 15 percent on products of China covered by" List 4B.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019).  USTR also stated his intent to reduce the tariff rate applicable to products covered by List 4A, *see id.*, an action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

Response:  Admits to the extent supported by the cited notices and the administrative record, which are the best evidence of their contents; otherwise denies.

29. In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states-and-china-reach. During that time, Defendants declined to impose additional duties on imports covered by List 4B, presumably because China had agreed to some new, unrelated obligations under the limited trade deal.

Response:  Admits to the extent supported by the cited document and the administrative record, which are the best evidence of their contents; otherwise denies.

30. The duties imposed on products covered by List 4A remain in effect as of the date of the filing of the Section 301 Cases, as defined in Standard Procedure Order No. 21-01.  Although the proposed duties on products covered by List 4B remain suspended, President Trump has continued to threaten to impose them if China does not meet its obligations under their limited trade deal. *See, e.g.*, @realDonaldTrump, TWITTER (June 22, 2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/status/1275252581206447618 ("The China Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!").

Response:  Admits to the extent supported by the cited document and the administrative record, which is the best evidence of their contents; otherwise denies.

## Claim: The List 3 And List 4A Trade Actions Violated The Trade Act

1. Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when he determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the

United States is appropriate." 19 U.S.C. § 2411(b). USTR failed his predicate its actions giving rise to List 3 and List 4A on any such determination.

Response: The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required. To the extent a response is required, denies.

2. Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's actions that gave rise to List 3 and List 4A violated Section 304 of the Trade Act because they occurred more than a year after he initiated the underlying Section 301 investigation.

Response: The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required. To the extent a response is required, denies.

3. Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when "the burden or restriction on United States commerce" imposed by the foreign country's investigated unfair acts, policies, or practices has "increased or decreased." 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act does not permit USTR to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.

Response: The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required. To the extent a response is required, admits to the extent supported by the statute cited; otherwise denies.

4. USTR may not rely on his "modification authority" under Section 307 for the actions that gave rise to List 3 and List 4A, because he failed to tie his actions to the original 301 determination, and instead promulgated the trade actions based on other reasons, including retaliating against China and compelling China to import more U.S. goods.

Response: The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required. To the extent a response is required, denies.

5. Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to increase tariff actions that are no longer "appropriate," such as USTR did in promulgating List 3 and List 4A, but rather only to delay, taper, or terminate such actions.

Response:  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, admits to the extent supported by the statute cited; otherwise denies.

6. Plaintiffs are entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4A are *ultra vires* and contrary to law.

   Response:  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, denies.

## Claim: Defendants Violated The Administrative Procedure Act (APA) In Promulgating List 3 and List 4A

1. Defendants exceeded their authority under the Trade Act in promulgating List 3 and List 4A and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

   Response:  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, denies.

2. Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

   Response:  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, denies.

3. Defendants also promulgated List 3 and List 4A in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale.  Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3 and List 4A, whose value exceeds $300 billion.

   Response:  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, denies.

4. For List 3, USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments.  *July 2018 Request for Comments*, 83 Fed. Reg. at 33,608.  USTR later set new dates for a public hearing over six days, ending on August 27, 2018, and

changed the deadline for comments, so that initial and rebuttal comments were both due on September 6, 2018. *August 2018 Extension of Public Comment Period*, 83 Fed. Reg. at 38,761; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

Response:  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, admits to the extent supported by the administrative record, which is the best evidence of its contents; otherwise denies.

5.  The adjustment, deviating from past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties.  USTR also limited each hearing participant to 5 minutes.  Docket No. USTR-2018-0026, https://www.regulations.gov/document/USTR-2018-0026-0001.  Despite those obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. *Id.*

Response:  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, admits to the extent supported by the administrative record, which is the best evidence of its contents; otherwise denies.

6.  For List 4, the timeline for participation in the hearing left little room for meaningful input.  USTR required witnesses to submit drafts of their testimony by June 10, 2019, seven days before the deadline for fully developed written comments and again limited witnesses to five minutes of testimony at the hearing. *May 2019 Request for Comments*, 84 Fed. Reg. at 22,564.

Response:  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, admits to the extent supported by the administrative record, which is the best evidence of its contents; otherwise denies.

7.  In issuing List 3, USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. *Notice of List 3 Trade Action*, 83 Fed. Reg. at 47,974.

Response:  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, denies.

8.  In issuing List 4, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses.  *Notice of List 4 Trade Action*, 84 Fed. Reg. at 43,304.

Response:  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, denies.

## Claim: The List 3 And List 4A Trade Actions Violated The U.S. Constitution

1.  Since the Section 301 duties were imposed, the President and other government officials have made statements about how the tariffs have generated a significant amount of revenue for the U.S. government.  "Billions of dollars are pouring into the coffers of the U.S.A. because of the tariffs being charged China … Otherwise let's just make our country richer than ever.",  Tweet from @realDonaldTrump, Nov. 29, 2018, https://twitter.com/realDonaldTrump/status/ 1068120444279103488.  Aid to American farmers was paid for by "giving $16 billion out of all the tariffs we're collecting". "We've gotten tens of billions of dollars in tariffs from China." "The US government is taking in billions and billions of dollars in the form of tariffs from China."

Response:  Admits to the extent supported by the cited documents and the administrative record, which are the best evidence of their contents; otherwise denies.

2.  USTR has never explained or provided evidence establishing how the List 3 trade action was related to the subject of the 301 Investigation.  The President's and others' statements characterize the List 3 trade action as generating revenue for the U.S. Treasury.

Response:  Admits to the extent supported by the administrative record, which is the best evidence of its contents; otherwise denies.

3.  From statements made by the President and other officials in the Administration, an additional, if not the sole, reason and purpose for the List 3 trade action was to collect revenue for the federal general treasury.

Response:  Admits to the extent supported by the administrative record, which is the best evidence of its contents; otherwise denies.

4.  To the extent the List 3 additional duties were revenue collection measures, they were beyond the scope of actions USTR was authorized to take by the Trade Act and, therefore, were unlawful.

    <u>Response:</u>  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, denies.

5.  To the extent the List 3 additional duties were implemented for the purpose of collecting revenue for the U.S. government, they were unconstitutional, because only Congress has the constitutional power to "lay and collect taxes, duties, imposts and excises."  U.S. Constitution, Article 1, Section 8, Clause 1.

    <u>Response:</u>  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, denies.

6.  Defendants also promulgated List 3 and List 4A in violation of the Due Process Clause by failing to provide a sufficient opportunity for comment, failing to meaningfully consider relevant factors in making their decisions, and failing to adequately explain their rationale.

    <u>Response:</u>  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required.  To the extent a response is required, denies.

## Claim: The Promulgation Of List 3 And List 4A Violated The General Agreement On Tariffs And Trade (GATT)

1.  Article XX(a) of the GATT allows a member to "adopt or enforce" measures, "necessary to protect public morals," subject to the requirement that "such measures are not applied in a manner which would constitute a means of arbitrary or unjustifiable discrimination between countries where the same conditions prevail, or a disguised restriction on international trade."

    <u>Response:</u>  Admits to the extent supported by the treaty provision cited, which is the best evidence of its contents; otherwise denies.

2.  The "Charming Betsy" canon – the judicial presumption that an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains – counsels against interpreting federal statutes to contravene international law.  *Murray v. The Schooner Charming Betsy*, 6 U.S. 64 (1804).

    <u>Response:</u>  Admits to the extent supported by the case law cited, which is the best evidence of its contents; otherwise denies.

3.  On September 15, 2020, a dispute settlement panel of the World Trade Organization found that the Section 301 tariffs imposed by the United States on imports from China are inconsistent with the United States obligations under GATT.

    Response:  Admits to the extent supported by the cited panel report, which is the best evidence of its contents; otherwise denies.

4.  Defendants promulgated List 3 and List 4A in violation of Articles I:1 and II:1(a) and (b) of the GATT 1994 and the Charming Betsy canon when they imposed tariffs on imports covered by Lists 3 and 4A in excess of those provided in the U.S. Schedule of Concessions and Commitments (as annexed to the GATT 1994). The tariffs are not justified by any of the exceptions set forth in the GATT 1994, including GATT Article XX(a).

    Response:  The allegations contained in this paragraph are plaintiffs' characterization of their case and consist of legal argument and conclusions of law to which no response is required. To the extent a response is required, denies.

## ANTICIPATED DEFENSES

1.  USTR was acting at the direction of the President in promulgating List 3 and List 4, and the President is not subject to the APA.

2.  Review of the President's discretionary decisions, and USTR's implementation of those decisions, present a non-justiciable, political question.

3.  Even if the challenged actions could be considered actions of USTR, substantial deference is afforded, and the Court should not interpose because there was no clear misconstruction of a governing statute, significant procedural violation, or action outside delegated authority.

4.  USTR (acting at the direction of the President) possessed the authority under Section 307 of the Trade Act to promulgate List 3 and List 4, because the burden or restriction on United States commerce of China's acts, policies, and practices that were the subject of the Section 301 action continued to increase, including

following the one-year investigation period, and because the previous actions taken in response to the Section 301 investigation proved to no longer be appropriate, as the actions were not effective in eliminating the unfair trade practices that were the subject of that investigation.  In addition, Section 307 does not limit modifications to merely delaying, tapering, or terminating an action. The basis for the List 3 and List 4 trade actions is set forth in the following documents, among others:

*Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33609 (July 17, 2018):

> Section 301(b) of the Trade Act of 1974, as amended (Trade Act) provides that "the Trade Representative shall take all appropriate and feasible action authorized under [Section 301(c)], subject to the specific direction, if any, of the President regarding any such action . . . to obtain the elimination of [the] act, policy, or practice" covered in the investigation.  Section 307 of the Trade Act provides that "[t]he Trade Representative may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, that is being taken under [Section 301] if . . . such action is being taken under section 301(b) of this title and is no longer appropriate."  In light of China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices, it has become apparent that U.S. action at this level is not sufficient to obtain the elimination of China's acts, policies, and practices covered in the investigation.  Accordingly, the Trade Representative is proposing to modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action.  The Trade Representative proposes an additional 10 percent *ad valorem* duty on products of China covered in the attached list of 6,031 tariff subheadings. The attached list has an annual trade value of approximately $200 billion.

> Modification of the action in this investigation by taking a supplemental $200 billion action is appropriate in light of the statutory goal of obtaining the elimination of the acts, policies, and practices covered in the investigation.  China has shown that it will not respond to action at a $50 billion level by addressing U.S. concerns with China's acts, policies, and practices involving technology transfer, intellectual property, and innovation.  Rather, China is responding to action at a $50 billion level by imposing retaliatory duties.

*Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019):

> Section 301(b) of the Trade Act provides that "the Trade Representative shall take all appropriate and feasible action authorized under [section 301(c)], subject to the specific direction, if any, of the President regarding any such action . . . to obtain the elimination of [the] act, policy, or practice" covered in the investigation. Section 307 of the Trade Act provides that "[t]he Trade Representative may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, that is being taken under [section 301] if . . . the burden or restriction on United States commerce . . . of the acts, policies, and practices that are the subject of such action has increased or decreased or if such action is being taken under section 301(b) of this title and is no longer appropriate."  In light of China's failure to meaningfully address the acts, policies, and practices that are subject to this investigation and its response to the current action being taken in this investigation, and at the direction of the President, the Trade Representative proposes to modify the action being taken in this investigation.

5. Alternatively, if the challenged actions constitute agency action, they are exempt from the APA's informal rulemaking requirements, because they qualify for the foreign affairs function exception.

6. Even if the APA's informal rulemaking requirements apply, USTR's actions in promulgating List 3 and List 4 complied with all statutory requirements, and they were not arbitrary and capricious, contrary to law, or in excess of statutory authority.

7. We respectfully reserve the right to raise additional defenses after the test cases have been chosen, including, but not limited to, all defenses related to jurisdiction and/or timeliness.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:

MEGAN GRIMBALL
Associate General Counsel
PHILIP BUTLER
Associate General Counsel
EDWARD MARCUS
Assistant General Counsel
Office of General Counsel
Office of the U.S. Trade Representative
600 17th Street N.W.
Washington, D.C. 20508

PAULA SMITH
Assistant Chief Counsel
EDWARD MAURER
Deputy Assistant Chief Counsel
VALERIE SORENSEN-CLARK
Attorney
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection
26 Federal Plaza, Room 258
New York, NY 10278

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge,
International Trade Field Office

/s/ Jamie L. Shookman
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
26 Federal Plaza, Room 346
New York, NY 10278
Tel: 212-264-2107
Fax: 212-264-1916

SOSUN BAE
Senior Trial Counsel
ANN C. MOTTO
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

March 12, 2021

*Attorneys for Defendants*