UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
          THE HONORABLE CLAIRE R. KELLY, JUDGE
          THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____
                                              :
                                              :
*In Re* Section 301 Cases                     :    Court No. 21-00052
                                              :
_____:

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION LIMITED TO SUSPENSION OF LIQUIDATION

Pursuant to Rule 65(a), sample-case Plaintiffs HMTX Industries, LLC, Halstead New England Corp., Metroflor Corporation, and Jasco Products Company LLC ("Plaintiffs") move the Court to enter a protective preliminary injunction limited to suspending liquidation of all unliquidated entries imported by Plaintiffs that are subject to duties under List 3 and List 4A. Plaintiffs do *not* seek to enjoin or otherwise limit the collection of the List 3 and List 4A duties; Defendants will continue to collect and hold Plaintiffs' money during the pendency of this litigation. Rather, akin to the "statutory injunction" routinely entered during the litigation of antidumping/countervailing duty cases, Plaintiffs seek a protective injunction merely to preserve the status quo with respect to liquidation until final judgment. Plaintiffs also submit that the Court should grant the same relief in all of the related Section 301 challenges (subject to an opt-out mechanism) to avoid thousands of similar protective preliminary-injunction motion filings.

This motion should not have been necessary. But regrettably, breaking from both recent precedent and past practice, Defendants have taken the position that this Court lacks the power to order refunds on liquidated entries. That position is as inequitable as it is incorrect. Defendants contend that duty payments would become *permanently unrecoverable*, at least with regard to liquidated entries, should Plaintiffs prevail in proving the Section 301 duties unlawful. Joint Status

Report ("JSR") at 7-8, Court No. 21-052, Dkt. No. 274 (Apr. 12, 2021). Yet Defendants refuse to take steps to avoid that untenable result and oppose relief narrowly tailored to preserving Plaintiffs' rights should Plaintiffs prevail on the merits. *Id.* They even urge this Court to postpone the resolution of the issue until Plaintiffs prevail on the merits. *Id.* In other words, the official litigating position of the Government is that U.S. importers' entitlement to refunds of *illegally collected* tariffs should turn on the happenstance of whether and when associated entries are liquidated pending final judgment in this case.

In these circumstances, Plaintiffs easily satisfy the factors for a preliminary injunction—especially considering the limited, protective relief Plaintiffs seek. As indicated by the multi-round briefing schedule with expanded word limits, not to mention the unprecedented magnitude of this litigation involving the filing of over 3,700 similar complaints adopting the same core legal theory, Plaintiffs have already demonstrated a likelihood of success—or at least a serious question—on the merits. In addition, the balance of the equities and the public interest overwhelmingly weigh in Plaintiffs' favor: Because Defendants will continue to collect List 3 and List 4A duties, this protective injunction merely maintains the status quo to protect those sums from becoming irretrievably lost if the Section 301 tariffs are deemed unlawful but the refund remedy is deemed available only with respect to unliquidated entries.

As for irreparable harm, if this Court agrees with Defendants that refunds on liquidated entries are unavailable, then the immediate need for a preliminary injunction to suspend liquidation is self-evident. But Plaintiffs are entitled to a limited injunction regardless. The Government's litigating position has placed the ultimate availability of refunds on liquidated entries—including after potential appeals to the Federal Circuit or U.S. Supreme Court—into serious doubt. If Defendants agree to an acceptable stipulation (subject to judicial estoppel) sufficient to protect all

Section 301 Plaintiffs' rights with respect to liquidated entries should Plaintiffs prevail on the merits, Plaintiffs will voluntarily withdraw this motion. Otherwise, this Court should follow Federal Circuit precedent in finding irreparable harm in this circumstance, and enter limited relief to maintain the status quo while this important litigation runs its course.[1]

## I. BACKGROUND

The thousands of related lawsuits in this case challenge the imposition of unlawful tariffs on over $500 billion in imports from the People's Republic of China. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) (publishing List 3); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019) (publishing List 4A). As the unprecedented response to this litigation shows, those tariffs have wrought significant financial hardship on innumerable companies and consumers, as well as inflicted substantial harm on the U.S. economy. Am. Compl. ¶¶ 6, 7, 41, 48, 59, Court No. 20-177, Dkt. No. 12 (Sept. 21, 2020). Plaintiffs have thus sought refunds of these unlawful duties since the outset of this litigation. *Id*. ¶ 4 ("The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiffs pursuant to List 3 and List 4A.").

Over the past seven months, Plaintiffs—at this Court's urging—consulted extensively with Defendants on the issue of relief to avoid unnecessary motion practice on an issue that appeared

---

[1] In the JSR, Plaintiffs contemplated filing a motion for declaratory relief and, in the alternative, a preliminary injunction limited to suspension of liquidation. Upon further consideration of Defendants' position and the need to preserve the status quo, Plaintiffs file this motion seeking solely preliminary injunctive relief. Plaintiffs respectfully request the opportunity to file a reply brief no longer than half the length of the Government's response.

3

to have been settled by recent decisions of both this Court and the Federal Circuit (as well as the Government's concessions in those cases). Thus, between September 2020 and March 2021, Plaintiffs repeatedly asked Defendants to confirm the availability of refunds should Plaintiffs prevail on the merits, but Defendants declined to take any position. In fact, in their response to Standard Procedural Order 21-02, filed on March 26, 2021, Defendants not only continued to decline to take a clear position, but they also stated that the question of relief was unripe for resolution. Resp. at 3-4, Court No. 21-052, Dkt. No. 265 (Mar. 26, 2021). During that time, Defendant U.S. Customs & Border Protection ("CBP") proceeded with liquidations of Plaintiffs' entries.

On March 31, 2021, the Court ordered the parties to consult and provide a joint status report regarding any "issues requiring early case management intervention." Standard Procedural Order 21-04 at 3, Court No. 21-052, Dkt. No. 267 (Mar. 31, 2021). With respect to the issue of interim relief specifically, the Court observed that it had "no motion pending before" it and stated that it "will not issue an advisory opinion on the matter of relief." *Id.* at 4. The Court also noted, however, that Defendants "have not identified an actual disagreement with Plaintiffs regarding relief that the court may ultimately need to resolve," and the Court likewise recognized the "importance of providing timely, effective, and administrable relief should Plaintiffs establish their right to such relief." *Id.* The Court therefore ordered "the Steering Committee and Defendants [to] continue their consultations, including discussion of the liquidation status, protest status, etc., of the entries in dispute in an effort to identify areas of agreement and the extent of any disagreement with respect to relief." *Id.*

Prompted by the Court's order, on April 12, 2021, Defendants finally revealed their position to this Court that refunds should be unavailable for any liquidated entries:

> The Government *disagrees with Plaintiffs regarding the availability of refunds* of duty assessments for liquidated entries that have become final and conclusive pursuant to 19 U.S.C. § 1514(a). The Government *maintains that such relief would not be available in the 301 cases*, should Plaintiffs ultimately prevail on the merits of their case.

JSR at 7-8 (emphasis added). Defendants also continued to insist that the issue of relief "should be resolved only if and when Plaintiffs prevail on the merits." *Id.* at 8.

Despite the obvious threat of irreparable harm to Plaintiffs, counsel for Defendants have declined to enter into any voluntary agreement even if solely to maintain the status quo during litigation. Plaintiffs thus are forced to seek interim relief from this Court.

## II.   LEGAL STANDARD

The Court has discretion to grant a preliminary injunction if (1) Plaintiffs are "likely to succeed on the merits," (2) Plaintiffs are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [Plaintiffs'] favor," and (4) the provision of interim relief "is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018) (injunctions reviewed for abuse of discretion). In assessing these factors, the Court has traditionally employed "a sliding-scale approach: the more the balance of irreparable harm inclines in plaintiff's favor, the smaller the likelihood of prevailing on the merits he need show in order to get the injunction." *Qingdao Taifa Grp. Co. v. United States*, 581 F.3d 1375, 1378-79 (Fed. Cir. 2009) (internal quotation marks omitted); *see Silfab Solar*, 892 F.3d at 1345 (assuming, without deciding, that "sliding-scale jurisprudence remains good law after *Winter*").

### III.   THIS COURT SHOULD ENTER A PROTECTIVE PRELIMINARY INJUNCTION LIMITED TO THE SUSPENSION OF LIQUIDATION

#### A.   Plaintiffs Risk Suffering Irreparable Harm Absent Injunctive Relief

Plaintiffs are entitled to a preliminary injunction as to suspension of liquidation because of the obvious risk that they will suffer irreparable harm without such an injunction. Although this Court can and should reaffirm its broad remedial powers to issue refunds irrespective of liquidation status, Plaintiffs are entitled to a preliminary injunction regardless of how this Court resolves the refund issue, given the Government's litigating position and associated uncertainty on appeal.

*1.   This Court Has The Power To Refund Entries, Or Grant Other Appropriate Relief, Under Its Broad Remedial Powers*

Federal Circuit and CIT precedent dictate that this Court's "broad remedial powers" include the power to issue refunds on entries regardless of liquidation status. *Shinyei Corp. of Am. v. United States,* 355 F.3d 1297, 1312 (Fed. Cir. 2004). In *Shinyei*, the Federal Circuit reasoned that "[t]he absence of an express reliquidation provision should not be read as a prohibition of such relief when the statute provides the Court . . . with such broad remedial powers," including the power to reliquidate entries or issue damages judgments. *Id.* (citing 28 U.S.C. § 2643(a)(1), (c)(1)). Although 19 U.S.C. § 1514(a) makes liquidation final for CBP, that provision is "inapplicable" where, as here, Plaintiffs' lawsuit is not based on an error by CBP. *Id.*

The broad holding in *Shinyei* was recently reaffirmed in *Sumecht NA, Inc. v. United States*, which "recognized that th[is Court]'s equitable powers allowed it to order reliquidation in a § 1581(i) action." 923 F.3d 1340, 1347 (Fed. Cir. 2019). Based on that holding—as well as the Government's "unequivocal[]" representations that the CIT "has the power to grant [plaintiff] relief, including the authority to order the Government to reliquidate [plaintiff's] entries"—the Federal Circuit found no legal error in this Court's determination that plaintiff would suffer no irreparable harm absent an injunction. *Id.* at 1348.

Following *Shinyei*, this Court also has repeatedly confirmed the same principle—including in litigation concerning the Government's earlier unlawful imposition of Section 301 duties. In a 2009 decision upheld by the Federal Circuit, this Court ordered Defendant CBP to refund all unlawfully collected Section 301 duties, including those collected on liquidated entries. *See Gilda Indus., Inc. v. United States*, 625 F. Supp. 2d 1377, 1385 (Ct. Int'l Trade 2009) ("[T]he U.S. Bureau of Customs and Border protection shall refund to the plaintiff all of the retaliatory duties (described herein) collected on Gilda's toasted bread imports from Spain between July 29, 2007 and March 23, 2009." (citing *Shinyei*, 355 F.3d 1297)), *aff'd*, 622 F.3d 1358, 1360 (Fed. Cir. 2010) ("The Court of International Trade ordered liquidation of Gilda's goods without assessment of the duty, and ordered the government to refund, with interest, the 100 percent ad valorem duty that Gilda paid on products imported after the retaliatory duties expired. We affirm the judgment." (footnote omitted)).

> More recently, in *J. Conrad Ltd. v. United States*, the Court reasoned that it
>
> possesses "all the powers in law and equity" of a district court. 28 U.S.C. § 1585. Accordingly, with exceptions not applicable here, this Court may award any form of relief appropriate in a civil action, *id.* § 2643(c)(1), including, generally, a money judgment against the United States in a civil action commenced under 28 U.S.C. § 1581. *Id.* § 2643(a)(1).

457 F. Supp. 3d 1365, 1379 (Ct. Int'l Trade 2020). The Court therefore concluded that it is free to "order[] appropriate relief"—*i.e.*, refunds—in the event that plaintiffs prevailed on the merits. *Id.* (citations omitted). And just this month, in a case related to *J. Conrad*, the Court awarded summary judgment to Section 1581(i) plaintiffs and ordered the Government to refund unlawful duties collected *including for liquidated entries*. *See PrimeSource Bldg. Prods., Inc. v. United States*, No. 20-032, 2021 WL 1248956, at *5 (Ct. Int'l Trade Apr. 5, 2021) ("[S]hould any entries of PrimeSource's merchandise at issue in this litigation have liquidated with the assessment of 25%

7

duties pursuant to Proclamation 9980, *PrimeSource is entitled to reliquidation of those entries and a refund of any duties deposited or paid, with interest as provided by law*." (emphasis added)).

These decisions make sense in light of the CIT's broad statutory powers. For decades, the Court's predecessor institutions operated without full power in law and equity. H.R. Rep. No. 96-1235, at 18 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3730. That changed when Congress passed the Customs Courts Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727 (1980), which "perfect[ed] the status of the Customs Court by providing it with all the necessary remedial powers in law and equity possessed by other federal courts established under Article III of the Constitution." *Id.* at 20, 1980 U.S.C.C.A.N. at 3731 (describing the grant of remedial powers as the "most important[]" reason for the Customs Courts Act of 1980). Following Congress's amendments, the CIT now "possess[es] all the powers in law and equity of, or as conferred by statute upon, a district court of the United States," 28 U.S.C. § 1585; "may enter a money judgment . . . for or against the United States in any civil action commenced under [S]ection 1581," *id.* § 2643(a)(1); and may "order any other form of relief that is appropriate in a civil action," 28 U.S.C. § 2643(c)(1). Collectively, these provisions clarified that the CIT "has the authority to grant plenary relief," and possesses "remedial powers co-extensive with those of a federal district court." H.R. Rep. No. 96-1235, at 23, 61, 1980 U.S.C.C.A.N. at 3734, 3772-73.

Until this month, the Government itself appeared to share the same view of CIT's power. In both *Sumecht* and *J. Conrad*, the Government "represented unequivocally" that the Court "has . . . the authority to order the Government to reliquidate" entries in a § 1581(i) case. *Sumecht*, 923 F.3d at 1348 & n.9 (noting the Government agreed that this Court "has . . . the authority to order the Government to reliquidate" entries in a § 1581(i) case and "straightforwardly maintained this position at oral argument" (citations omitted)); *J. Conrad*, 457 F. Supp. 3d at 1379 (noting the

8

Government's "agreement with th[e] conclusion" that "any liquidations that occurred would not become final and conclusive so as to prevent the Court from ordering a refund of the 25 percent duties with interest"). Defendants' about-face in this litigation, in which they now claim that refunds "would *not* be available in the 301 cases, should Plaintiffs ultimately prevail on the merits of their case," JSR at 7-8 (emphasis added), conflicts with the "unequivocal[]" positions they took in prior litigation.

Regardless, the Government's new position does not warrant a new result. Defendants appear to suggest that 19 U.S.C. § 1514(a) serves as a bar to reliquidation in this case. *See* JSR at 7-8. But as noted, the Federal Circuit and this Court have squarely rejected that proposition for Section 1581(i) cases, given that Section 1514(a) is "inapplicable" where "the alleged agency error" is on the part of an agency other than Customs. *Shinyei*, 355 F.3d at 1311-1312 (holding that, whatever limitations Section 1514(a) imposes on CBP, 28 U.S.C. § 2643(a)(1) and (c)(1) bestow "broad remedial powers" on the Court—including the authority to order reliquidation and provide refunds); *see also J. Conrad*, 457 F. Supp. 3d at 1379 & n.14. Although Federal Circuit precedent may not be a "model of clarity," *Sumecht NA*, 923 F.3d at 1348, the Government's position plainly "runs counter to *Shinyei*'s holding." *Id.*

> 2. *Despite The Court's Broad Powers, The Government's Litigating Position Makes Irreparable Harm "Likely" For Preliminary Injunction Purposes*

Despite the foregoing precedent establishing the Court's broad remedial powers, the significant uncertainty caused by the Government's litigation position entitles Plaintiffs to a preliminary injunction as to suspension of liquidation regardless of how the Court resolves the issue concerning relief for liquidated entries.

On the one hand, if this Court agrees with the Government that this Court lacks the power to issue refunds on liquidated entries—or that the issue "should be resolved only if and when

9

Plaintiffs prevail on the merits," JSR at 7-8—then Plaintiffs' irreparable harm is clear and unmistakable, and the need for a preliminary injunction designed to preserve the status quo is evident. The mere "threat of liquidation is typically sufficient to demonstrate irreparable harm because liquidation may moot further judicial relief in challenges to administrative proceedings." *Sumecht NA*, 923 F.3d at 1346; *see Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983) (holding that, in an appeal filed pursuant to 28 U.S.C. § 1581(c), "the consequences of liquidation do constitute irreparable injury"); *see also Canadian Lumber Trade All. v. United States*, 441 F. Supp. 2d 1259, 1265 (Ct. Int'l Trade 2006) (finding harm irreparable where no damages are available due to sovereign immunity). If Plaintiffs are forever barred from obtaining refunds of unlawfully paid refunds—if, in the Government's own words, "such relief would not be available in the 301 cases, should Plaintiffs ultimately prevail on the merits of their case"—Plaintiffs' harm is plainly irreparable. JSR at 7-8. Even deferring resolution until a ruling on the merits makes irreparable harm obvious, given that entries are liquidating with every day that passes. Thus, unless the Government is willing to stipulate to the availability of refunds (as it did in *Sumecht* and *J. Conrad*), Plaintiffs can avoid potential future harm with respect to currently unliquidated entries (under the Government's latest view of the law) only if the Court enters an injunction suspending liquidation during the pendency of the litigation.

On the other hand, even if this Court rejects (as it should) Defendants' position that liquidation bars relief, Plaintiffs are *still* entitled to a status-quo-preserving injunction. Indeed, the Federal Circuit has twice found irreparable harm likely—and an injunction to preserve remedies necessary—given the uncertainty regarding the availability of *Shinyei* relief. In *American Signature*, the Federal Circuit reviewed a judgment denying a preliminary injunction motion on the ground that refund relief was available under *Shinyei*. In reversing, the Federal Circuit

10

concluded that appellant had "made a sufficient showing of irreparable harm" because "the availability of *Shinyei* relief . . . is uncertain." *American Signature, Inc. v. United States*, 598 F.3d 816, 829 (Fed. Cir. 2010); *see id.* ("[T]he possibility of *Shinyei* relief does not defeat [a] claim of irreparable harm.").

The Federal Circuit reached the same conclusion in *Ugine & Alz Belgium v. United States*:

> the question of the scope of *Shinyei* is a difficult one, for which the resolution is not obvious . . . . Rather than deciding the scope of *Shinyei* in a preliminary injunction context, . . . we conclude that the issue is sufficiently complex that we should resolve it only in a setting in which it has been litigated by the parties and decided by the trial court.

452 F.3d 1289, 1297 (Fed. Cir. 2006). Critically, the court of appeals reasoned that "the denial of a preliminary injunction" based on any doubt over the availability *Shinyei* relief would strip the appellant of "its opportunity for a decision on the merits of its claim," such that it had "made a strong showing of irreparable harm." *Id.* This Court, too, has recognized that, "[i]n such an uncertain situation, preservation of remedies is to be favored." *Target Corp. v. United States*, 34 C.I.T. 1570, 1573 (2010) (citing *American Signature*).

Given the Government's opposition to this Court's power to issue refunds, the same justifications that motivated *American Signature* and *Ugine* justify the preliminary injunctive relief that Plaintiffs seek here. Defendants have now backpedaled from the positions they took in recent litigation; squarely contest the availability of refunds should Plaintiffs prevail; and presumably reserve the right to appeal any contrary judgment. If Defendants' argument succeeds in any forum—including in the *en banc* Federal Circuit or U.S. Supreme Court—Plaintiffs would permanently lose the ability to recover any entries that liquidated prior to final judgment.

That irreparable harm, however, is wholly avoidable through suspension of liquidation pending final judgment. If granted, the Court's injunction would "prevent[] liquidation of [Plaintiffs'] entries while the litigation is pending"—*i.e.*, the same relief commonly available via

11

a statutory injunction in antidumping cases. *Juancheng Kangtai Chem. Co. v. United States*, 932 F.3d 1321, 1330 (Fed. Cir. 2019) (citing 19 U.S.C. § 1516a(c)(2)). The manifest uncertainty (and inequity) prompted by Defendants' litigating position provides more than sufficient grounds for the Court to find that Plaintiffs will suffer irreparable harm without the limited, protective injunction Plaintiffs seek.

**B.      Plaintiffs Have Demonstrated Likelihood of Success On The Merits**

Under the Federal Circuit's traditional sliding-scale approach, the "success" factor is not difficult to show where, as here, the balance of irreparable harm tilts sharply in Plaintiffs' favor. *See Qingdao Taifa*, 581 F.3d at 1378-79. In such cases, Plaintiffs need merely demonstrate "at least a fair chance of success on the merits." *Silfab Solar*, 892 F.3d at 1345.

That standard is easily met here. Through their complaints and other papers, Plaintiffs—along with the many thousands of plaintiffs in related cases—have set forth a strong legal claim. This litigation presents the question of whether Defendants are free to prosecute a trade war under Section 301 for however long, and by whatever means they choose—or whether Congress imposed meaningful limitations on their power through the Trade Act of 1974. The Office of the United States Trade Representative ("USTR") conducted an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411). Section 304 of the Trade Act (19 U.S.C. § 2414) required USTR to determine what action to take, if any, within 12 months after initiation of that investigation, but USTR failed to issue List 3 or List 4A within that window.

Although USTR tried to claim use of its "modification" authority under Section 307 of the Trade Act (19 U.S.C. § 2417) to salvage List 3 and List 4A, that section does not permit USTR to expand the imposition of tariffs to other imports from China for reasons untethered to the unfair

12

intellectual property policies and practices it originally investigated under Section 301 of the Trade Act. *See* 19 U.S.C. § 2417(a)(1)(B) (allowing USTR to "modify or terminate any action" when "the burden or restriction on United States commerce of the denial rights, or of the acts, policies, and practices, that are the subject of such action has increased or decreased"). Yet that is exactly what Defendants did here when they promulgated the List 3 and List 4A duties explicitly in response to China's retaliatory duties and other unrelated issues. *See, e.g., Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,609 (July 17, 2018) (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices"). USTR likewise cannot rely on its authority to modify Section 301 actions when existing tariffs are "no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). As both the statutory context and USTR's unbroken past practice make clear, that provision permits USTR only to delay, taper, or terminate—not ratchet up—the actions it has already taken. *See generally* Am. Compl., Court No. 20-177, Dkt. No. 12 (Sept. 21, 2020). Otherwise, the carefully calibrated limits and conditions on Defendants' "Scope of Authority" set forth elsewhere in Section 301—including various consultation and investigation requirements—could be circumvented effortlessly and rendered meaningless.

Based on the parties' negotiations, the Court has already entered a lengthy substantive briefing schedule that will allow the parties to air their arguments more fully over nearly six months through four rounds of briefing totaling 60,000 words (not including any amicus filings). *See* Order at 1, Court No. 21-052, Dkt. No. 275 (Apr. 13, 2021). Particularly in light of the narrowness of the interim relief requested, as well as the agreed-upon framework under which the parties will

13

brief the merits, the claims set forth in Plaintiffs' Amended Complaint establish "at least a fair chance" that they will succeed on the merits. *Silfab Solar*, 892 F.3d at 1345.

### C. The Balance of the Equities and the Public Interest Weigh in Plaintiffs' Favor

With respect to "the balance of the equities" and "the public interest," *Winter*, 555 U.S. at 20, these "factors merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009). For at least four reasons, these factors weigh heavily in Plaintiffs' favor.

First, Plaintiffs seek narrow relief. As noted, the protective injunction Plaintiffs seek models the relief routinely available via a statutory injunction in antidumping/countervailing duty cases. *Juancheng Kangtai Chem.*, 932 F.3d at 1330 (citing 19 U.S.C. § 1516a(c)(2)). Plaintiffs do not seek a broad injunction depriving the Government of the ability to assess and collect the List 3 and List 4A duties, but rather only relief that is narrowly tailored to avoid the specific irreparable harm threatened by the Government's litigating position.

Second, the Government will suffer no harm other than "routine administrative costs" associated with Defendants' compliance with any order to suspend liquidation of the entries at issue. *Nat. Res. Def. Council, Inc. v. Ross*, 331 F. Supp. 3d 1338, 1371 n.22 (Ct. Int'l Trade 2018). Plaintiffs would continue to pay deposits for entries subject to List 3 and List 4A, and the Government would continue to hold Plaintiffs' money pending the resolution of this case. By contrast, if injunctive relief is denied, and sums associated with liquidated entries become nonrefundable, the Section 301 Plaintiffs collectively stand to lose hundreds of millions of dollars in duties determined to be *ultra vires* and unlawful.[2]

---

[2] In the JSR, Defendants vaguely asserted that Plaintiffs' "request for an injunction suspending liquidation would impose an extraordinary and potentially impossible burden on Customs and Border Protection, at a time when its resources are already stretched to the limit." JSR at 8. With respect, this is a burden of Defendants' own making. Defendants could avoid that burden by simply agreeing (as it has done at least twice in recent prior cases) that refunds are

Third, "[t]he public interest is served by ensuring that governmental bodies comply with the law, and interpret and apply trade statutes uniformly and fairly." *Am. Signature,* 598 F.3d at 830. As the Court has explained, "the rule of law . . . [is] foundational to the public good." *Severstal Export GMBH v. United States*, No. 18-057, 2018 WL 1705298 at *11 (Ct. Int'l Trade Apr. 5, 2018). By contrast, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citing cases). Whatever the public interest in imposing tariffs on imports under List 3 and List 4A, that interest necessarily evaporates if the Government exceeds its statutory authority or acts in an arbitrary and capricious manner. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (defendants "cannot suffer harm from an injunction that merely ends an unlawful practice").

Finally, a grant of interim relief now would preserve the status quo by ensuring that, should the Court invalidate List 3 and List 4A as unlawful, any sums paid on entries that currently remain unliquidated will be eligible for recovery. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). The public interest favors maintaining the status quo so as to permit full recovery should Plaintiffs prevail, rather than arbitrarily limiting their recovery due to the happenstance of liquidation and litigation timing.

---

available should Plaintiffs prevail. *See Sumecht*, 923 F.3d at 1348 (noting estoppel effect of that representation).

## **CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court grant this Motion.

                                            Respectfully submitted,

                                            _/s/_

                                            Matthew R. Nicely
                                            Pratik A. Shah
                                            James E. Tysse
                                            Devin S. Sikes
                                            Daniel M. Witkowski
                                            Sarah B. W. Kirwin

Dated: April 23, 2021                                            AKIN GUMP STRAUSS HAUER & FELD LLP
                                                                            2001 K Street, NW
                                                                            Washington, D.C. 20006

                                                                            *Counsel to Plaintiffs HMTX Industries LLC, Halstead New England Corporation, Metroflor Corporation, and Jasco Products Company LLC*

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
           THE HONORABLE CLAIRE R. KELLY, JUDGE
           THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____
                                                   :
                                                   :
*In Re* Section 301 Cases                          :    Court No. 21-00052
                                                   :
_____:

**ORDER**

Upon consideration of Plaintiffs' Motion, Defendants' response, Plaintiffs' reply, and all other pertinent papers, it is hereby

**ORDERED** that Plaintiffs' Motion is **GRANTED**;

**ORDERED** that Defendants, together with their delegates, officers, agents, and servants, including employees of U.S. Customs and Border Protection, are enjoined during the pendency of this litigation, including any appeals, from liquidating any unliquidated entries imported from the People's Republic of China by (1) HMTX Industries, LLC; Halstead New England Corp.; Metroflor Corporation; or Jasco Products Company LLC, or (2) plaintiffs whose actions have been stayed pursuant to *In re Section 301 Cases*, Court No. 21-052 (subject to the opt-outs of individual plaintiffs), that are subject to duties imposed pursuant to either *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) (List 3) or *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019) (List 4A);

2

**ORDERED** that the entries subject to this injunction shall be liquidated in accordance with the final court decision in this action, including all appeals and remand proceedings; and it is further

**ORDERED** that any entries inadvertently liquidated after this order is signed, but before this injunction is fully implemented by U.S. Customs and Border Protection, shall be promptly returned to unliquidated status and suspended in accordance with this injunction.

Dated: _____
      New York, NY

                                                  Mark A. Barnett, Chief Judge

                                                  Claire R. Kelly, Judge

                                                  Jennifer Choe-Groves, Judge