# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **IN RE SECTION 301 CASES** | **Before: Mark A. Barnett,**<br>**Claire R. Kelly and**<br>**Jennifer Choe-Groves, Judges**<br>**Court No. 21-00052** |

## OPINION

[Granting Plaintiffs' motions for leave to file a reply and for a preliminary injunction. Chief Judge Barnett dissents from the entry of a preliminary injunction.]

Dated: July 6, 2021

Matthew R. Nicely and Pratik A. Shah, Akin Gump Strauss Hauer & Feld LLP, of Washington, DC, argued for plaintiffs HMTX Industries LLC, Halstead New England Corporation, Metroflor Corporation, and Jasco Products Company LLC. With them on the brief were James E. Tysse, Devin S. Sikes, Daniel M. Witkowski, and Sarah B. W. Kirwin.

Jamie L. Shookman, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for defendants. Also on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, L. Misha Preheim, Assistant Director, Justin R. Miller, Attorney-In-Charge, International Trade Field Office, and Sosun Bae, Senior Trial Counsel, and Ann C. Motto, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC. Of Counsel on the brief were Megan Grimball, Associate General Counsel, Philip Butler, Associate General Counsel, and Edward Marcus, Assistant General Counsel, Office of the U.S. Trade Representative, of Washington, DC, and Paula Smith, Assistant Chief Counsel, Edward Maurer, Deputy Assistant Chief Counsel, and Valerie Sorensen-Clark, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, NY.

Kelly, Judge: Plaintiffs HMTX Industries LLC, Halstead New England Corporation, Metroflor Corporation, and Jasco Products Company LLC commenced

the first of approximately 3,600 cases (the "Section 301 Cases") contesting the

imposition of a third and fourth round of tariffs by the Office of the United States Trade Representative ("USTR") pursuant to Section 301 of the Trade Act of 1974, 19 U.S.C. § 2411, et seq. ("the Trade Act"). See generally Am. Compl., HMTX Indus. LLC v. United States, Court No. 20-cv-00177 (CIT Sept. 21, 2020), ECF No. 12 ("20-177 Am. Compl."). Plaintiffs now move the court for a preliminary injunction pursuant to U.S. Court of International Trade ("CIT") Rule 65(a) suspending liquidation of unliquidated entries subject to the contested tariffs.[1] Pls.' Mot. for Prelim. Inj. Limited to Suspension of Liquidation, April 23, 2021, ECF No. 287 ("Pls.' Mot."). Plaintiffs request that any injunction extend to all Section 301 Cases "subject to an opt-out mechanism" for individual plaintiffs. Pls.' Mot. at 2. Defendants United States, et al. ("the Government") oppose the motion. Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. Limited to Suspension, May 14, 2021, ECF No. 304 ("Defs.' Opp'n"). Plaintiffs further move for leave to file a reply to the Government's opposition. Pls.' Mot. for Leave to File a Reply in Supp. of a Prelim. Inj. Limited to Suspension of Liquidation, May 20, 2021, ECF No. 307; see also Proposed Reply in Supp. of Pls.' Mot. for Prelim. Inj. Limited to Suspension of Liquidation, May 20, 2021, ECF No. 307-1 ("Pls.' Reply"). The Government defers to the court's discretion as to acceptance of Plaintiffs' Reply. Defs.' Resp. to Pls.' Mot. for Leave to File a Reply in Supp. of a Prelim. Inj. Limited to Suspension of Liquidation, May 26, 2021, ECF No. 309. For the reasons set forth below, both of Plaintiffs' motions are granted.[2]

---

[1] Plaintiffs do not seek to enjoin the collection of List 3 and List 4A duties (as defined below). Pls.' Mot. at 1.

[2] Absent leave of court, parties may not file a reply brief in further support of a non-dispositive motion. See CIT Rule 7(d); Retamal v. U.S. Customs & Border Prot., Dep't (footnote continued)

## BACKGROUND

On August 14, 2017, the President issued a memorandum instructing the USTR to consider, consistent with Section 302(b) of the Trade Act, initiating an investigation addressing the Government of the People's Republic of China's ("China") "laws, policies, practices, or actions that may be unreasonable or discriminatory and that may be harming American intellectual property rights, innovation, or technology development."  Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology, 82 Fed. Reg. 39,007 (Aug. 17, 2017).  The USTR initiated an investigation on August 18, 2017.  Initiation of Section 301 Investigation; Hearing; and Request for Public Comment: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 82 Fed. Reg. 40,213 (Aug. 24, 2017).  On March 22, 2018, the USTR published a report announcing the results of its investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, FINDINGS OF THE INVESTIGATION INTO CHINA'S ACTS, POLICIES, AND PRACTICES RELATED TO TECHNOLOGY TRANSFER, INTELLECTUAL PROPERTY, AND INNOVATION UNDER SECTION 301 OF THE TRADE ACT OF 1974 (2018), https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.

On June 20, 2018, the USTR published notice of a final list of products covering 818 tariff subheadings that would be subject to an additional duty of 25 percent ad

---

of Homeland Sec., 439 F.3d 1372, 1377 (Fed. Cir. 2006) (noting that the court may allow reply briefs for non-dispositive motions).  Plaintiffs' proposed reply brief aids the court's understanding of the disagreement between the parties.  Thus, the court will grant Plaintiffs' motion.

valorem.  Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 28,710 (June 20, 2018) ("List 1").  On August 16, 2018, the USTR published notice of an additional list of products covering 279 tariff subheadings that would be subject to an additional duty of 25 percent ad valorem.  Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 40,823 (Aug. 16, 2018) ("List 2").

During the time period between the USTR's finalization of List 1 and List 2, the USTR indicated its intent to modify the action by imposing an additional duty of 10 percent ad valorem on another list of products imported from China.  Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 33,608 (July 17, 2018).  On September 21, 2018, the USTR published final notice of new duties with an effective date of September 24, 2018.  Notice of Modification of Action Pursuant to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 47,974 (Sept. 21, 2018) ("List 3").  The rate of additional duty on products covered by List 3 was set to increase to 25 percent ad valorem on January 1, 2019.  Id.  After several extensions of the date of implementation of the List 3 tariffs issued in connection with ongoing trade negotiations, on May 10, 2019 (or June 15, 2019, depending on the date of export), List 3 duties increased to 25 percent ad valorem.  Notice of Modification of Section

301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 20,459 (May 9, 2019); Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 21,892 (May 15, 2019); Additional Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 26,930 (June 10, 2019).

The USTR subsequently established an exclusion procedure pursuant to which importers could request exclusion of their products from List 3 duties. Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 29,576 (June 24, 2019). Plaintiffs obtained exclusions for certain of their imports, effective September 24, 2018, through August 7, 2020. Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 61,674 (Nov. 13, 2019); Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 69,012 (Dec. 17, 2019); Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 85 Fed. Reg. 549 (Jan. 6, 2020); Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 85 Fed. Reg. 9921 (Feb. 20, 2020).

On May 17, 2019, the USTR announced its intent to again modify the action to impose additional duties up to 25 percent <u>ad valorem</u> on another list of products imported from China. <u>Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation</u>, 84 Fed. Reg. 22,564 (May 17, 2019). On August 20, 2019, the USTR announced that it was imposing additional duties of 10 percent <u>ad valorem</u> on products identified in the May 17, 2019 request for comments. <u>Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation</u>, 84 Fed. Reg. 43,304 (Aug. 20, 2019) ("List 4"). List 4 was further categorized into List 4A and List 4B. <u>Id.</u>

Thereafter, the USTR provided notice of its intent to increase the additional duty rate applicable to List 4A and List 4B from 10 percent <u>ad valorem</u> to 15 percent <u>ad valorem</u>. <u>Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation</u>, 84 Fed. Reg. 45,821 (Aug. 30, 2019). On December 18, 2019, the USTR indefinitely suspended the additional duties of 15 percent <u>ad valorem</u> on List 4B, but not List 4A. <u>Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation</u>, 84 Fed. Reg. 69,447 (Dec. 18, 2019).

On January 22, 2020, the USTR halved the additional duty on products covered by List 4A from 15 percent to 7.5 percent <u>ad valorem</u>. <u>Notice of Modification</u>

of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 85 Fed. Reg. 3741 (Jan. 22, 2020).

On September 10, 2020, Plaintiffs commenced an action challenging the Section 301 duties imposed pursuant to List 3 and List 4A. Compl., HMTX Indus. LLC v. United States, Court No. 20-cv-00177 (CIT Sept. 10, 2020), ECF No. 2; see also 20-177 Am. Compl. Count one alleges a violation of the Trade Act based on Plaintiffs' view that the USTR's imposition of the List 3 and List 4A duties was not authorized by the USTR's modification authority under Section 307 of the Trade Act and seeks a declaratory judgment to that effect. 20-177 Am. Compl. ¶¶ 63–70. Count two alleges violations of the Administrative Procedure Act ("APA"). Id. ¶¶ 71–75.

On February 5, 2021, Plaintiffs' action, among others,[3] was assigned to this panel. See, e.g., Order, HMTX Indus. LLC v. United States, Court No. 20-cv-00177, (CIT Feb. 5, 2021), ECF No. 43. On February 10, 2021, the panel designated a "master case" under the name "In Re Section 301 Cases" to function as the primary vehicle by which the court would manage the litigation of the Section 301 Cases. Std. Procedural Order No. 21-01 (Feb. 10, 2021), ECF No. 1. After receiving input from the parties, on March 31, 2021, the court designated Plaintiffs' case as "the sample case for purposes of the court's initial consideration and resolution of Plaintiffs' claims." Std. Procedural Order 21-04 (Mar. 31, 2021), ECF No. 267. The court stayed all other Section 301 Cases and appointed a Plaintiffs' Steering Committee to aid the court's adoption of case management procedures and coordinate the preparation of consolidated briefs and court submissions. Id.; see also Std. Procedural Order 21-02

---

[3] Approximately 3,600 Section 301 Cases were assigned to this panel.

(Feb. 16, 2021), ECF No. 82 (explaining the duties of the steering committee).  On

April 12, 2021, the parties filed a Joint Status Report with a proposed briefing

schedule governing disposition of the merits of the sample case.  Joint Status Report,

Apr. 12, 2021, ECF No. 274 ("Jt. Status Report").  The parties explained their

respective positions on the issue of relief in the event Plaintiffs prevail.  Id. at 4–9.

The following day, the court entered a Scheduling Order.  See Scheduling Order, Apr.

13, 2021, ECF No. 275.

Plaintiffs filed the instant motion on April 23, 2021.  See Pls.' Mot.  The

Government responded and, as noted, the court will accept Plaintiffs' Reply.  See

Defs.' Opp'n; Pls.' Reply.  A remote oral argument on the motion was held on June 17,

2021.  Docket Entry, June 17, 2021, ECF No. 327, available at

https://www.cit.uscourts.gov/sites/cit/files/061721-21-00052-3JP.mp3 ("Oral Arg.").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(B) (2018), which

grants the court "exclusive jurisdiction of any civil action commenced against the

United States . . . that arises out of any law of the United States providing for . . .

tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other

than the raising of revenue."  "The Court of International Trade shall possess all the

powers in law and equity of, or as conferred by statute upon, a district court of the

United States."  28 U.S.C. § 1585.

"A preliminary injunction is an extraordinary remedy never awarded as of

right."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  To obtain a

preliminary injunction, a party must demonstrate "(1) likelihood of success on the

merits, (2) irreparable harm absent immediate relief, (3) the balance of interests weighing in favor of relief, and (4) that the injunction serves the public interest." Silfab Solar, Inc. v. United States, 892 F.3d 1340, 1345 (Fed. Cir. 2018) (citing Winter, 555 U.S. at 20).

The Court of Appeals for the Federal Circuit has historically applied a "sliding scale" approach. See Qingdao Taifa Grp. Co. v. United States, 581 F.3d 1375, 1381–82 (Fed. Cir. 2009); see also Ugine & Alz Belg. v. United States, 452 F.3d 1289, 1293 (Fed. Cir. 2006). Under the sliding scale approach, "the greater the potential harm to the plaintiff, the lesser the burden on Plaintiffs to make the required showing of likelihood of success on the merits." Ugine, 452 F.3d at 1293 (internal quotation marks and citations omitted). Thus, where the harm is great, a movant must only "demonstrate that it has at least a fair chance of success on the merits." Wind Tower Trade Coal. v. United States, 741 F.3d 89, 96 (Fed. Cir. 2014). Conversely, courts may not lessen a movant's burden of demonstrating a likelihood of irreparable harm, regardless of the strength of the other factors. Winter, 555 U.S. at 22.

## DISCUSSION

Plaintiffs have established their entitlement to a preliminary injunction. Here, Plaintiffs demonstrated they will likely suffer irreparable harm because their entries of subject merchandise will liquidate absent an injunction. Moreover, Plaintiffs persuasively argue that there is sufficient uncertainty as to the availability of relief under Shinyei Corp. of America v. United States, 355 F.3d 1297 (Fed. Cir. 2004), to establish the likelihood that Plaintiffs will be unable to recover duties unlawfully paid should they be successful in their claim on the merits, thus demonstrating

irreparable harm.  See Am. Signature, Inc. v. United States, 598 F.3d 816, 829 (Fed. Cir. 2010).  Consequently, Plaintiffs' burden to demonstrate a likelihood of success on the merits is reduced, and Plaintiffs satisfy their reduced burden by raising sufficiently serious and substantial questions regarding the interpretation and application of Section 307 of the Trade Act.  Likewise, Plaintiffs have sufficiently demonstrated that the balance of the equities and public interest factors weigh heavily in their favor.

## I.      Irreparable Harm

For the reasons that follow, the liquidation of Plaintiffs' entries constitutes irreparable harm in this case because it may foreclose Plaintiffs' ability to challenge the Government's imposition of duties paid or have those duties returned. Irreparable harm is a "viable threat of serious harm which cannot be undone," Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983) (emphasis removed) (quoting S.J. Stile Assocs. Ltd. v. Snyder, 649 F.2d 522, 525 (C.C.P.A. 1981)), or remedied by money damages, see, e.g., Metalcraft of Mayville, Inc. v. Toro Co., 848 F.3d 1358, 1368 (Fed. Cir. 2017).  The potential unavailability of reliquidation or refund in this case sufficiently demonstrates irreparable harm.[4]  Moreover, the Government fails to meaningfully dispute that liquidation will cause harm that cannot be undone and instead argues that any unlawfully collected duties would be forever unrecoverable.

---

[4] Liquidation is defined as "the final computation or ascertainment of duties."  19 C.F.R. § 159.1.

Liquidation, as the final computation of duties, will constitute irreparable harm unless an importer can obtain refunds or reliquidation because it cuts off judicial review and eliminates any chance of recovery of unlawful exactions. See Zenith, 710 F.2d at 810. In Zenith, the Court of Appeals held that liquidation of entries moots the action with respect to those entries and constitutes irreparable harm. Id. The Court of Appeals explained that liquidation would not only involve economic harm, but also the "statutory right to obtain judicial review of the determination." Id. Here, without reliquidation or refunds, Plaintiffs will be denied meaningful judicial review for each entry that liquidates.[5] The denial of judicial review is irreparable harm.

---

[5] As to the deprivation of judicial review, at oral argument Defendant argued that Zenith's concern regarding the availability of judicial review might not be present in this case. Oral Arg. at 00:22:13. Although Zenith involved a domestic producer's claim that antidumping duties imposed on an importer's entries should be higher, the facts of this case suggest that mootness is a concern here. The importers here may have multiple entries that may be subject to the 301 duties, but each entry is its own transaction and occurrence giving rise to its own cause of action. See United States v. Stone & Downer Co., 274 U.S. 225, 236 (1927). Thus, although an importer may have more than one chance to challenge 301 duties (and it is conceivable that it may not, it may have only had one entry) it may lose its right to judicial review on any entry that is liquidated. The loss of judicial review for that entry is a harm. Stone & Downer, which focused on classification of entries, held that res judicata did not bar claims previously litigated with respect to prior entries. Id. at 236–37. Here, the danger is not that judicial review will be unavailable because a claim has already been litigated but that judicial review will be unavailable because it may never be litigated with respect to an entry that has been liquidated. Nevertheless, it is unclear why the rationales underlying Stone & Downer would not also be applicable here. Accepting the view that the loss of judicial review for some entries is not irreparable harm because there are other entries for which review still exists leads to the illogical conclusion that allegedly unlawful government exactions for which there is no recompense cannot constitute irreparable harm so long as those exactions are ongoing.

Further, although the CIT is granted broad statutory authority to order appropriate relief, the Court of Appeals has cast sufficient doubt as to the scope of that authority to create a likelihood of irreparable harm. "The Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585.[6] "The Court of International Trade may enter a money judgment for or against the United States in any civil action commenced under section 1581 or 1582 of this title." Id. § 2643(a)(1). Moreover, the CIT can order "any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition." Id. § 2643(c)(1). Given this seemingly broad statutory authority to fashion appropriate relief, the court would like to agree with the Dissent that we have the clear power to order reliquidation in the event Plaintiffs are ultimately successful, as we view the statute as providing this Court with the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties.[7]

---

[6] The legislative history of the Customs Courts Act of 1980, Pub. L. No. 96–417, 94 Stat. 1727 (1980), supports the broad interpretation of Congress' grant of authority to the CIT. See, e.g., 126 Cong. Rec. H9333–49, at H9342–43 (daily ed. Sept. 22, 1980) (statement of Rep. Rodino) ("Another essential provision in this legislation is proposed section 1585. This section removes any doubt that the [CIT] has authority to award the relief necessary to remedy an alleged injury in a civil action before the court. The committee intends to make it clear that the court possesses all plenary powers in law and equity, thereby completing the full transformation of the court to article III status." (emphasis added)).

[7] The Government specifically asks this court not to reach the issue for the purposes of this motion. Defs.' Opp'n at 42 (asking the court to deny Plaintiff's motion "without reference to the availability, or not, of reliquidation as a remedy at the end of the case."). Opting not to assert a serious challenge to the reparability of the undeniable harm of liquidation, the Government is left to argue that Plaintiffs' delay in seeking (footnote continued)

However, the Court of Appeals has explicitly and implicitly called the breadth of the CIT's statutory authority into question.  For example, in <u>Shinyei</u>, the Court of Appeals did not simply hold that the CIT had the authority to order reliquidation based on the plain language of the statute, but rather went on to state that reliquidation was appropriate in that case because to hold otherwise "would preclude enforcement of court orders as to duty determinations as soon as entries subject to those orders are liquidated."  <u>Shinyei</u>, 355 F.3d at 1312.  Arguably, the holding of <u>Shinyei</u> is that the Court of Appeals "decline[d] to find that the statute as a whole was intended to preclude judicial enforcement of court orders after liquidation."[8] <u>Id.</u>  One view of <u>Shinyei</u> would be that it confirmed the CIT's power to order money judgment in Section 1581 actions and to order reliquidation if necessary; however, subsequent cases suggest that the holding in <u>Shinyei</u> was a narrow one.

In <u>Ugine</u>, an importer challenged Commerce's liquidation instructions on the grounds that the instructions "for entries imported prior to the fourth administrative review are inconsistent with Commerce's determination in the subsequent fourth administrative review."  452 F.3d at 1296.  The Court of Appeals characterized the

---

an injunction undercuts their motion.  <u>Id.</u> at 33–34.  This argument fails to acknowledge that Plaintiffs commenced their action soon after their Section 301 exclusion expired.  <u>Id.</u> at 32; Pls.' Reply at 22.  This argument also ignores the fact that the Government did not articulate its position as to refund relief until the filing of the Joint Status Report on April 12, 2021.  <u>See</u> Jt. Status Report at 7–8.  Up until the point when the Government asserted its position that it would seek to preclude reliquidation or refund, Plaintiffs had no reason to seek an injunction.  <u>See, e.g.</u>, <u>Sumecht N.A., Inc. v. United States</u>, 923 F.3d 1340, 1348 (Fed. Cir. 2019) (Government concession regarding the availability of refunds defeated the motion for a preliminary injunction).  The Government cannot complain of Plaintiffs' delay in moving for injunctive relief when Defendants' past conduct gave Plaintiffs every reason to believe such a motion would be unnecessary.

[8] Indeed, the Government makes this argument.  <u>See</u> Defs.' Opp'n at 40.

key consideration in Shinyei to be that the importer "was complaining that Commerce's instructions . . . did not reflect the results of the administrative review that covered those entries," and found that because that was not the exact theory propounded by the importer in Ugine that the "difference between the two cases— and the possibility that Shinyei will not be interpreted to encompass the sort of claim at issue here—raises doubt whether [Plaintiffs] will have the opportunity to obtain reliquidation once [their] entries are liquidated." Id. By describing Shinyei in such narrow terms—suggesting that a different type of challenge to Commerce's liquidation instructions might lead to a different result and failing to even mention the CIT's statutory authority to fashion relief—Ugine casts doubt as to the availability of reliquidation and refunds in this case.

Similarly, the Court of Appeals in American Signature held that Shinyei relief was in doubt where an importer challenged Commerce's attempt to correct an error contained in the final results of its administrative review of an antidumping duty. 598 F.3d at 822–24, 829. In American Signature, the Court of Appeals stated that Shinyei stands for the proposition that "in an action challenging liquidation instructions under 28 U.S.C. § 1581(i), the [CIT] may, under certain circumstances, use its equitable powers to compel reliquidation of entries if a preliminary injunction has been sought and denied." Id. at 828 (citing Shinyei, 355 F.3d at 1312). Thus, the Court of Appeals continued to cast Shinyei in an extremely narrow light. Rather than interpreting Shinyei as setting forth the CIT's broad remedial powers based on clear, wide-ranging statutory authority, the Court of Appeals limited Shinyei relief to an undefined set of "certain circumstances" only where a preliminary injunction had

been sought and denied.  Id.  American Signature did not address the statutory

framework in its discussion of irreparable harm and did not provide any further

clarification as to when Shinyei applies.  Id. at 828–29.[9]

---

[9] The Dissent notes that in Ugine the CIT did not analyze Shinyei in its denial of a preliminary injunction, and that the Court of Appeals declined to decide whether Shinyei relief would be available absent a ruling from the CIT or briefing from two of the three parties.  Dissent at 40–41.  That the Court of Appeals in Ugine declined to decide whether Shinyei relief was available and held that uncertainty over such relief constitutes irreparable harm weigh strongly in favor of granting preliminary relief here.  The Dissent also states that the nature of the relief sought in Ugine (challenging Commerce's liquidation instructions) differs from the relief sought in this case, and that Ugine was decided prior to Winter.  Id. at 41.  However, Ugine, American Signature, and this case were all commenced under 28 U.S.C. § 1581(i), so the court's statutory authority for granting relief is the same, making the differing theories of harm immaterial.  See Ugine, 452 F.3d at 1296; Am. Signature, 598 F.3d at 822; see also 28 U.S.C. § 2643.  Although the Dissent concedes that American Signature was decided post-Winter and that the CIT had denied a preliminary injunction specifically because it found Shinyei to be applicable (thus satisfying two of the Dissent's three concerns regarding Ugine), Dissent at 41–42, the Dissent claims that the Court of Appeals did not explain why Shinyei would not be available and that the Court of Appeals has since distanced itself from Ugine and American Signature by stating that those cases do not create a presumption of the uncertainty of Shinyei relief in the preliminary injunction context.  Id. at 42.  Once again, the Court of Appeals' decision to find that Shinyei relief was uncertain weighs in favor of granting an injunction here, particularly because the Court of Appeals declined to explain the scope of Shinyei relief.  Although we agree with the Dissent's analysis of the court's statutory authority in Section 1581(i) cases to order reliquidation and/or a refund of duties that may be found to have been unlawfully exacted, we are bound to follow Court of Appeals precedent.  The Court of Appeals has repeatedly called into question this Court's authority to grant reliquidation in Section 1581(i) cases, declined to pronounce the scope of such authority or when Shinyei relief is available, and held that the uncertainty over such relief sufficiently demonstrates the likelihood of irreparable harm, even post-Winter.  There is no need to rely on a "presumption" of uncertainty of Shinyei relief here, as the Government expressly argues that it is unavailable, unlike in Sumecht, where the Government conceded reliquidation was an available remedy.  See Sumecht, 923 F.3d at 1348.  Since we cannot say that the Court of Appeals would agree that this court has the authority to order reliquidation under 28 U.S.C. § 2643, we must find that the availability of Shinyei relief is uncertain and therefore that Plaintiffs have demonstrated irreparable harm.

Finally, in <u>Sumecht</u>, when affirming the denial of a preliminary injunction because irreparable harm could not be shown, the Court of Appeals did not stop with the statutory language, but rather went on to cast doubt upon the applicability of <u>Shinyei</u> in 1581(i) cases.  923 F.3d at 1347–48.  Indeed, the Court of Appeals did not affirmatively analyze whether <u>Shinyei</u> relief would be available in <u>Sumecht</u>, but rather held that the Government was judicially estopped from asserting that reliquidation would be unavailable in the event the importer was ultimately successful on the merits, eliminating even the possibility of irreparable harm.  <u>Id.</u> at 1348.

Thus, despite the broad statutory language granting the Court authority to order whatever relief is appropriate, the Court of Appeals has consistently refrained from relying on that language in finding the CIT has authority to order reliquidation or refunds in 1581(i) cases and has raised doubts about the CIT's authority to do so. It may be that on appeal the Court of Appeals will make clear that 28 U.S.C. §§ 1585 and 2643 empower the CIT to "enter a money judgment . . . against the United States in any civil action commenced under section 1581" for the return of unlawfully collected duties, 28 U.S.C. § 2643(a)(1), or "may . . . order any other form of relief" including reliquidation, <u>id.</u> § 2643(c)(1), but, until it does, we must conclude that liquidation will result in irreparable economic harm.[10]  The Government does not

---

[10] We cannot disagree with our colleague in the Dissent that "*Winter* establishes that it is not enough for a plaintiff to identify irreparable harm as a *possible* outcome of the denial of the motion for a preliminary injunction."  Dissent at 30–31.  However, in <u>Winter</u> the Court took note that the government "strongly dispute[s]" the harm alleged.  <u>Winter</u>, 555 U.S. at 14.  Here, the Government does not argue that there will not be a harm, or that it will be reparable.  The only contingency, and one the (footnote continued)

argue that liquidation is not a harm, nor does it argue that it is a harm that can be remedied. Defs.' Opp'n at 34–42. Instead, the Government relies upon the truism that financial harm alone is not irreparable. Id. at 34 (arguing the court "repeatedly has declined to find irreparable harm based merely on claims of financial losses"). The Government's argument elides the sine qua non of reparability in this case, namely the availability of reliquidation or refund.[11] Indeed, instead of arguing that Plaintiffs' alleged irreparable harm is reparable (because the court can order reliquidation or refund), the Government asserts the opposite proposition, i.e., that the court cannot order reliquidation or refunds. See Defs.' Opp'n at 41. Thus, the Government's position is that any duties paid are permanently unrecoverable regardless of whether they may have been collected unlawfully. Id. at 42. According to Plaintiffs, the Government would stand to gain an undue windfall of "at least hundreds of millions of dollars and probably billions." Pls.' Reply at 20. The Government's position, if correct, concedes irreparable harm. See Ohio Oil Co. v. Conway, 279 U.S. 813, 815 (1929) (per curiam) (enjoining the collection of a state tax where "[t]he laws of the state afford no remedy whereby restitution of the money so

---

Government argues against, is whether the Court of Appeals will rule that this Court is empowered by 28 U.S.C. § 2643 to remedy that harm; whether the Court of Appeals will so rule is uncertain. Under Federal Circuit precedent, that uncertainty is irreparable harm. Am. Signature, 598 F.3d at 829.

[11] The Government's reliance on Corus Group PLC v. Bush, 26 CIT 937 (2002), and Shandong Huarong General Group Corp. v. United States, 24 CIT 1286 (2000), is misplaced. See Defs.' Opp'n at 34. Unlike here, where Plaintiffs only seek limited relief, i.e., the suspension of liquidation, both cases involved motions seeking to enjoin the Government from the collection of duties. See Corus Grp., 26 CIT at 938; Shandong Huarong, 24 CIT at 1286–87.

paid may be enforced, even where the payment is under both protest and compulsion.").

## II.    Likelihood of Success on the Merits

Plaintiffs raise sufficiently serious and substantial questions as to the proper interpretation of Section 307 of the Trade Act to warrant injunctive relief in this case. Plaintiffs argue that Sections 307(a)(1)(B)–(C) of the Trade Act limit the President's and the USTR's authority to increase tariffs in the context of Section 301(b). Pls.' Reply at 6–11. Defendants defend the President's authority based upon, inter alia, the plain language of the statute. Defs.' Opp'n at 21–22. Plaintiffs' interpretation of the statute raises serious and substantial questions about the scope of the USTR's statutory authority to act, which should be resolved via full litigation of the merits of these claims.

Plaintiffs need only demonstrate a fair chance of success on the merits because, as discussed, the factor of irreparable harm weighs sharply in favor of granting a preliminary injunction. See Qingdao, 581 F.3d at 1381–82; Wind Tower, 741 F.3d at 96 (a movant must only "demonstrate that it has at least a fair chance of success on the merits").[12] Under the sliding scale approach, "the greater the potential harm to

---

[12] Although Defendants assert that the Court of Appeals' "sliding scale" approach may have been overruled by Winter, the Supreme Court did not expressly prohibit a sliding scale approach in all circumstances, and instead found that the Ninth Circuit's diminished irreparable harm requirement was inappropriate. See Winter, 555 U.S. at 22. Furthermore, at least two Courts of Appeals have refused to interpret Winter in the broad manner that Defendants urge the court to adopt. Reilly v. City of Harrisburg, 858 F.3d 173, 176–79 (3d Cir. 2017); All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131–35 (9th Cir. 2011). But see Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). Moreover, the Federal Circuit has continued to apply the sliding scale even post-Winter. See Qingdao, 581 F.3d at (footnote continued)

the plaintiff, the lesser the burden on Plaintiffs to make the required showing of

likelihood of success on the merits." Ugine, 452 F.3d at 1293 (internal quotation

marks and citations omitted).

> Where it is clear that the moving party will suffer substantially greater
> harm by the denial of the preliminary injunction than the non-moving
> party would by its grant, it will ordinarily be sufficient that the movant
> has raised serious, substantial, difficult and doubtful questions that are
> the proper subject of litigation.[13]

Id. (internal quotation marks omitted) (quoting Ugine-Savoie Imphy v. United States,

24 CIT 1246, 1251 (2000)).

Section 301 of the Trade Act authorizes the President and the USTR to take

action to eliminate certain acts, policies, or practices of a foreign government that

burden U.S. commerce. See 19 U.S.C. § 2411. As relevant here, the USTR may

exercise discretionary authority when the USTR determines "an act, policy, or

practice of a foreign country is unreasonable or discriminatory and burdens or

restricts United States commerce" and action by the United States is appropriate. Id.

§ 2411(b)(1). Section 307(a)(1) of the Trade Act provides the USTR authority to

"modify" an action commenced under Section 301 under certain enumerated

---

1381–82. The Court of Appeals' statement in Silfab, that it was "not deciding"
whether the sliding scale approach was still good law, falls far short of overruling
prior precedent. 892 F.3d at 1345. Therefore, until the Federal Circuit states
otherwise, the sliding scale approach as articulated in Qingdao remains good law in
courts bound by Court of Appeals for the Federal Circuit precedent. See generally,
581 F.3d at 1381–82.

[13] Other circuit courts have stated that a fair chance is less than 50%. See Citigroup
Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 34–
38 (2d Cir. 2010) (rejecting claim that Winter requires a showing of greater than 50%
chance of success); D.M. v. Minn. State High Sch. League, 917 F.3d 994, 999–1000
(8th Cir. 2019) (defining "fair chance" as less than 50%); Leiva-Perez v. Holder, 640
F.3d 962, 967–68 (9th Cir. 2011) (movant does not need to show success is more likely
than not).

circumstances.  See id. § 2417(a)(1).  At issue here are the conditions and scope of permissible modifications.

Section 307 provides, in relevant part,

(a) In general
(1) The Trade Representative may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, that is being taken under section 2411 of this title [Section 301] if—
(A) any of the conditions described in section 2411(a)(2) of this title [Section 301(a)(2)] exist,
(B) the burden or restriction on United States commerce of the denial rights, or of the acts, policies, and practices, that are the subject of such action has increased or decreased, or
(C) such action is being taken under section 2411(b) of this title [Section 301(b)] and is no longer appropriate.

Id. § 2417(a).

Plaintiffs contend that the text of Sections 307(a)(1)(B) and 307(a)(1)(C), both of which Defendants claim as authority for promulgating the List 3 and List 4A duties, limit the USTR's authority to either reduce or terminate Section 301(b) tariffs, or to increase the tariffs in limited circumstances not applicable here.  Pls.' Reply at 6–11.  Plaintiffs argue the clause, "that are the subject of such action," in Section 307(a)(1)(B) requires that any increase in an action relate to the same conduct that formed the basis of the USTR's initial action.  Id. at 7.  Moreover, Plaintiffs contend that Section 307(a)(1)(C), when read as a counterpart to Section 307(a)(1)(A), must be interpreted as only providing the President and the USTR with the authority to "reduce or terminate" a Section 301(b) action when the USTR finds such action is "no longer appropriate."  Id. at 9.

Plaintiffs' proffered interpretation of the phrase "that are the subject of" the Section 301 action undeniably raises a serious and substantial question as it would

limit the President's ability to increase a Section 301 action only when there is a change in the conduct giving rise to the Section 301 action, not when a country retaliates against the Section 301 action by taking action that is adverse to U.S. commerce, but not, at least superficially, the type of action that the initial Section 301 action sought to remedy. Id. at 6–8. If Plaintiffs' interpretation is correct, the USTR's modification of the Section 301(b) action falls outside the scope of delegated authority. Plaintiffs' interpretation of Section 307(a)(1)(B) is a plausible literal reading of the statute raising a serious and substantial question. Thus, Plaintiffs have demonstrated a fair chance of success that their interpretation of Section 307(a)(1)(B) prevents the USTR from increasing a Section 301(b) action in response to retaliatory, but superficially unrelated, tariffs.[14]

That Plaintiffs' interpretation is plausible does not diminish Defendants' argument that "the increase in the tariffs was necessary to further encourage China to eliminate the unfair policies identified in the USTR's investigation (that List 1 and List 2 had demonstrably failed to do), and thus to further support the effectiveness of the initial section 301 action." Defs.' Opp'n at 22. Likewise, Defendants' position that China's retaliatory tariffs were enacted with the goal of pressuring the President and the USTR to drop the Section 301 action so that China could continue its unfair practices is a compelling argument. Id. According to Defendants, the USTR's List 3 and List 4A tariffs do constitute a modification of the Section 301(b) action in response

---

[14] Here, Plaintiffs assert that the USTR's stated justification for promulgating the List 3 and List 4A tariffs was an increased burden on U.S. commerce resulting from China's retaliatory tariffs, which were not the subject of the initial Section 301(b) action.

to an increased burden of the acts, policies, and practices that are the subject of the action on U.S. Commerce.  Id.  However, at this stage of the proceedings without full briefing, Defendants' position is not so clearly correct as to prevent Plaintiffs from preserving the status quo pending the resolution of the merits of the parties' claims.

Likewise, Plaintiffs' argument that Section 307(a)(1)(C) fails to supply the needed authority in this case is not without merit and it too raises a difficult and substantial question.  Plaintiffs claim that Section 307(a)(1)(C) must be read as a mirror of Section 307(a)(1)(A), but while Section 307(a)(1)(A) deals with modification of mandatory actions commenced under Section 301(a), Section 307(a)(1)(C) deals with modification of discretionary actions commenced under Section 301(b).  Pls.' Reply at 8–10.  According to Plaintiffs, the circumstances in which Section 307(a)(1)(A) permits "modification" make clear that only a reduction or termination of the Section 301(a) action is permitted.  Id.  Thus, Plaintiffs urge the court to interpret Section 307(a)(1)(C) as similarly limiting the USTR when it finds a Section 301(b) action to "no longer be appropriate."  Id.  Although Defendants argue that nothing in the plain text of Section 307(a)(1)(C) limits the USTR's authority to "modify" a Section 301(b) action when the USTR finds that action is "no longer appropriate," see Defs.' Opp'n at 22–24, given that "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," Lal v. M.S.P.B., 821 F.3d 1376, 1378 (Fed. Cir. 2016) (citations omitted), and that neither party has cited any case in which the Government has increased an action under Section 301(b) under the claimed authority of Section 307(a)(1)(C), Plaintiffs at this stage of the

proceedings raise substantial and serious questions, which should be determined after full briefing.

Finally, Plaintiffs assert a plausible APA claim on which they have a fair chance of success on the merits. Plaintiffs assert that the USTR failed to provide an adequate opportunity to comment on its determination to implement the List 3 and List 4A duties. See Pls.' Reply at 16. The Government asserts that the action was that of the President, rather than the USTR, and thus not subject to the APA. Defs.' Opp'n at 26–27. Neither party adequately addresses the question of whether the court should consider List 3 and List 4A the products of Presidential action or USTR action. See Pls.' Reply at 18–19; Defs' Opp'n at 26. Further, the Government claims that even if the challenged action is that of the USTR, the USTR provided adequate opportunity to comment. Defs.' Opp'n at 28. Both parties' treatment of this issue is cursory at best. Plaintiffs allege that "initial and rebuttal List 3 comments were due simultaneously, while List 4 rebuttal comments were due just days after the hearing (with over 300 witnesses) concluded." Pls.' Reply at 16. Plaintiffs also claim that the USTR announced the imposition of List 3 duties "mere days after the comment period ended," which they suggest is evidence that the USTR did not consider the comments prior to implementing the duties. Id. The Government contends that the USTR imposed the duties "following seven weeks of public notice, hearings, and extensive opportunities for comment." Defs.' Opp'n at 12. Defendants further assert that they "provided sufficient notice," "solicited comments from the public," and "held a public hearing, even though none was required." Id. at 28. Neither party offers dispositive evidence or argumentation on the adequacy of the comment period, so the court

concludes that Plaintiffs raise a serious question that warrants meaningful review. Regardless, the amount of time given for interested parties to comment as well as the amount of time the USTR had to consider public comments suggest that Plaintiffs have a fair chance of success in their APA claim should the court conclude that the APA applies.  Pls.' Reply at 16.

Although Defendants' position as to the President's and the USTR's authority to act under the statute may ultimately prevail, it is not "so clear-cut" as to foreclose Plaintiffs' ability to fully litigate the matter.  See Ugine, 452 F.3d at 1295.  Plaintiffs raise a serious, substantial, and difficult question which, for the purposes of this motion, meet their reduced burden to show a "fair chance" of success on the merits. See Wind Tower, 741 F.3d at 96.[15]

## III.    Balance of the Equities

The balance of the equities tips in Plaintiffs' favor.  Plaintiffs seek narrow relief, the suspension of liquidation.  Although the administrative burden on the Government to effectuate the suspension of liquidation is not insignificant, see Decl. of Thomas Overacker in Supp. of Defs.' Opp'n to Pls.' Mot. for a Prelim. Inj., May 13, 2021, ECF No. 304-1 ("Overacker Decl."), ¶¶ 4–12, the court can fashion an injunction which allows the Government to minimize that burden.

---

[15] Defendants also raise a number of defenses to Plaintiffs' action that they plan to address more fully in the briefing on the merits and which they fault Plaintiffs for not fully addressing.  These defenses include: that the President is not subject to the APA; that the determination was a non-justiciable political question; that the determination falls in the foreign affairs function exception; and that even if the APA applies, the USTR's actions were not arbitrary and capricious.  Defs.' Opp'n at 25.  It is unclear at this stage in the proceedings whether any of these defenses may ultimately prevail and none is so clear cut as to defeat the fair chance that Plaintiffs may prevail.

Plaintiffs' request for relief is narrow; Plaintiffs ask for the suspension of liquidation. Pls.' Mot. at 1. Suspension of liquidation maintains the status quo: the Government will still collect the duties pending the merits determination, but as liquidation is the final computation of duties, their finality is delayed. If Plaintiffs are unsuccessful in their challenge, the Government will not lose any revenue.

Undeniably, implementing the stay will impose a burden on the Government.[16] Defendants explain that suspending liquidation for millions of entries is an enormous task.[17] See Overacker Decl. ¶¶ 4–12. To effectuate liquidation, each affected importer would have to be identified by its importer number. Defs.' Opp'n at 30–32; Overacker Decl. ¶ 7. U.S. Customs and Border Protection would then need to identify the relevant Customs Center for each importer. Overacker Decl. ¶ 7. Alternatively, a task force could be established to handle mass suspensions. Id. A report would need to be generated for each importer to identify any unliquidated entries subject to the challenged tariffs. Id. The Government claims that it would have to run over 6,500 reports just to identify the unliquidated entries filed by each individual importer. Id. Each entry would then need to be suspended, which could be complicated by the fact that some entries may already be suspended. Id. ¶ 8. We

---

[16] As of March 31, 2021, there had been approximately 12.7 million entries of subject merchandise since the USTR commenced the Section 301(b) action. See Overacker Decl. ¶ 4. There are approximately 6500 individual importers that would be subject to this injunction. Id. ¶ 7(a). Customs would need to identify imports that are subject to both the Section 301 tariffs and the injunction on a rolling basis and take the administrative actions described in the Overacker Decl. in an expedient manner given that without intervening action, entries will generally liquidate by operation of law one year after entry. See 19 U.S.C. § 1504(a); 19 C.F.R. § 159.11.

[17] Although Plaintiffs argue that the task of suspending liquidation is a routine burden and is a fairly straightforward task, see Oral Arg. at 00:43:54, even the simplest task can be overwhelming if one has to do it millions of times.

agree that the Government's resources are not unlimited, and personnel required to effectuate the suspension will necessarily be unable to perform other duties that are important. Nonetheless there is a solution to these competing interests.

Plaintiffs argue that the Government could avoid the burden of suspending liquidation during the pendency of these proceedings simply by conceding that the court has the power to order refunds or reliquidate any liquidated entries.[18] Pls.' Reply at 1, 2, 24. Indeed, the Government has avoided the need to suspend liquidation by conceding the availability of refunds. Sumecht, 923 F.3d at 1348. Such a concession is problematic as it would estop the Government from challenging the authority of the Court to grant reliquidation or refund. Id. The Government is within its right to craft an argument that the Court of Appeals should not allow reliquidation in this case based upon Court of Appeals precedent post-Shinyei. See Defs.' Opp'n at 36–42. Indeed, the Government may also change its view of what the law allows.[19] If the Government has a good faith belief that the Court does not have the power to order refunds or liquidation under the law, then it should not be forced to sacrifice that position for the sake of administrative convenience. Nonetheless, the Government's right to make a good faith challenge to the Court's power should not leave Plaintiffs without a remedy should the exactions ultimately be determined to

---

[18] The Government has admitted that the CIT can order reliquidation and stipulated to such relief in the past. See Sumecht, 923 F.3d at 1347; J. Conrad Ltd. v. United States, 44 CIT __, __, 457 F. Supp. 3d 1365, 1379 (2020); see also 28 U.S.C. §§ 1585, 2643(a)(1) (CIT has all the powers of a district court, including the authority to issue a money judgement against the United States).

[19] Plaintiffs do not dispute that the Government can change its position. See generally, Pls.' Mot. at 8–12.

have been unlawful. The absence of a remedy for an unlawful exaction is the definition of inequity.

Therefore, the court will fashion an order that relieves some of the burden imposed upon the Government while maintaining the status quo, i.e., preserving a remedy for unliquidated entries subject to the challenged tariffs. It is within the court's power to issue an injunction that requires the Government to suspend liquidation for each entry unless the Government opts to stipulate that it will refund the unlawfully collected duties for that specific entry. Consequently, the Government will not be conceding the availability of refunds for all Section 301 duties paid as a result of List 3 and List 4A, rather it will be stipulating that it will refund only unlawful duties paid in connection with entries for which it refuses to suspend liquidation. Such an order maintains the status quo, preserves the Government's ability to challenge the Court's power to refund or order reliquidation, and offers the Government, at its option, a route to avoid the administrative burden of suspending liquidation on millions of entries.

The consequences of this order sufficiently balance the equities. If Plaintiffs are successful with their Section 301 challenge as well as their claim that the Court has the power to order refunds or liquidation, then no harm will have been done. If Plaintiffs are successful with their Section 301 challenge and not with their claim that the Court has the power to order a refund and re-liquidation, then again no harm will have been done because this order will have prevented the unlawful collection of duties without a refund possibility, a clear irreparable harm. If Defendants are successful in their defenses, then the Government will collect all the duties to which

it is entitled regardless of the Court's power to refund or order reliquidation. Thus, the only objection Defendants could have to the court issuing its order would be that Defendants would potentially forgo a windfall of unlawfully paid and irrecoverable duties. It is both inequitable and against the public interest for the Government to retain unlawfully collected duties. At the same time, the order will allow the Government to avoid the burden of effectuating suspension of liquidation for as many entries as it wishes without conceding the issue of the Court's power to order refund or reliquidation.

## IV.    Public Interest

The Government's argument that there should be no stay of liquidation and that there is no right to refund would effectively deny judicial review of the imposition of the Section 301 duties on liquidated goods. Short-circuiting judicial review violates the public interest. Neo Solar Power Corp. v. United States, 40 CIT __, __, Slip Op. 16-58, at 5–6 (June 9, 2016).

The Government argues that the public interest is the "policy underlying the specific legislation." Defs.' Opp'n at 30. Even accepting Defendants' position as correct, the issuance of an injunction does not undermine that interest, it merely maintains the status quo. See Ugine, 452 F.3d at 1297; see also Am. Signature, 598 F.3d at 830 ("The public interest is served by ensuring that governmental bodies comply with the law."). Indeed, preserving judicial review of the application of the underlying legislation fosters the public interest in the lawful application of that legislation. Neo Solar Power, 40 CIT at __, Slip Op. 16-58 at 5. The Government argues that "[a] suspension of liquidation would encourage China to maintain its

harmful practices while awaiting resolution of the [S]ection 301 cases" or might encourage importers to rush to purchase Chinese goods. Defs.' Opp'n at 30. The court cannot understand this argument. Although Plaintiffs seek to suspend liquidation, they do not seek to enjoin the collection of the Section 301 tariffs. Importers must still deposit those tariffs and will not be able to have them refunded unless Plaintiffs are successful. If the Government's argument is that it serves the public's interest to retain duties ultimately determined to be unlawful, to render meaningless a determination as to lawfulness, the Government is mistaken.

## CONCLUSION

In sum, the court will grant Plaintiffs' motion for leave to file a reply and Plaintiffs' motion for a preliminary injunction. Moreover, to give the parties time to implement appropriate procedures, gather pertinent information, and otherwise take necessary action to comply with this order, the court will temporarily restrain liquidation of any unliquidated entries of merchandise imported from China by any plaintiffs in the Section 301 Cases which are subject to List 3 or List 4A duties.


                                             /s/ Claire R. Kelly
                                            Claire R. Kelly, Judge


                                             /s/ Jennifer Choe-Groves
                                            Jennifer Choe-Groves, Judge


Dated:          Tuesday, July 6, 2021
                New York, New York

Barnett, Chief Judge, dissenting:

I must dissent from my colleagues' grant of the preliminary injunction. While I agree with much of their analysis, there is a critical area of disagreement between us: namely, I find that Plaintiffs have failed to establish a likelihood of irreparable harm and this failure is fatal to their motion for a preliminary injunction.

The four-factor test the court considers in evaluating a motion for a preliminary injunction is well established. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Nevertheless, in *Winter*, the U.S. Supreme Court considered whether the lower court properly evaluated the irreparable harm factor when the lower court found that the plaintiffs had demonstrated a "strong" likelihood of success on the merits. *Id.* at 20–22. In that case, the lower court had used a sliding scale analysis and concluded that the plaintiffs need only show "a 'possibility' of irreparable harm." *Id.* at 21. The Supreme Court rejected that approach and found, consistent with the extraordinary nature of preliminary relief, that the plaintiffs must demonstrate not merely a possibility, but a likelihood, that they would be irreparably harmed without an injunction. *Id.* at 22.

Regardless of the continuing validity of the sliding scale approach as it is typically applied in trade cases post-*Winter*,[1] *Winter* establishes that it is not

---

[1] In trade cases, it is often the situation that liquidation leads to irreparable harm such that, in the context of evaluating a preliminary injunction motion, the court has applied a sliding scale approach to analyzing the likelihood of success on the merits. The sliding scale requires a plaintiff to demonstrate a "fair chance of success on the merits" by raising "questions which are 'serious, substantial, difficult (footnote continued)

enough for a plaintiff to identify irreparable harm as a *possible* outcome of the
denial of the motion for a preliminary injunction. Instead, a plaintiff must establish
that any irreparable harm is *likely*. In this case, I cannot find that there is a
likelihood of irreparable harm when my colleagues and I agree that any harm
arising from liquidation would be reparable by the court by means of an order of
reliquidation or a money judgment pursuant to 28 U.S.C. § 2643(a)(1) or (c)(1). *See
Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate
compensatory or other corrective relief will be available at a later date . . . weighs
heavily against a claim of irreparable harm." (quoting *Va. Petroleum Jobbers Ass'n
v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam))); Maj. Op. at
12 ("[W]e view the statute as providing this Court with the explicit power to order
reliquidation and refunds where the government has unlawfully exacted duties.").
Defendants' ("the Government") arguments notwithstanding, where I disagree with
my colleagues is in my view of the binding precedent from the U.S. Court of Appeals
for the Federal Circuit ("Federal Circuit"). In contrast with the Majority, I find that
this binding precedent suggests no more than a remote chance that the appellate
court would find that this court is not empowered to provide relief with respect to
any liquidated entries and, therefore, that Plaintiffs have established a likelihood of
irreparable harm.

---

and doubtful.'" *Kwo Lee, Inc. v. United States*, 38 CIT __, __, 24 F. Supp. 3d 1322,
1326 (2014). Because I find that Plaintiffs have not established a likelihood of
irreparable harm, I do not address this aspect of the sliding scale approach post-
*Winter*.

The scope of the court's powers in law and equity[2] are not often at issue given the unique jurisdiction of the U.S. Court of International Trade ("CIT"), which typically involves addressing customs protest challenges, reviewing administrative determinations in unfair trade or evasion cases, and presiding over enforcement actions against importers. *See generally* 28 U.S.C. §§ 1581, 1582 (stating the court's jurisdictional bases). This case generally, and Plaintiffs' motion for a preliminary injunction specifically,[3] requires the court to consider the scope of its remedial powers in the context of alleged injury arising from liquidation. Notwithstanding the investiture of broad equitable powers in the CIT, Congress also enacted specific statutory provisions pursuant to which liquidation that is final and conclusive precludes the court from awarding relief. While the vast majority of actions before the CIT arise in connection with the statutory provisions for which Congress has expressly spoken with respect to the effect of liquidation, this case arises under the

---

[2] Pursuant to 28 U.S.C. § 1585, the CIT "shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States."
[3] The Government asserts that the court need not reach the issue of refunds or reliquidation because, according to the Government, the motion may be denied on other grounds. *See* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. Limited to Suspension ("Defs.' Opp'n") at 35, 42, ECF No. 304. The Government's reluctance in this regard likely stems from its precarious legal position. The Government's position regarding the lack of an available remedy for liquidated entries effectively amounts to an argument against its position on the likelihood of irreparable harm, leaving it to instead rely on assertions of undue delay and the insufficiency of economic harm to undermine Plaintiffs' case. *See id.* at 33–35. As discussed herein, however, the Government's arguments that the court lacks the authority to order reliquidation are unpersuasive. Notwithstanding the Government's suggestion, *see infra* note 8, further briefing on remedy is not necessary at this time. The issue here is only whether the court could provide a remedy—an issue plainly in play based on Plaintiffs' motion. The Government will have an opportunity to brief various options for appropriate remedies, if necessary, when the court reaches the merits.

court's residual jurisdiction provision, pursuant to which the court retains all its

powers in law and equity to provide relief consistent with 28 U.S.C. § 2643.

In cases arising pursuant to the court's jurisdiction under 28 U.S.C.

§ 1581(a), the finality of liquidation is governed by 19 U.S.C. § 1514(a).  That

provision provides:

> [D]ecisions of the Customs Service . . . as to . . . (2) the classification
> and rate and amount of duties chargeable; [or] . . . (5) the liquidation or
> reliquidation of an entry . . . shall be final and conclusive upon all
> persons . . . unless a protest is filed in accordance with this section, or
> unless a civil action contesting the denial of a protest, in whole or in
> part, is commenced in the [CIT].

19 U.S.C. § 1514(a)(2), (5).  Thus, section 1514(a) precludes the CIT from reviewing

a challenge to—and ordering reliquidation based on—an erroneous decision by U.S.

Customs and Border Protection ("Customs" or "CBP") unless the statutory protest

requirements are met.  *See, e.g.*, *Juice Farms, Inc. v. United States*, 68 F.3d 1344,

1345 (Fed. Cir. 1995); *Mitsubishi Elecs. Am., Inc. v. United States*, 18 CIT 167, 172,

848 F. Supp. 193, 197 (1994).

In litigation under 28 U.S.C. § 1581(c) seeking to challenge an antidumping

or countervailing duty determination, the finality of liquidation is governed by a

different statutory provision, 19 U.S.C. § 1516a.[4]  That provision indicates that

---

[4] Section 1581(c) also confers exclusive jurisdiction on the CIT to review civil actions
commenced pursuant to 19 U.S.C. § 1517, pursuant to which CBP investigates
allegations of evasion of antidumping and countervailing duty orders.  That section
also provides for judicial review of Customs' determinations in those investigations.
While the Government has consented to the entry of preliminary injunctions
suspending liquidation of entries subject to those determinations, *see, e.g.*, Consent
Mot. for a Prelim. Inj., *Royal Brush Mfg., Inc. v. United States*, Court No. 19-cv-
00198 (CIT Nov. 26, 2019), the status of the court's remedial authority in such cases
(footnote continued)

liquidation in accordance with the agency determination is generally final and

conclusive unless an interested party secures a statutory injunction to ensure

liquidation in accordance with any final court decision reviewing the agency

determination. *See* 19 U.S.C. § 1516a(c), (e). This statutory scheme was addressed

by the Federal Circuit at length in *Zenith Radio Corp. v. United States*, 710 F.2d

806 (Fed. Cir. 1983).

In *Zenith*, the appellate court reversed the CIT's denial of a preliminary

injunction to suspend the liquidation of entries subject to an administrative review

conducted by the U.S. Department of Commerce ("Commerce") under 19 U.S.C.

§ 1675. 710 F.2d at 808.[5] The appellate court explained that section 1516a

"permits liquidation in accordance with a favorable [final court] decision . . . only on

merchandise entered after the court decision is published or on earlier entries 'the

liquidation of which was enjoined under subsection (c)(2).'" *Id.* at 810 (quoting 19

U.S.C. § 1516a(e)). In the absence of a "provision permitting reliquidation in this

case or imposition of higher dumping duties after liquidation if [Zenith Radio Corp.

('Zenith')] is successful on the merits," the appellate court concluded that, "[o]nce

liquidation occurs, a subsequent decision by the trial court on the merits of Zenith's

challenge can have no effect on the dumping duties assessed on [subject] entries."[6]

---

absent preliminary relief has not been litigated and is immaterial to the court's
disposition of this motion.

[5] Determinations issued pursuant to 19 U.S.C. § 1675 are reviewable under 19
U.S.C. § 1516a(a)(2)(B)(iii).

[6] While this discussion of the finality of liquidation was critical to the *Zenith*
opinion, that court's finding of irreparable harm was based on the court's finding
that the plaintiff's entire case would be mooted by the combination of the finality of
(footnote continued)

*Id.*; *cf. Mid Continent Steel & Wire, Inc. v. United States*, 44 CIT __, __, 427 F. Supp. 3d 1375, 1382–84 (2020) (in litigation regarding the final determination in an investigation in which success on the merits could lead to revocation of the antidumping duty order, relying on *Zenith*, among other authorities, the court preliminarily enjoined the liquidation of entries subject to the first and subsequent administrative reviews).

*Zenith*, however, is limited to actions reviewable pursuant to 19 U.S.C. § 1516a and is not applicable to an action under the Administrative Procedure Act ("APA"). *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1309 (Fed. Cir. 2004) ("This court's ruling in *Zenith* . . . was explicitly based on the liquidation and injunction provisions in [19 U.S.C. § 1516a], and those provisions are inapplicable here.").

In contrast with the foregoing caselaw, this case implicates the court's jurisdiction pursuant to 28 U.S.C. § 1581(i), whereby the court is within its authority to order reliquidation or other appropriate relief. Specifically, the court's remedial authority is set forth in 28 U.S.C. § 2643.[7] The statute provides, *inter alia*, that the CIT "may enter a money judgment . . . for or against the United States in any civil action commenced under section 1581 or 1582 of this title," 28 U.S.C.

---

the liquidation of prior entries and the inability of any final court decision to provide prospective relief because future entries could be subject to future administrative review determinations. 710 F.2d at 810.

[7] Congress enacted 28 U.S.C. §§ 1585 and 2643 as part of the Customs Courts Act of 1980, Pub. L. No. 96–417, 94 Stat. 1727 (1980).

§ 2643(a)(1),[8] and, with exceptions not relevant here,[9] may "order *any other form of*
*relief* that is appropriate in a civil action, including, but not limited to, declaratory
judgments, orders of remand, injunctions, and writs of mandamus and prohibition,"
*id*. § 2643(c)(1) (emphasis added).[10]  The statute confers "broad remedial powers" on
the CIT, *Shinyei*, 355 F.3d at 1312, that are not constrained by liquidation in the
absence of a statutory limitation on reliquidation.  "The legislative history of the
Customs Courts Act of 1980 leaves no doubt that 28 U.S.C. § 2643(c)(1) 'is a general
grant of authority for the [CIT] to order *any form of relief* that it deems appropriate

---

[8] At oral argument, the Government represented that the CIT lacks the authority in
this case to order a money judgment pursuant to 28 U.S.C. § 2643(a)(1) and
requested the opportunity to further brief the issue.  Oral Arg. 07:40–08:20, 45:45–
47:15, *available at* https://www.cit.uscourts.gov/sites/cit/files/061721-21-00052-
3JP.mp3 (last visited July 6, 2021) (approximate time stamp from the recording).
As discussed *supra* note 3, further briefing at this time is unnecessary given my
clear view that relief would be available to prevailing Plaintiffs pursuant to 28
U.S.C. § 2643(c)(1).

[9] While the exceptions are not germane to this case, Congress's enumeration of
specific exceptions to the CIT's broad remedial authority further indicates that
Congress did not intend the court to read additional exceptions into the statute
absent contrary congressional intent.  *See, e.g.*, *United States v. Brockamp*, 519 U.S.
347, 352 (1997) (declining to read an equitable exception into the detailed statutory
time limitations set forth in 26 U.S.C. § 6511 given Congress's "explicit listing of
exceptions"); *United States v. Smith*, 499 U.S. 160, 166–67 (1991) (declining to infer
a third exception to the rule that the Federal Tort Claims Act constitutes the
exclusive remedy for torts by Government employees when Congress provided for
two exceptions by statute).

[10] The list is not exhaustive.  Moreover, the term "injunction" may include an
affirmative injunction compelling agency action.  *See generally Home Prods. Int'l,*
*Inc. v. United States*, 43 CIT __, 405 F. Supp. 3d 1368 (2019) (relying, in part, on the
court's authority pursuant to 28 U.S.C. § 2643(c)(1) to enforce a judgment through
an affirmative injunction requiring CBP to reliquidate entries at the rates
established in the court's judgment), *appeal dismissed*, 846 F. App'x 890 (Fed. Cir.
2021).

under the circumstances.'" *United States v. Mizrahie*, 9 CIT 142, 146, 606 F. Supp.

703, 707 (1985) (quoting H.R. Rep. No. 96–1235, at 61 (1980)) (emphasis added).[11]

    In keeping with that view, the court has recognized its authority to order the

remedy of reliquidation when appropriate. *See, e.g.*, *PrimeSource Building Prods.,*

*Inc. v. United States*, 45 CIT __, __, 505 F. Supp. 3d 1352, 1357–58 (2021) (ordering

a refund of any section 232 duties paid on entries liquidated despite the court's

preliminary injunction suspending liquidation); *J. Conrad Ltd. v. United States*, 44

CIT __, __, 457 F. Supp. 3d 1365, 1379 (2020) (finding no irreparable harm given the

court's authority to order reliquidation and noting the Government's position that

liquidation would not preclude the court from ordering such relief); *Gilda Indus.,*

*Inc. v. United States*, 33 CIT 751, 760, 625 F. Supp. 2d 1377, 1385 (2009) (ordering

CBP to refund certain section 301 retaliatory duties without regard to liquidation

status), *aff'd*, 622 F.3d 1358 (Fed. Cir. 2010).  While the Government has stipulated

to the refund or reliquidation of duties in certain cases, *see* Defs.' Opp'n at 36, the

CIT's authority to order refund or reliquidation is based on statute, not

stipulation.[12]

---

[11] Section 2643 of Title 28 complements section 1585.  According to the legislative history, section 1585 was enacted to "remove[] any doubt" as to the scope of the CIT's remedial powers and "make it clear that the [CIT] possesses all plenary powers in law and equity, thereby completing the full transformation of the court to article III status."  126 Cong. Rec. 26,554–55 (1980) (statement of Rep. Rodino); *see also* H.R. Rep. No. 96–1235, at 50 (1980) ("It is the Committee's intent to make clear that the [CIT] does possess the same plenary powers as a federal []district court.").

[12] I agree with the Majority that the Government is entitled to change its position and litigate its new position.  However, as a matter of statutory interpretation, I believe this court may resolve the issue consistent with Federal Circuit precedent and deny the motion for preliminary injunction.

The authority to order reliquidation was expressly addressed by the Federal Circuit in *Shinyei*. *Shinyei* addressed a challenge to Commerce's liquidation instructions issued after litigation regarding an administrative review of the antidumping duty order. *See Shinyei*, 355 F.3d at 1299–1304. The plaintiff, Shinyei Corporation of America ("Shinyei"), had "deposited estimated antidumping duties on the entries at issue at a rate of 45.83% ad valorem." *Id.* at 1300. Following litigation, Commerce's amended results set forth rates ranging from 1.83 percent to 16.71 percent, depending on the manufacturer. *Id.* at 1302. Commerce's amended liquidation instructions did not specifically address Shinyei's entries of subject merchandise from certain manufacturers purportedly covered by the amended results. *Id.* Commerce subsequently issued "clean-up" instructions directing CBP to liquidate "as entered" any remaining entries of subject merchandise that were not covered by the previous instructions. *Id.* at 1303. CBP then liquidated Shinyei's entries at the cash deposit rate. *Id.* Shinyei claimed that the clean-up instructions violated 19 U.S.C. § 1675(a)(2) and sought reliquidation at the lower rates. *Id.* at 1303–04, 1306.

The CIT dismissed Shinyei's complaint for lack of subject matter jurisdiction based on the court's view that liquidation of the subject entries mooted Shinyei's action under the APA. *Id.* at 1304. On appeal, the Federal Circuit held that the CIT retained jurisdiction pursuant to 28 U.S.C. § 1581(i) over an APA cause of action challenging Commerce's liquidation instructions notwithstanding Customs' liquidation of the subject entries. *Id.* at 1305–12. The appellate court reasoned, *inter alia*, that the finality of liquidation provided for in 19 U.S.C. § 1514(a) is

inapplicable when "the alleged agency error [is] on the part of Commerce, not

Customs." *Id.* at 1311 (further stating that section 1514(a) "is not . . . fairly

construed to prohibit reliquidation in all cases"). Further, in recognition of the

CIT's "broad remedial powers," *id.* at 1312 (citing 28 U.S.C. § 2643 (2000)), the

Federal Circuit concluded that, in that case, reliquidation was "easily construed" as

an appropriate form of relief, *id.* More recently, in *Sumecht NA, Inc. v. United

States*, the Federal Circuit affirmed the CIT's denial of preliminary relief because

Sumec North America ("Sumec") failed to demonstrate irreparable harm. 923 F.3d

1340, 1347–48 (Fed. Cir. 2019). The appellate court based its decision, at least in

part, on its previous recognition of the CIT's equitable power to order reliquidation

in section 1581(i) actions. *Id.* at 1347.[13]

Consistent with these opinions, I find that the court possesses the authority

to order reliquidation and, if Plaintiffs prevail, reliquidation constitutes at least one

type of "relief that [would be] appropriate in [this] civil action." *See* 28 U.S.C.

§ 2643(c)(1).[14]

Although Plaintiffs largely agree with this view, *see* Pls.' Mot. for Prelim. Inj.

Limited to Suspension of Liquidation ("Pls.' Mot.") at 6–9, ECF No. 287, they rely on

---

[13] The court also noted that Sumec's entries were covered by a statutory injunction in a separate case, *Sumecht*, 923 F.3d at 1346, and that the Government conceded that Sumec would be entitled to reliquidation if it prevailed, *id.* at 1348.

[14] What constitutes "appropriate relief" is a case-specific determination. The Government has not directly argued that reliquidation (and a corresponding refund of List 3 and List 4A duties) *would not* be "appropriate" if Plaintiffs prevail on the merits. However, in light of the Government's arguments regarding the balance of equities and public interest factors, the Government may, in fact, prefer a monetary judgment to reliquidation to minimize the burden on the Government in such a circumstance.

the Federal Circuit's grant of preliminary relief in *Ugine & Alz Belgium v. United States*, 452 F.3d 1289, 1297 (Fed. Cir. 2006), and *American Signature, Inc. v. United States*, 598 F.3d 816, 829 (Fed. Cir. 2010), to contend that an injunction should issue nevertheless, Pls.' Mot. at 10–12.  However, those cases are distinguishable and, more importantly, do not obviate the requirement that a plaintiff must establish a *likelihood* of irreparable harm.

    *Ugine* addressed an importer's challenge to Commerce liquidation instructions.  452 F.3d at 1291.  The importer obtained the parties' consent to a preliminary injunction to suspend the liquidation of unliquidated entries, but the CIT denied the motion, in part, based on the absence of "unequivocal irreparable harm."  *Id.* at 1292.  While the court reasoned that the importer could protest any liquidations occurring during the pendency of the action, the court did not, however, discuss *Shinyei*.  *See id.*

    The Federal Circuit reversed the CIT's denial of a preliminary injunction.  *Id.* at 1290.  As to irreparable harm, the Federal Circuit recognized that although "*Shinyei* appears to provide [the importer] with an avenue for seeking a judicial remedy even if liquidation occurs," there remained "the possibility that *Shinyei* will not be interpreted to encompass the sort of claim at issue" in *Ugine*.  *Id.* at 1296 (observing that the importer challenged Commerce's liquidation instructions for earlier review periods as inconsistent with the more recent, fourth, review with respect to country of origin).

    Notably, in *Ugine*, the CIT had not addressed *Shinyei* and the parties had not fully briefed it before the Federal Circuit.  *Id.* at 1296–97.  Thus, "[r]ather than

deciding the scope of *Shinyei* in a preliminary injunction context, without a decision

by the trial court or briefing by two of the three parties, [the appellate court]

conclude[d] that the issue [was] sufficiently complex that we should resolve it only

in a setting in which it has been litigated by the parties and decided by the trial

court." *Id.* at 1297. As a result, *Ugine* is distinguishable based on the nature of the

underlying claim and the lack of this court's insight into the scope of its remedial

authority pursuant to 28 U.S.C. § 2643 in the event the importer prevailed on that

claim. Perhaps of most significance for this case, *Ugine* predates *Winter* by more

than two years and therefore lacks the benefit of the appellate court reconciling the

possibility of *Shinyei* relief with the Supreme Court's clarification of the requisite

showing of a likelihood of irreparable harm.[15]

        In *American Signature*, the Federal Circuit also reversed the CIT's denial of a

preliminary injunction in a case challenging Commerce's liquidation instructions.

598 F.3d at 819. This time, the CIT had relied on *Shinyei* to find that the plaintiff

had "an available and adequate remedy to correct the erroneous liquidation of

entries caused by incorrect liquidation instructions, even if liquidation is permitted

to go forward." *Id.* at 828 (citation omitted). Nevertheless, despite the CIT's

reference to *Shinyei*, the Federal Circuit pointed to language in *Ugine* to conclude

again that "the possibility of *Shinyei* relief" did not defeat the plaintiff's assertions

---

[15] While the *Ugine* court found a "strong showing of irreparable harm," that showing
appeared to be based on the notion "that the denial of a preliminary injunction
*could* result in denying [the importer] its opportunity for a decision on the merits of
its claim regarding the duties for merchandise imported" prior to the fourth
administrative review. 452 F.3d at 1297 (emphasis added).

of irreparable harm.  *Id.* at 829 (discussing *Ugine*, 452 F.3d at 1297).  The Federal

Circuit did not, however, explain why *Shinyei* relief might not be available or

explain why uncertainty as to the availability of *Shinyei* relief rendered the

plaintiff's showing of irreparable harm sufficiently likely pursuant to *Winter*.  *See*

*id.*

  The Federal Circuit has since said that it does not interpret "*Ugine* and

*American Signature* as creating a presumption that, in the preliminary injunction

context, *Shinyei* relief is uncertain for purposes of irreparable harm in [section]

1581(i) actions because such a presumption runs counter to *Shinyei*'s holding that

the CIT has 'broad remedial powers,' including the ability to order reliquidation."

*Sumecht*, 923 F.3d at 1348 (quoting *Shinyei*, 355 F.3d at 1312).  The Federal Circuit

also observed that *American Signature* was distinct from *Ugine* because "the

underlying complaint [filed in *American Signature*] expressly referenced [19 U.S.C.]

§ 1675(a)(2)(C) to allege that Commerce's corrected liquidation instructions were

erroneous as a matter of law."  *Id.* at 1347 n.8.  While the *American Signature* court

did not completely reconcile its decision with *Shinyei*, the court's discussion of

likelihood of success on the merits suggests that, in contrast to *Shinyei*, Commerce

had more closely incorporated its processes for developing the liquidation

instructions into the administrative review determination under 19 U.S.C.

§ 1675(a)(2)(A) such that jurisdiction under 28 U.S.C. § 1581(c) might be

appropriate.  *Am. Signature*, 598 F.3d at 824–26.  Notwithstanding these questions

about the appropriate jurisdictional basis for challenging Commerce's liquidation

instructions, at issue here is the scope of the CIT's remedial powers pursuant to 28

U.S.C. § 2643 in a case not involving antidumping or countervailing duties and the associated interplay with 19 U.S.C. § 1516a and *Zenith*. Thus, *Ugine* and *American Signature* do not require the court to find a likelihood of irreparable harm particularly when, as here, the Parties have put the issue of remedy squarely before the court and briefed their respective positions. *See* Pls.' Mot. at 6–9; Defs.' Opp'n at 35–42.[16]

The Government's preservation of its right to appeal any determination that reliquidation is an appropriate remedy fails to inject enough uncertainty into the issue to render any irreparable harm likely. *See* Defs.' Opp'n at 42 (preserving its right to appeal); Pls.' Mot. at 11–12 (arguing that the uncertainty generated by the Government's litigating position and preservation of its right to appeal establishes irreparable harm). "Critically, irreparable harm may not be speculative." *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 43 CIT __, __, 393 F. Supp. 3d 1271, 1276 (2019) (citation omitted). Rather, the harm "must be both certain and great; . . . actual and not theoretical. . . . '[T]he party seeking injunctive relief must show that the injury complained of [is] of such *imminence* that there is a "clear and present need" for equitable relief to prevent irreparable harm.'" *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)

---

[16] The Majority asserts that "the differing theories of harm" alleged in *Ugine* and *American Signature* are "immaterial" to the question of remedy because both cases arose under the court's section 1581(i) jurisdiction and therefore implicate the same statutory remedial authority. Maj. Op. at 15 n.9. The differing theories of harm are relevant, however, because reliquidation would only be available when it constitutes an "appropriate" form of relief in the particular action. *See* 28 U.S.C. § 2643(c)(1). Accordingly, such differences must be considered in order to ascertain the degree to which *Ugine* and *American Signature* compel the entry of an injunction.

(fourth alteration original) (quoting *Ashland Oil, Inc. v. FTC*, 409 F. Supp. 297, 307 (D.D.C.), *aff'd*, 548 F.2d 977 (D.C. Cir. 1976)); *cf. Winter*, 555 U.S. at 22. The Government's arguments as to why reliquidation is not an available remedy in this case are unpersuasive.

The Government first points to language in 19 U.S.C. § 1514(a) concerning the finality of liquidation to assert that, "[o]nce a liquidation becomes final and conclusive, generally neither CBP nor the Courts may alter or set aside the transaction, including the assessment of duties." Defs.' Opp'n at 37. The Government omits that section 1514(a) refers to "decisions of the Customs Service" as the decisions that are "final and conclusive" barring a protest and action commenced pursuant to 28 U.S.C. § 1581(a). 19 U.S.C. § 1514(a); *see also, e.g.*, *Shinyei*, 355 F.3d at 1311 (section 1514(a) is inapplicable when "the alleged agency error [is] on the part of Commerce, not Customs"); *Am. Signature*, 598 F.3d at 829 (same).[17]

_____

[17] By seeking to tie the court's authority to order reliquidation to section 1514(a), the Government implies the presence of a protestable Customs decision. In so doing, the Government argues against the position it has taken in *Koch Supply & Trading, LP v. United States*, Court No. 20-cv-00063 ("*Koch Supply*"). There, an importer asserted jurisdiction pursuant to 28 U.S.C. § 1581(a) and (i) to challenge the lawfulness of section 232 duties (under section 1581(i)) and a denied protest contesting Customs' collection of the allegedly unlawful duties (under section 1581(a)). Compl., *Koch Supply* (CIT Mar. 23, 2020). Customs denied the protest shortly after it was filed as non-protestable. *Id.* ¶ 28. In a consent motion to stay the case, the Government represented that the court lacked jurisdiction pursuant to 28 U.S.C. § 1581(a) to review the denied protest claim. Consent Mot. to Stay Proceedings at 3, *Koch Supply* (CIT May 19, 2020). The Government's position in *Koch Supply* is inconsistent with its position here as to whether Customs collection of section 232 or 301 duties is protestable and, therefore, a possible basis for jurisdiction under 28 U.S.C. § 1581(a).

The Government next relies on *Zenith* to argue that "the rule of finality of liquidations is not limited to Customs decisions that can be protested pursuant to 19 U.S.C. § 1514(a)." Defs.' Opp'n at 37.  According to the Government, *Zenith* demonstrates that, absent an injunction suspending liquidation, "an entry will liquidate in the normal administrative course and that liquidation will become final and conclusive." *Id.* at 38.  While acknowledging the distinct jurisdictional bases, the Government argues, in effect, that if finality attaches to liquidations that are not protested and subject to judicial review pursuant to 28 U.S.C. § 1581(a) and finality attaches to the liquidation of entries covered by a determination reviewable pursuant to 28 U.S.C. § 1581(c) unless it is enjoined, then "reliquidation should not be available upon a successful challenge under [28 U.S.C. §] 1581(i) either." *Id.*

In making this argument, the Government overlooks the distinctions between the statutory bases that govern the finality of liquidation in the context of actions implicating the court's jurisdiction under section 1581(a) and (c).  As set forth above, *Zenith* is limited to actions arising under 19 U.S.C. § 1516a and "is inapplicable" to "an action under the APA." *Shinyei*, 355 F.3d at 1309.  *Zenith* therefore does not support the Government's assertion that reliquidation is not (or should not be) available to a successful litigant in a section 1581(i) action.[18]

---

[18] The Government's attempt to characterize *Shinyei* as in conflict with *Zenith* fails. *See* Defs.' Opp'n at 41.  Moreover, the Government's assertion that "no statutory provision allows the liquidation of entries to be enjoined by the [c]ourt in section 1581(i) actions, and the liquidation of any entries at issue in the section 301 cases should therefore be held to be final and conclusive," *id.* at 41–42, lacks merit.  The Government does not seriously contest the court's authority to enter the requested injunction upon the requisite showing, *see id.* at 17–18 (summarizing the standard (footnote continued)

The Government also attempts to limit the court's authority to order

reliquidation to situations in which it is "necessary to protect a judgment of [the

CIT], rather than authority for reliquidation as a garden variety remedy in any case

brought pursuant to section 1581(i)." Defs.' Opp'n at 40. The Government relies on

the following language from *Shinyei*:

> [T]o accept the government's argument would preclude enforcement of
> court orders as to duty determinations as soon as entries subject to
> those orders are liquidated, even where liquidation was under
> erroneous instructions that fail to reflect the amended administrative
> review results implementing the courts' determinations, as required by
> section 1675(a)(2)(C).

*Id.* (quoting *Shinyei*, 355 F.3d at 1312).[19]

The Government omits, however, the immediately preceding paragraph, in

which the Federal Circuit explained that "the [CIT] has been granted broad

remedial powers." *Shinyei*, 355 F.3d at 1312 (citing 28 U.S.C. § 2643 (2000)). The

appellate court noted that the CIT can enter a money judgment against the

---

of review), and the absence of express statutory authority beyond that already
provided by 28 U.S.C. § 2643 is immaterial. The Government also appears to
conflate the *Zenith* court's reference to "the absence of a statutory provision
permitting reliquidation" in 19 U.S.C. § 1516a with the absence of a statutory
injunction applicable to section 1581(i). *Id.* at 41–42 (citing *Zenith*, 710 F.2d at
810). The Government does not, however, explain the basis for this attempted
analogy.

[19] The Government also seeks to rely on *Agro Dutch Industries Ltd. v. United States*,
589 F.3d 1187, 1191–92 & n.1 (Fed. Cir. 2009). Defs.' Opp'n at 41. *Agro Dutch*
affirmed the CIT's authority to (1) amend the effective date of a statutory injunction
to remove a five-day grace period, and (2) order reliquidation of subject entries
liquidated within that grace period. 589 F.3d at 1190–94. While the *Agro Dutch*
court cited *Shinyei* for the proposition that "mootness does not occur when steps are
required to enforce a valid injunction," *id.* at 1191, the *Agro Dutch* court did not
address the limits of *Shinyei* relief or otherwise suggest that this court's authority
to provide reliquidation or other appropriate monetary relief is, in fact, limited to
judicial enforcement of prior orders.

Government in an action commenced under 28 U.S.C. § 1581, *id.* (citing 28 U.S.C.

§ 2643(a)(1)), and can "order *any other form of relief that is appropriate* in a civil

action," *id.* (quoting 28 U.S.C. § 2643(c)(1)).  The Federal Circuit thus found that

"[t]he absence of an express reliquidation provision should not be read as a

prohibition of such relief when the statute provides the [CIT] with such broad

remedial powers" and, in that case, reliquidation was "easily construed" as an

appropriate form of relief.[20]  *Shinyei* does not, therefore, support the Government's

---

[20] While not expressly agreeing with the Government's interpretation of the holding of *Shinyei*, the Majority opines that the Government's interpretation arguably is correct.  Maj. Op. at 13 & n.8.  I disagree.  The Federal Circuit's observation concerning the logical extent of the Government's argument in that case was not essential to the appellate court's finding that reliquidation was authorized under the CIT's remedial statute and would be an appropriate remedy in the event Shinyei established that its entries liquidated at rates that were inconsistent with Commerce's liquidation instructions.  Such statements are not controlling.  *See, e.g.*, *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1287 n.1 (Fed. Cir. 2013) (Wallach, J., concurring) (noting that "statements in judicial opinions upon a point or points not necessary to the decision of the case" consist of "dictum" that is neither "authoritative" nor "controlling") (quoting *In re McGrew*, 120 F.3d 1236, 1238 (Fed. Cir. 1997)).  Indeed, in the Federal Circuit's second opinion in the litigation concerning Shinyei's rate, the appellate court characterized *Shinyei* as

> [holding] that the liquidation of Shinyei's entries did not preclude judicial review of Shinyei's Commerce-error claim under the APA, because the Tariff Act [of 1930] does not expressly or impliedly forbid the relief sought by Shinyei for erroneous liquidation instructions— namely, "reliquidation of the subject entries at the lower rate so [Shinyei] can receive a refund of the overpaid duties."

*Shinyei Corp. of Am. v. United States* ("*Shinyei II*"), 524 F.3d 1274, 1282 (Fed. Cir. 2008) (quoting *Shinyei*, 355 F.3d at 1306); *see also id.* at 1280 (discussing the holding of *Shinyei* in relatively broad terms).  The *Shinyei II* court also clarified the reason why reliquidation would be an appropriate form of relief in response to Commerce's error, namely, that, "[i]f there was an error in the instruction process, then Shinyei is entitled to a judgment ordering reliquidation pursuant to new, correct instructions."  *Id.* at 1284.  So too here, there is no express or implied prohibition on reliquidation of entries if they liquidated inclusive of unlawful Section 301 duties.  Further, if the court ultimately finds that there was legal error (footnote continued)

suggested limitation on the court's authority to provide appropriate relief.

Nevertheless, a finding by this court that it has the authority to order reliquidation

as a possible form of relief in this case, specifically, would not constrain the court's

discretion in subsequent cases brought under the court's residual jurisdiction to

determine what "relief . . . is appropriate." 28 U.S.C. § 2643(c)(1).

     In light of the CIT's broad remedial authority, the court asked the Parties to

identify any cases in which "the Federal Circuit found that the CIT erred in its

exercise of discretion as to appropriate relief." Letter from the Court at 1 (June 14,

2021), ECF No. 321. Plaintiffs pointed to *Co-Steel Raritan, Inc. v. Int'l Trade

Comm'n*, 357 F.3d 1294 (Fed Cir. 2004), and *NTN Bearing Corp. of America v.

United States*, 892 F.2d 1004 (Fed. Cir. 1989), while noting that those cases are

readily distinguished. The Government pointed to *National Corn Growers Ass'n v.

Baker*, 840 F.2d 1547 (Fed. Cir. 1988). Oral Arg. 04:30–10:40.

     None of the identified cases suggest that the court would overstep its

authority to order reliquidation to prevailing Plaintiffs in this case. *Co-Steel

Raritan* recognized the CIT's general authority to remand an agency determination

pursuant to 28 U.S.C. § 2643(c)(1) while finding that the CIT erred in ordering a

remand to the U.S. International Trade Commission to reconsider a negative

preliminary material injury determination in an antidumping investigation to

---

in the imposition of List 3 and List 4A duties on Plaintiffs' entries, Plaintiffs are
entitled to a judgment ordering reliquidation exclusive of duties. Nothing in
*Shinyei II* suggests that the *Shinyei* court's statement concerning the preclusion of
judicial enforcement of court orders consisted of anything more than a rejection of
the Government's argument as opposed to a limitation on its holding.

account for subsequent developments.  357 F.3d at 1313–17.  *NTN Bearing* recognized the CIT's "broad injunctive powers" pursuant to 28 U.S.C. §§ 1585 and 2643(c)(1) while finding that the CIT erred in entering what amounted to an injunction enjoining the collection of antidumping duty cash deposits and ordering the return of duties previously paid following the entry of partial summary judgment, without the requisite final court decision pursuant to 19 U.S.C. § 1516a(e).  892 F.2d at 1006.

The Government's reliance on *National Corn Growers* also is inapposite. While the Government sought to rely on that case for the proposition that the CIT cannot award monetary damages in a section 1581(i) case in circumvention of a statutory limit on reliquidation authority, *see Nat'l Corn Growers*, 840 F.2d at 1560, such discussion is purely dicta.  The Federal Circuit first determined that the CIT lacked jurisdiction pursuant to 28 U.S.C. § 1581(i); jurisdiction pursuant to 28 U.S.C. § 1581(b) was available; and any remedy pursuant to section 1581(b) was limited, by statute, to prospective entries.  *Id.* at 1550–59.  Thus, *National Corn Growers* would not limit the court's authority to require the Government to return wrongfully obtained duties through reliquidation when there is no particular statutory prohibition on reliquidation or limitation to prospective relief.

In sum, given the CIT's broad remedial authority and the absence of any explicit disagreement from my colleagues concerning the court's authority to order reliquidation as a remedy in this case, I conclude that Plaintiffs' showing of irreparable harm is speculative, at best.  My reading of the Federal Circuit precedent does not allow me to conclude that Plaintiffs have established a likelihood

of irreparable harm.  In the absence of such a showing, I would deny the motion for

a preliminary injunction without reaching the other requirements for issuing such

an injunction.  Because I do not believe that Plaintiffs are entitled to the

"extraordinary remedy" of preliminary relief, *see Winter*, 555 U.S. at 22, I therefore

dissent.

/s/     Mark A. Barnett
Mark A. Barnett, Chief Judge
