### UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
          THE HONORABLE CLAIRE R. KELLY, JUDGE
          THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____
                                                  :
                                                  :
*In Re* Section 301 Cases                         :        Court No. 21-00052
                                                  :
_____:

### PLAINTIFFS' PROPOSED MODIFICATIONS TO THE PRELIMINARY INJUNCTION ENTERED ON JULY 6, 2021

Pursuant to the Court's order entered on July 15, 2021, Plaintiffs endeavored to prepare, with Defendants, a submission containing the parties' joint proposed modifications to the preliminary injunction entered on July 6, 2021.  Despite our best efforts to work with Defendants, we were unable to come to an agreement on how the Court's July 6, 2021 preliminary injunction should be modified.  Indeed, despite our repeated attempts at engagement, Defendants have yet even to respond to Plaintiffs' proposed modifications—including but not limited to the stipulation language Plaintiffs proposed on July 15 and discussed at the status conference—and Defendants did not share their own proposed modifications filed yesterday in advance of their eleventh-hour filing.  As a result, in this submission, Plaintiffs provide our own proposed modifications for the Court's consideration.  As described in further detail below, **Attachment 1** and **Attachment 2** contain two alternative revised orders, and **Attachment 3** provides additional detail in support of Plaintiffs' **Attachment 2** modifications.

We also respond below to the Defendants' proposed modifications in their submission of yesterday.  We support an extension of time to establish the repository and a lengthier temporary restraint period, but recommend more time than the Defendants propose in order to allow sufficient time for the Government and Plaintiffs to comply with the July 6, 2021 preliminary injunction.

We also disagree with Defendants' proposal of allowing submission of modifications to the Court's preliminary injunction until the end of the temporary restraint period; the terms of the preliminary injunction should be decided as early as possible so the parties know what is required of them.

## I.     Plaintiffs' Preferred Proposed Modification

**Attachment 1** contains a redline of the Court's original preliminary injunction order, showing the changes Plaintiffs propose to simplify and implement the stipulation contemplated in the Court's original order to cover all Subject Entries (not yet liquidated as of July 6, 2021), as Plaintiffs described during the July 15, 2021 status conference.  As the Court will see, we propose to remove practically all of the Court's order that addressed suspension of liquidation and replace it with a single clause reflecting what we had hoped would be the Defendants' agreement to refund any Section 301 List 3 and 4A duties paid on any entries liquidated since the Court's July 6, 2021 order.  This approach eliminates the need for any work and additional expense on the part of the Government or Plaintiffs associated with suspending liquidation on such entries or otherwise implementing the Court's original order.  Importantly for Plaintiffs, this proposed order avoids the expense of stacking potentially multiple continuous bonds while the litigation continues—an unintended consequence of a preliminary injunction suspending liquidation indefinitely.  This approach also fully preserves the Government's right to appeal the availability of refunds for List 3 and 4A duties paid on entries that liquidated prior to the Court's order.

Plaintiffs see no downside to this alternative for any party, and significant upside for affected entities—including this Court.  And Defendants have not yet identified any concerns with the proposed stipulation.  Although Defendants have not yet provided a position, we hope the Court will urge Defendants to accept this approach—consistent with Defendants' proposed approach at the status conference to the "temporary restraint" portion of the order—to save everyone  involved

countless resources and so that all parties can focus on the merits of the litigation.  We also request that the Court order Defendants to respond to this proposal before engaging on further proposed modifications that would be rendered entirely moot if **Attachment 1** is entered.

## II.      Plaintiffs' Alternative Proposed Modification

**Attachment 2** contains Plaintiffs' alternative proposal, which we hope is unnecessary if the stipulation approach outlined above (**Attachment 1**) is accepted.  In **Attachment 2**, we provide the changes to effect suspension of liquidation for unliquidated entries or reliquidation of mistakenly liquidated entries in the least complicated manner.  We explain the reasons for our proposed changes below.

- **Page 2**

On page 2 of **Attachment 2**, we propose two changes.

First, we propose to extend the deadline for establishment of the repository from 14 to 28 days. (Note:  Defendants have proposed in their July 19 submission only an eight-day extension, but we think that is insufficient given the additional modifications we propose herein and the lack of any response from Defendants on our proposed modifications thus far.)  This will provide the needed additional time for the Government to set up the system.

Second, we provide proposed language that would allow Plaintiffs the option of providing either of the following data points:

a) The Harmonized Tariff Schedule of the United States ("HTSUS") Chapter 99 tariff item used by Plaintiffs to identify the Subject Entries that are subject to List 3 and/or List 4A Section 301 tariffs,

OR

b) the specific entry numbers for which liquidation is to be enjoined.

Plaintiffs request the above modification because many Plaintiffs, particularly small- and medium-sized importers, do not have access to the Automated Commercial Environment ("ACE") Portal and typically only know the ***approximate*** total amount of List 3 and List 4A tariffs paid and such importers would customarily maintain ***paper or PDF copies*** of their 7501 entry declarations as required by 19 C.F.R. § 163.  These importers would not be expected to possess, ***in spreadsheet form***, an entry-by-entry listing of the import transactions where they paid the List 3 and List 4A tariffs.  Forcing such plaintiffs to manually create spreadsheets, in many instances gathered with the assistance of multiple brokers, within the short period of time (monthly) Defendants have proposed for submission to the repository, would place unjust burdens on many of the small- to medium-sized Plaintiffs – ***particularly when U.S. Customs and Border Protection ("CBP") already possesses the required information***.[1]

To suggest that such a plaintiff lacking a spreadsheet of its particular Subject Entries could simply request such a report from its customs broker (the party who usually files the CBP Form 7501 on behalf of the importer) is overly simplistic.  First, Plaintiffs utilizing the same broker will likely face the situation where a given broker cannot provide the report in a timely manner due to the broker getting multiple requests for such reports from multiple importers at the same time – all of whom are facing the same monthly CBP deadline.[2]  Second, brokers will likely charge Plaintiffs

---

[1] Indeed, Plaintiffs maintain that with just the plaintiff's importer of record ("IOR") number, CBP is able to identify each and every entry that is a Subject Entry since CBP may, as explained herein, run an ACE query to obtain the necessary information.

[2] A plaintiff could also request data from CBP in the form of "ITRAC" data (see https://www.cbp.gov/trade/itrac-requests), but such data does not offer a practical solution due to: (1) cost ($250 minimum per request), (2) ITRAC is an Microsoft Access database and not every importer knows how to use Microsoft Access, (3) ITRAC data will have to be requested repeatedly from CBP on a monthly basis in order to make CBP's proposed repository deadlines, (4) ITRAC does not necessarily contain accurate liquidation information as ACE, not ITRAC, is now the official source of liquidation dates, and (5) CBP has historically taken a long time (many weeks or more) to process ITRAC requests.

for creation of the report and such costs will not be insubstantial when one considers the reports will need to be generated monthly. Third, many Plaintiffs will have used multiple brokers, complicating the process even further.

Of course, for certain Plaintiffs such as (1) those who already possess ACE access, (2) those who are large importers with ready-made spreadsheets containing entry numbers, or (3) those who do not want to not have certain of their entries suspended per the Court order, providing a specific list of entry numbers to be enjoined may be appropriate. However, Plaintiffs request that any given plaintiff be allowed the option to choose providing the HTSUS Chapter 99, Subchapter III tariff classification it uses OR a list of specific entries. With either method, CBP will be able to readily identify Subject Entries.

We provide at **Attachment 3** a more detailed review of our rationale for not requiring Plaintiffs to provide entry-by-entry information.

- **Pages 3-4**

On page 3, we first propose to extend the temporary restraint period from 28 days to 90 days. This ensures sufficient time to allow Plaintiffs to submit the necessary information, if a repository is needed at all. (Note: Defendants proposed in their July 19 submission to extend this period from 28 to 58 days rather than our proposed 90 days. Defendants also request a deadline to propose further modifications that would coincide with the end of its proposed temporary restraint period.) Given Defendants' proposal, shared during the July 15 Status Conference, to reliquidate and refund List 3 and 4A duties on any entries illegally liquidated during the temporary restraint period (rather than return such entries to unliquidated status), there is no reason not to extend this period further to ensure that the parties can confer on, and Plaintiffs can comply with, the requirements of the repository (however detailed) that still remain unseen. Indeed, Defendants'

request that further modifications be proposed at the end of the temporary restraint period makes no sense: a further extension, as Plaintiffs propose, is required to ensure resolution and implementation of those modifications before the temporary restraint period expires.

Also on page 3 and 4, we have incorporated what we understand, as discussed during the July 15 Status Conference, are the changes Defendants propose to make to the provisions that would have required CBP to return illegally or mistakenly liquidated entries to unliquidated status. We have replaced those provisions with language allowing CBP to wait to reliquidate and grant refunds on such entries at the end of the litigation. We have also ensured in these revisions that Plaintiffs are not punished for their good-faith efforts to comply with CBP's repository requirements.

* * *

Plaintiffs appreciate the Court's attention to this important issue and stand ready to meet with the Court to discuss our proposals.  We propose that the Court hold an additional status conference on July 26, 2021 to help resolve these issues.  (We have asked Defendants about their availability for a status conference, but have not received any response.)

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Pratik A. Shah
James E. Tysse
Devin S. Sikes
Daniel M. Witkowski
Sarah B. W. Kirwin

AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, D.C. 20006

*Counsel to Plaintiffs HMTX Industries LLC, Halstead New England Corporation, Metroflor Corporation, and Jasco Products Company LLC*

Date:  July 20, 2021

# Attachment 1

## Plaintiffs' Revised Order #1

Upon consideration of Plaintiffs' motions, Defendants' response, Plaintiffs' reply, and all other pertinent papers, it is

ORDERED that Plaintiffs' motion for leave to file a reply is granted;[3] and it is further

ORDERED that Plaintiffs' Proposed Reply in Support of Plaintiffs' Motion for Preliminary Injunction Limited to Suspension of Liquidation, ECF No. 307-1, is deemed filed as of May 20, 2021; and it is further

ORDERED that Plaintiffs' motion for a preliminary injunction is granted as further provided for in this order; and it is further

ORDERED that, within 7 calendar days from the date of this order, Defendants shall meet and confer with the Steering Committee, on behalf of Plaintiffs, regarding the establishment of a repository by Defendants for Plaintiffs to identify, as further provided for in this order, any unliquidated entries of merchandise imported from the People's Republic of China by Plaintiffs HMTX Industries LLC, Halstead New England Corporation, Metroflor Corporation, and Jasco Products Company LLC, and plaintiffs whose actions have been stayed pursuant to In re Section 301 Cases, Court No. 21-00052, that are subject to duties imposed pursuant to either Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 47,974 (Sept. 21, 2018) (List 3), or

---

[3] Chief Judge Barnett concurs in granting Plaintiffs' motion to file a reply.

Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to

Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 43,304 (Aug. 20, 2019)

(List 4A) ("Subject Entries" or "Subject Entry"); and it is further

ORDERED that in light of Defendant's representation to the Court that it stipulates to

refund any duties found to have been illegally collected for all Subject Entries, i.e., any entry of

Plaintiffs not yet liquidated as of the date of the PI order, Defendant shall liquidate those entries

in the ordinary course and, upon issuance of a final court decision in this case finding the List 3

and/or List 4A tariffs to have been illegally assessed, reliquidate any Subject Entry without the

assessment of List 3 and List 4A tariffs or otherwise refund to Plaintiffs such tariffs, with

interest, as provided by law.

ORDERED that, within 14 calendar days from the date of this order, Defendants shall

establish a repository in which Plaintiffs may identify any Subject Entry, as further provided for

in this order; and it is further

ORDERED that any Plaintiff requesting suspension of liquidation for a Subject Entry

shall provide Defendants with

(i) Its full and correct Importer of Record (IOR) number(s), including suffix(es); and

(ii) The Court Number and filing date of the litigation in which it is a party, as well as its
Center and team assignment, if known; and

(iii) The Entry Number and date of entry for each Subject Entry for which liquidation is
to be enjoined in accordance with this order; and it is further

ORDERED that Defendants, together with their delegates, officers, agents, and servants,

including employees of U.S. Customs and Border Protection, are enjoined during the pendency

of this litigation, including any appeals, from liquidating any Subject Entry for which they

9

receive a request for suspension of liquidation pursuant to this order, unless, within 14 calendar days from the date Defendants receive a request for suspension of liquidation of a Subject Entry, Defendants, at their option, stipulate to refund any duties found to have been illegally collected for that specific Subject Entry and notify Plaintiffs of such stipulation promptly in a manner to be determined by the parties; and it is further

ORDERED that having had notice and a hearing on Plaintiffs' motion for a preliminary injunction, Defendants, together with their delegates, officers, agents, and servants, including employees of U.S. Customs and Border Protection, are temporarily restrained from the date of this order until 28 calendar days following the date of this order from liquidating any Subject Entry; and it is further

ORDERED that should any Subject Entry be inadvertently or mistakenly liquidated during the 28-day temporary restraint period despite this order, said Subject Entry shall be promptly returned to unliquidated status and subject to the terms of this order; and it is further

ORDERED that any Subject Entry for which liquidation is suspended under this order shall be liquidated in accordance with the final court decision in this action, including all appeals and remand proceedings; and it is further

ORDERED that any Subject Entry inadvertently liquidated by U.S. Customs and Border Protection in contravention of this order shall be promptly returned to unliquidated status and subject to the terms of this injunction; and it is further

ORDERED that the Parties shall appear before the court virtually at a Status Conference on July 13, at 2:30.

10

# Attachment 2

### Plaintiffs' Revised Order #2

Upon consideration of Plaintiffs' motions, Defendants' response, Plaintiffs' reply, and all other pertinent papers, it is

ORDERED that Plaintiffs' motion for leave to file a reply is granted;[4] and it is further

ORDERED that Plaintiffs' Proposed Reply in Support of Plaintiffs' Motion for Preliminary Injunction Limited to Suspension of Liquidation, ECF No. 307-1, is deemed filed as of May 20, 2021; and it is further

ORDERED that Plaintiffs' motion for a preliminary injunction is granted as further provided for in this order; and it is further

ORDERED that, within 7 calendar days from the date of this order, Defendants shall meet and confer with the Steering Committee, on behalf of Plaintiffs, regarding the establishment of a repository by Defendants for Plaintiffs to identify, as further provided for in this order, any unliquidated entries of merchandise imported from the People's Republic of China by Plaintiffs HMTX Industries LLC, Halstead New England Corporation, Metroflor Corporation, and Jasco Products Company LLC, and plaintiffs whose actions have been stayed pursuant to In re Section 301 Cases, Court No. 21-00052, that are subject to duties imposed pursuant to either Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 47,974 (Sept. 21, 2018) (List 3), or Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to

---

[4] Chief Judge Barnett concurs in granting Plaintiffs' motion to file a reply.

Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 43,304 (Aug. 20, 2019)

(List 4A) ("Subject Entries" or "Subject Entry"); and it is further

ORDERED that, within 28~~14~~ calendar days from the date of this order, Defendants shall

establish a repository in which Plaintiffs may identify any Subject Entry, as further provided for

in this order; and it is further

ORDERED that any Plaintiff requesting suspension of liquidation for a Subject Entry

shall provide Defendants with

(i) Its full and correct Importer of Record (IOR) number(s), including suffix(es); and

(ii) The Court Number and filing date of the litigation in which it is a party, as well as its
Center and team assignment, if known; and

(iii) Either the Chapter 99, Subchapter III Harmonized Tariff Schedule of the United
States ("HTSUS") tariff classification for all of the IOR's Subject Entries that enter
on or after the date of this order for which liquidation is to be enjoined in accordance
with this order OR, at the Plaintiff's Option, the specific entry numbers for which
liquidation is to be enjoined in accordance with this order; ~~The Entry Number and
date of entry for each Subject Entry for which liquidation is to be enjoined in
accordance with this order;~~ and it is further

ORDERED that Defendants, together with their delegates, officers, agents, and servants,

including employees of U.S. Customs and Border Protection, are enjoined during the pendency

of this litigation, including any appeals, from liquidating any Subject Entry for which they

receive a request for suspension of liquidation pursuant to this order, unless, within 14 calendar

days from the date Defendants receive a request for suspension of liquidation of a Subject Entry,

Defendants, at their option, stipulate to refund any duties found to have been illegally collected

for that specific Subject Entry and notify Plaintiffs of such stipulation promptly in a manner to be

determined by the parties; and it is further

ORDERED that having had notice and a hearing on Plaintiffs' motion for a preliminary injunction, Defendants, together with their delegates, officers, agents, and servants, including employees of U.S. Customs and Border Protection, are temporarily restrained from the date of this order until 28 90 calendar days following the date of this order from liquidating any Subject Entry; and it is further

ORDERED that should any Subject Entry be inadvertently or mistakenly liquidated during the 28-day temporary restraint period despite this order, said Subject Entry shall be promptly returned to unliquidated status and subject to the terms of this order that in light of U.S. Customs and Border Protection's asserted inability to identify the Subject Entries to be restrained from liquidation during the 90-day temporary restraint period, as well as its asserted inability to promptly return to unliquidated status all Subject Entries that liquidate during this period, any Subject Entries that liquidate during the 90-day temporary restraint period in contravention of the Court's order shall be reliquidated if and to the extent such duties are found to have been unlawfully collected.  This reliquidation preserves the integrity of the Court's decision on interim relief; and it is further

ORDERED that any Subject Entry for which liquidation is suspended under this order shall be liquidated in accordance with the final court decision in this action, including all appeals and remand proceedings; and it is further

ORDERED that any Subject Entry inadvertently liquidated by U.S. Customs and Border Protection in contravention of this order shall be promptly returned to unliquidated status and subject to the terms of this injunction that for any Subject Entry inadvertently liquidated after the 90-day temporary restraint period, for which U.S. Customs and Border Protection receives a

request to suspend liquidation under this Order that attempts good-faith compliance with the requirements of the Subject Entry repository to be established under this Order by defendants and approved by the Court, such Subject Entry shall be reliquidated if and to the extent such duties are found to have been unlawfully collected.  This reliquidation preserves the integrity of the Court's decision on interim relief; and it is further

ORDERED that the Parties shall appear before the court virtually at a Status Conference on July 13, at 2:30.

# Attachment 3

## Plaintiffs' Further Rationale for Page 2 Revisions in Revised Order #2

Plaintiffs concur with the language of the Court's original Preliminary Injunction ("PI") Order that each plaintiff should be required to provide to CBP (1) plaintiff's full and correct Importer of Record ("IOR") number(s), including suffix(es) and (2) the Court Number and filing date of the litigation in which it is a party (and its Center and team assignment, if known).  Regarding additional data, plaintiffs note that there appears to be no dispute that the Customs and Border Protection ("CBP") Automated Commercial Environment ("ACE") contains the remaining information necessary for CBP to implement the Court's order. The question, therefore, is not what data is necessary; it is only who should be required to gather it for Customs.

Many plaintiffs, particularly the larger companies with dedicated compliance staffs, have ACE Portal access to the entry data. This is not true of many small and medium sized plaintiffs who have not previously been before this Court. Moreover, the current proposal from CBP for monthly updates to the repository imposes a continuing obligation on importers that will likely require reliance on customs brokers and a substantial ongoing expense. Finally, every time plaintiffs or their brokers generate monthly reports, put those reports into the required spreadsheets, and send those spreadsheets to the Document Imaging System using the required syntax, there is the possibility of an error or omission. The resolution of those errors and omissions will add complexity and expense to this litigation. All of that is avoidable by having Customs rely on its own systems and the professionals who manage ACE data.

Plaintiffs, therefore, respectfully request that the Court modify the order to reduce the amount of data plaintiffs must collect and report to CBP to necessary data CBP does not already possess. Specifically, we propose that each Plaintiff send to the repository, in addition to the data elements specified above, at its option, _**either**_:

1. The Harmonized Tariff Schedule of the United States ("HTSUS") Chapter 99 tariff item used by Plaintiffs to identify merchandise covered by the Subject Entries that is subject to List 3 and/or List 4A Section 301 tariffs,

OR

2. the specific entry numbers for which liquidation is to be enjoined.

Plaintiffs agree with the Declaration of Thomas Overacker (Docket 304-1) that the List 3 and List 4A tariffs items at issue are:

List 3 HTSUS codes
9903.88.03, 9903.88.04, 9903.88.09, 9903.88.23, or 9903.88.27

List 4A HTSUS codes
9903.88.15, 9903.88.24, or 9903.88.28

This proposal furthers the needs of all parties and the Court to efficiently and accurately gather the information needed to implement the Court's order enjoining liquidations. Once CBP receives the relevant IOR numbers and the Chapter 99 tariff items used by a plaintiff, CBP can readily identify and suspend liquidation of the Subject Entries.[5]  This can be done using reports pre-programmed into ACE, which are likely to be the same reports CBP expects importers to use to generate the data. Specifically, ACE report ES-003, entitled "Entry Summary Line Tariff Details" provides both the trade and CBP with the report of "Subject Entries" as that phrase is defined in the July 6th PI Order. As can be seen in the screenshot below, by inputting an IOR# and the HTSUS Chapter 99, Subchapter III tariff provisions corresponding to List 3 and List 4A, and adding a Liquidation Date field to the ES-003 report,[6] CBP can create the list of Subject Entries:



The above report generates an output[7] such as that shown below:[8]

---

[5] Plaintiffs note that CBP can also accomplish this with only the IOR numbers, as that will allow it to identify the Subject Entries, which can then be "filtered" by the eight relevant HTSUS items.

[6] Adding the liquidation date field to the ES-003 report also addresses the concern noted in Overacker Declaration, para. 7c. (suggesting it would take CBP effort to identify all the unliquidated entries).

[7] This output also provides the CEE team number that handles a given entry – thus, addressing the step described in Overacker Declaration, para. 7b (suggesting it would require effort by CBP to identify the CEE that handles a given importer's entries).

[8] Entry numbers, IOR numbers and MID codes have been redacted in the screenshot because this is a public filing.



ACE then allows the above dataset to be exported to EXCEL using one of the icons shown just above the Department of Homeland Security seal in the image above. Allowing the data to be exported to EXCEL, in turn, allows CBP to sort or filter the data for liquidation dates that are July 6, 2021 or later.[9]

This example was compiled using the public-facing side of the ACE system. CBP "owns" the data in its raw form, and also has access to the same reports as shown in this example. Based upon information and experience from working with large importers who manage large databases, plaintiffs suggest that it strains credibility to suggest that the data professionals at CBP cannot further automate the task of identifying the Subject Entries from IOR number and the List 3 and List 4A HTSUS codes – either by customizing the ES-003 report so that it outputs the data needed by CBP to identify Subject Entries, or by creating a new ACE report.[10] Once a system is implemented, CBP would be able to generate the required data on whatever cadence it deems necessary to implement the order.

For plaintiffs who do not want to have certain entries suspended per the Court order, providing a specific list of entry numbers to be enjoined is entirely appropriate. However, for the reasons stated above, Plaintiffs respectfully request that plaintiff be allowed the option to choose providing the HTSUS Chapter 99, Subchapter III tariff classification it uses OR a list of specific entries. With that input, CBP is in the best position to efficiently and accurately implement the Court's injunction.

---

[9] Indeed, CBP could program the July 6, 2021 date into the above query as part of its search criteria to eliminate this step.

[10] It is clear that CBP already has generated internal reporting criteria in ACE regarding collection of 301 tariffs. See, e.g., https://www.cbp.gov/newsroom/stats/trade (providing amount of 301 tariffs collected by CBP thus far). The source of this data is the same ACE datasets described above. See also, Overacker Declaration (Docket 304-1), para. 4, noting how many entries have been filed with List 3 and/or List 4A tariffs.