IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE MARK A. BARNETT, CLAIRE R. KELLY,
JENNIFER CHOE-GROVES, JUDGES

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| | ) | |
| IN RE SECTION 301 CASES | ) | Court No. 21-00052 |
| | ) | |
| | ) | |
| _____ | ) | |

## AMICUS CURIAE BRIEF OF INTERESTED PARTIES

Nancy A. Noonan
Angela M. Santos

**ARENT FOX LLP**
1717 K Street, NW
Washington, DC 20006
Tel: 202.857.6479

*Counsel to Plaintiffs as listed in Attachment A*

Christine M. Streatfeild
Kevin M. O'Brien

**BAKER MCKENZIE LLP**
815 Connecticut Ave, NW
Washington, D.C. 20006
Tel: 202.835.6111

*Counsel to Plaintiffs as listed in Attachment A*

Dated: August 9, 2021

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.    PLAINTIFFS HAVE STANDING ................................................................................. 1

    A.    The Concrete and Particularized Injuries Suffered by Plaintiffs Who Bore or Bear
the Cost of the Tariffs Irrespective of Importer of Record Status as a Result of
Section 301 Tariffs Imposed by List 3 and List 4A Confer Constitutional Standing. ...... 1

    B.    Plaintiffs Have Statutory Standing As Interested Persons Who Are Adversely
Affected by USTR's Implementation of List 3 and/or List 4A and Clearly Fall
Within Section 301's Zone of Interests .................................................................. 5

III.    THIS COURT'S REMEDY SHOULD INCLUDE RELIEF TO PLAINTIFFS ....................... 8

    A.    The Court's Power Is Not Limited to Ordering Relief to Importers. ................................ 9

    B.    USTR's Proceedings Apply to Interested Parties - Not Only Importers. ......................... 12

IV.    Relief Requested ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp,*
397 U.S. 150 (1970) ........................................................................................6, 7, 11

*Biotech. Indus. Organization v. District of Columbia,*
496 F.3d 1362 (Fed. Cir. 2007) .....................................................................8

*Canadian Lumber Trade All. v. United States,*
517 F.3d 1319 (Fed. Cir. 2008) .................................................................2, 3, 10

*Clarke v. Sec. Indus. Ass'n,*
479 U.S. 388 (1987) ......................................................................................6, 7

*Clinton v. City of New York,*
524 U.S. 417 (1998) ......................................................................................3

*Elliot v. Swarthout,*
35 U.S. 137 (1836) ........................................................................................10

*G & R Produce Co. v. United States,*
381 F.3d 1328 (Fed. Cir. 2004) ...................................................................11

*Gilda Industries, Inc. v. United States,*
446 F.3d 1271 (Fed. Cir. 2006) ............................................................4, 6, 10, 11

*Invenergy Renewables LLC v. United States,*
422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019), *modified*, 476 F. Supp. 3d 1323 (Ct. Int'l
Trade 2020)...................................................................................................3, 8, 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
572 U.S. 118 (2014) ......................................................................................5, 6

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.,*
925 F.3d 1225 (Fed. Cir. 2019) ...................................................................5, 6

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ......................................................................................2

*Massachusetts v. EPA,*
549 U.S. 497 (2007) ......................................................................................2

*McKinney v. U.S. Dept. of Treasury,*
799 F.2d 1544 (Fed. Cir. 1986) ...................................................................2

*Nat'l Credit Union Admin. v. First Nat'l Bank*,
 522 U.S. 479 (1998) ............................................................................................... 6

*NRDC, Inc. v. Ross*,
 331 F. Supp. 3d 1338 (Ct. Int'l Trade 2018) ...................................................... 12

*Perry Chem. Corp. v. United States*,
 375 F. Supp. 3d 1324,  (Ct. Int'l Trade 2019) ..................................................... 4

*Perry Chem. Corp. v. United States*,
 415 F. Supp. 3d 1260 (Ct. Int'l Trade 2019) ....................................................... 4

*Richard L. Jones Calexico, Inc. v. United States*,
 2006 Ct. Int'l Trade LEXIS 111 (July 25, 2006) ........................................... 11, 12

*In re Section 301 Cases*,
 No. 21-00052, 2021 Ct. Intl. Trade LEXIS 82 (Ct. Int'l Trade July 6, 2021) ................ 5, 9

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
 918 F.3d 1355 (Fed. Cir. 2019) .......................................................................... 12

*Spokeo, Inc. v. Robins*,
 578 U.S. 856 (2016) ............................................................................................. 2

*Sumecht N.A., Inc. v. United States*,
 923 F.3d 1340 (Fed. Cir. 2019) ............................................................................ 9

*Thyssenkrupp Materials N.A., Inc. v. United States*,
 498 F. Supp. 3d 1372 (Ct. Int'l Trade 2021) ...................................................... 14

*United Food & Com. Workers v. Brown Group*,
 517 U.S. 544 (1996) ............................................................................................. 1

*United States v. Williams*,
 514 U.S. 527 (1995) ........................................................................................... 10

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
 429 U.S. 252 (1977) ........................................................................................ 2, 3

*Warth v. Seldin*,
 422 U.S. 490 (1975) ............................................................................................. 2

## Statutes

5 U.S.C. § 702 ............................................................................................................ 6

19 U.S.C. § 2411(a)(1)(B)(ii) ..................................................................................... 7

19 U.S.C. § 2411(d)(9) ............................................................................................... 7

19 U.S.C. § 2414(a)(1)(A) ............................................................................................... 7

19 U.S.C. § 2414(b) ....................................................................................................... 12

19 U.S.C. § 2414(b)(1)(A) .............................................................................................. 7

19 U.S.C. § 2417(a)(2) ................................................................................................. 7, 8

28 U.S.C. § 251 ............................................................................................................... 2

28 U.S.C. § 1346 ............................................................................................................. 4

28 U.S.C. § 2631 ............................................................................................................. 6

28 U.S.C. § 2631(i) ......................................................................................................... 6

28 U.S.C. § 2643 ............................................................................................................. 9

28 U.S.C. § 2643(a)(1) .................................................................................................... 8

28 U.S.C. § 2643(c)(1) .................................................................................................... 9

**Other Authorities**

H.R. Rep. 1235, 96th Cong., 2d Sess. ........................................................................... 10

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices
Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg.
47,974 (Sept. 21, 2018) ............................................................................................ 3

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Re-
lated to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg.
43,304 (Aug. 20, 2019) ............................................................................................. 4

*Procedures for Requests To Exclude Particular Products From the September 2018
Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to
Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576
(Jun. 24, 2019) ..................................................................................................... 8, 14

*Procedures for Requests To Exclude Particular Products From the August 2019 Action
Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology
Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 57,144 (Oct. 24, 2019) ................. 8, 14

*Request for Comments Concerning Proposed Modification of Action Pursuant to Section
301: China's Acts, Policies, and Practices Related to Technology Transfer,
Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608 (Jul 17, 2018) ....................................... 12

*Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019) ...................................... 12

Rodino, Peter W., "The Customs Courts Act of 1980," *N. Y. L. Sch. L. Rev.* 459 (1981) ........................ 10

## I.      INTRODUCTION

This Amicus Curiae Brief is submitted on behalf of certain plaintiffs, who are interested parties that bear or bore the cost of the List 3 and/or List 4A tariffs, irrespective of importer of record status ("Plaintiffs")[1] and pursuant to the Court's April 13, 2021 Order. ECF No. 275. We address the claims raised in the selected sample case and do not repeat any arguments already made by lead Plaintiffs, HMTX Industries LLC, *et al.* ("Lead Plaintiffs").

All Plaintiffs agreed to have their cases stayed behind "Lead Plaintiffs" as the test case designated to resolve the legality of the imposition of duties pursuant to List 3 and List 4A.  *See In Re Section 301 Cases*, 21-cv-00052-3JP, ECF No. 267.  "Lead Plaintiffs" raised in their amended complaint the remedy that the Court "order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 3 and List 4A." HMTX Amended Compl. at 26, ECF No. 12.  Plaintiffs respectfully request that the Court confirm that relief ordered is not limited to an importer of record, but rather, consistent with USTR's implementation of Section 301 tariffs, relief is available to those who bear or have borne the cost of the tariffs pursuant to List 3 or List 4A, and who have filed a complaint.

## II.     PLAINTIFFS HAVE STANDING

### A.      The Concrete and Particularized Injuries Suffered by Plaintiffs Who Bore or Bear the Cost of the Tariffs Irrespective of Importer of Record Status as a Result of Section 301 Tariffs Imposed by List 3 and List 4A Confer Constitutional Standing.

---

[1] The attached list is illustrative of Plaintiffs who are similarly situated.  This list is not exhaustive. Members of an association acting as a plaintiff are also eligible for relief. Plaintiff trade associations have standing to bring suit on behalf of its members where its members would otherwise have standing to bring suit in their own right and their participation is not required for the claim asserted or relief requested. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Biotech. Indus. Organization v. District of Columbia*, 496 F.3d 1362, 1369 (Fed. Cir. 2007) (quoting *United Food & Com. Workers v. Brown Group*, 517 U.S. 544, 553 (1996)).

Standing is a threshold matter in which the court ensures that the plaintiff meets the case and controversy requirements of Article III of the Constitution. *McKinney v. U.S. Dept. of Treasury*, 799 F.2d 1544, 1549 (Fed. Cir. 1986); *see also Warth v. Seldin*, 422 U.S. 490, 517–518 (1975) ("[t]he rules of standing, ... are threshold determinants of the propriety of judicial intervention."); *cf.* 28 U.S.C. § 251 (establishing the Court as an Article III court). "The essence of the standing question, in its constitutional dimension, is whether the plaintiff has alleged such a personal stake in the outcome of the controversy (as) to warrant [its] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260-61 (1977) (internal citations and quotations omitted). To establish constitutional standing, a plaintiff must satisfy three elements. First, it must have "suffered a concrete and particularized injury that is either actual or imminent"; second, it must show that "the injury is fairly traceable to the defendant"; and third, the plaintiff must show "a favorable decision will likely redress that injury." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 856 (2016) (*quoting Lujan*, 504 U.S. at 560). A particularized injury "affect[s] the plaintiff in a personal and individual way." *Id.* (*quoting Lujan*, 504 U.S. at 560 n.1). A concrete injury need be real, but not necessarily tangible. *Id.* at 1549. "[T]he injury-in-fact requirement…ensure[s] that the plaintiffs have a stake in the fight and will therefore diligently prosecute the case while, at the same time, ensuring that the claim is not abstract or conjectural so that resolution by the judiciary is both manageable and proper." *Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1332-33 (Fed. Cir. 2008) (citations and quotations omitted). The constitutional standing requirement of "[i]njury-in-fact is not Mount Everest." *Id.* at 1333. (internal citation omitted). The injury may be

indirect so long as it is fairly trac eable to defendant's conduct. *Vill. of Arlington Heights*, 429 U.S. at 261, 97 S. Ct. 555.

Economic injury is a form of injury-in-fact that can confer standing. Courts "routinely recognize probable economic injury resulting from [governmental actions] that alter competitive conditions [are] sufficient to satisfy the [Article III injury-in-fact requirement]," and any party "who is likely to suffer economic injury as a result of [governmental action] that changes market conditions satisfies this part of the standing test." *Clinton v. City of New York*, 524 U.S. 417, 433 (1998). Economic harms can be shown through "economic logic." *Canadian Lumber*, 517 F.3d at 1333. In *Canadian Lumber*, the Federal Circuit affirmed the Court of International Trade's holding that a wheat seller – not an importer or exporter – had Article III standing because it was "likely" to suffer "economic injury" as a result of duties imposed on wheat from Canada. *Id.* at 1334. The Federal Circuit agreed with the Court of International Trade's reliance on "economic logic" to reach that conclusion. *Id.*

In addition, the Court of International Trade has found that a "package of procedural, economic, business, and reputational harms" that is sufficiently "concrete, imminent, and particularized" is sufficient to "satisfy the injury requirement." *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1274 (Ct. Int'l Trade 2019), *modified*, 476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020). In *Invenergy*, the Court found that a solar panels consumer suffered injury sufficient for Article III standing to challenge USTR's failure to follow notice and comment procedures in issuing a withdrawal of bifacial solar panels exclusion from safeguard duties imposed under the Trade Act. *See id.* at 1272–74. The consumer alleged "procedural harm and additional economic, business, and reputational harms to show an actual or imminent concrete and particularized injury" to its solar energy projects and larger business. *Id.* at 1272.

Plaintiffs have suffered a package of economic, business, and reputational harms, in addition to procedural harms, stemming from the United States Trade Representative's ("USTR") implementation,

administration, and enforcement of Section 301 tariffs on goods provided in "List 3"[2] and "List 4A"[3]. Plaintiff's economic harms arise directly from these actions, where they have incurred significant costs of the additional tariffs of up to 25% *ad valorem* for goods on List 3 and/or 4, either as the importer of record directly responsible for such duties or as an ultimate consignee or purchaser required to pay them as a part of the transaction for the imported goods. Plaintiffs' extensive economic harms as a result of higher duties on products sourced from China are, in many respects, more concrete and particularized than those suffered by the plaintiffs in *Canadian Lumber* or *Invenergy*, where the court had to rely on a more attenuated connection between the Government's actions and the potential imminent harm to find standing. Plaintiffs who are not importers with respect to the goods at issue can be distinguished from the plaintiff in *Perry Chem. Corp. v. United States*, where the Court of International Trade found that "with respect to entries for which [the plaintiff] was not the importer and did not pay cash deposits," the plaintiff suffered no "injury in fact" as it "paid nothing on these entries and was not impacted by their liquidation." 375 F. Supp. 3d 1324, 1332 (Ct. Int'l Trade 2019), *reconsideration denied*, 415 F. Supp. 3d 1260 (Ct. Int'l Trade 2019). Plaintiffs, in contrast, are impacted directly and financially by the additional Section 301 duties.

Plaintiffs also suffer from harms that arise out of USTR's procedural failures to comply with the Administrative Procedure Act ("APA"). USTR's failure to sufficiently support its decisions with respect to List 3 and/or List 4A and consider and respond to the thousands of public comments submitted to USTR constitute procedural harms that led to concrete, imminent, and particularized injury in the form of higher tariffs borne by the Plaintiffs. Procedural deficiencies can constitute sufficient injury even where the agency's final decision may not have been in the plaintiff's favor even after following proper procedures. *Gilda Industries, Inc. v. United States*, 446 F.3d 1271, 1279 (Fed. Cir. 2006) (("[T]he failure to conduct

---

[2] *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018).
[3] *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Re-lated to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).

review and revision of the list injured Gilda by depriving it of at least an opportunity to have those products

removed. That is a sufficient injury to be cognizable under the test for Article III standing.") (citations

omitted)).

Finally, Plaintiffs' injuries can be fairly traceable to USTR's actions with respect to List 3 and/or

List 4A, and judicial action is likely to redress the injury. Without the actions taken by USTR to expand

the scope of Section 301 tariffs on imports from China collectively valued at roughly $500 billion,

Plaintiffs would not have suffered the economic, business, reputational, and procedural harms described

above. A judicial decision in favor Plaintiffs would likely redress these injuries, at minimum, by

permanently enjoining the Government from applying List 3 and/or List 4A against Plaintiffs and

collecting any tariffs from Plaintiffs pursuant to List 3 and/or 4, as well as ordering the Government to

refund any unlawfully exacted tariffs. *See In re Section 301 Cases*, No. 21-00052, 2021 Ct. Intl. Trade

LEXIS 82, at *12 (Ct. Int'l Trade July 6, 2021) (describing the Court's "broad statutory authority to order

appropriate relief").

For the foregoing reasons, Plaintiffs have constitutional standing.

**B.      Plaintiffs Have Statutory Standing As Interested Persons Who Are Adversely
            Affected by USTR's Implementation of List 3 and/or List 4A and Clearly Fall
            Within Section 301's Zone of Interests**

In addition to Article III constitutional standing requirements, courts have adopted an additional

standing requirement, sometimes referred to as the prudential standing requirement, which the Supreme

Court has clarified is simply a statutory "zone of interests" analysis. *Lexmark Int'l, Inc. v. Static Control

Components, Inc.*, 572 U.S. 118, 126, 128 n.4 (2014) ("[P]rudential standing is a misnomer as applied to

the zone-of-interests analysis," and "[w]e have on occasion referred to this inquiry as 'statutory standing'"

(citations omitted)). *See also Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225,

1235 (Fed. Cir. 2019) (adopting non-jurisdictional "statutory standing" post-*Lexmark*). Unlike

constitutional standing, statutory standing is not jurisdictional. *Gilda*, 446 F.3d at 1280 ("the zone of interest tests is not jurisdictional") (citations omitted); *Lone Star Silicon*, 925 F.3d at 1235-36.

A plaintiff seeking to invoke the jurisdiction of the Court of International Trade must demonstrate that it meets the statutory standing requirements to bring an action under the Tariff Act, 28 U.S.C. § 2631. "Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5." 28 U.S.C. § 2631(i). "[C]ourts applying the judicial review standards of the [APA], 5 U.S.C. § 702, determine whether the plaintiff has standing to seek review under that statute based on 'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Gilda*, 446 F.3d at 1279-80 (*quoting Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970)). The zone of interests analysis "asks whether this particular class of persons ha[s] a right to sue under this substantive statute" using "traditional principles of statutory interpretation." *Lexmark*, 572 U.S. at 127-28 (citations and quotations omitted). The purpose of the analysis is to ensure that "a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protect by the law invoked.'" *Id.* at 129 (citations and quotations omitted).

In deciding which interests are arguably protected, the courts consider the "overall context" of the relevant statutory framework. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 401 (1987); *see also Lexmark*, 572 U.S. at 130 ("In [the APA] context we have often conspicuously included the word arguably in the test to indicate that the benefit of any doubt goes to the plaintiff" (citations and quotations omitted)). "[W]e then inquire whether the plaintiff's interests affected by the agency action in question are among them." *Nat'l Credit Union Admin. v. First Nat'l Bank*, 522 U.S. 479, 492 (1998). In the context of the APA, this zone of interests test "is not meant to be especially demanding," and, "[i]n cases where the plaintiff is not

itself the subject of the contested regulatory action," the test is satisfied unless the "the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke*, 479 U.S. at 399.

The zone of interests protected by Section 301 includes United States commerce. 19 U.S.C. § 2411(a)(1)(B)(ii). The text of the statute itself shows that Congress sought to ensure that the underlying Section 301 measures and the implementation of those measures reflect consideration of United States commerce, including participants in U.S. commerce. Plaintiffs are companies who engage in international trade and participate in U.S. commerce, placing them "arguably within the zone of interests to be protected or regulated by the statute...in question." *Ass'n of Data Processing*, 397 U.S. at 153. Plaintiffs' injuries are related to the payment of tariffs and impact on prices of imported products subject to additional duties, which constitute an integral part of United States commerce.

The statutory framework underlying Section 301 contemplates the inclusion of a wide range of affected parties in the implementation process, including "domestic firms and workers, representatives of consumer interests, United States product exporters, and any industrial user of any goods or services that may be affected by actions taken under" Section 301 measures. 19 U.S.C. § 2411(d)(9) (defining "interested persons"). Such "interested persons" are entitled to provide their views to USTR on any proposed determinations with respect to any Section 301 determinations under 19 U.S.C. § 2414(a)(1)(A), including having an opportunity for a public hearing if requested by any interested person. 19 U.S.C. § 2414(b)(1)(A). Similarly, before USTR can take action to "modify or terminate" an action taken pursuant to Section 301, USTR is required to consult with "representatives of the domestic industry" and "provide opportunity for the presentation of views by other interested persons affected by the proposed modification or termination" concerning its effects and whether such action would be appropriate. 19

U.S.C. § 2417(a)(2). Taken together, these statutes clearly evince the intent of Congress to include participants of U.S. commerce, such as the Plaintiffs, within the zone of interests of Section 301 measures.

The USTR invited "interested persons, including trade associations" to submit requests for exclusion from the additional duties imposed by List 3 and/or List 4A, recognizing their wide-ranging impact on participants in U.S. commerce. *See Procedures for Requests To Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019); *Procedures for Requests To Exclude Particular Products From the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 57,144, 57,145 (October 14, 2019). *See also Invenergy*, 422 F. Supp. 3d at 1277 ("Whether the original Section 201 safeguard measure was intended to protect the domestic industry, USTR set forth Exclusion Procedures under which interested persons have rights, and these interested persons include consumers, purchasers, and importers who did not file or otherwise participate in the exclusion process.")

Because Plaintiffs are importers, purchasers, and ultimate consignees of the goods subject to List 3 and/or List 4A, they are interested persons adversely affected and aggrieved by USTR's imposition of additional duties under Section 301 who fall within the zone of interests arguably protected by the Section 301 measures. Therefore, Plaintiffs have statutory standing to bring this suit.

## III.     THIS COURT'S REMEDY SHOULD INCLUDE RELIEF TO PLAINTIFFS

This Court has broad authority to issue a remedy not limited to the importer of record. "The Court of International Trade may enter a money judgment for or against the United States in any civil action commenced under section 1581 or 1582 of this title." 28 U.S.C. § 2643(a)(1).   Indeed, the Court can order "any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory

judgments, orders of remand, injunctions, and writs of mandamus and prohibition." *Id.* § 2643(c)(1).  If the Court finds the tariffs imposed pursuant to List 3 and List 4A unlawful, then Plaintiffs are entitled to refunds on equal footing with plaintiffs who are the importers of record.

From the beginning of this case, "Lead Plaintiffs" have argued that the Court, sitting in equity, has broad authority to grant refunds if the Presidential or agency action is ultimately found unlawful.  In the Court's July 6, 2021 preliminary injunction (*In Re Section 301 Cases*, 21-cv-0052-3JP, ECF No. 329, Slip Op. 21-81), this three-judge panel agreed that this Court's remedial authority is broad.  That power of the Court applies equally to importers and non-importers.  Unlawfully collected tariffs are unlawful.  They cannot be forever unrecoverable.  *See, e.g.*, PI, Slip Op. 21-81 at 10.  The USTR's process applied to "interested parties" - not importers - which includes parties that have an interest in the tariffs beyond that of the importer of record, as discussed below.

The Government previously agreed that the Court has the power to issue refunds irrespective of liquidation status. *See, e.g., Sumecht N.A., Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019) (Government concession regarding the availability of refunds, which defeated the motion for a preliminary injunction).  So too does the Court possess the power to order refunds irrespective of the status of an importer, where a Plaintiff can demonstrate that it bore the cost of the tariff.  Even if the Court orders relief on an entry by entry basis, consistent with the process envisioned in the PI, Plaintiffs can - and should - be made whole through the inclusion of language that allows for refunds to the party that bore the cost of the tariffs for that specific entry.

### A.    The Court's Power Is Not Limited to Ordering Relief to Importers.

As noted, the Court has broad equitable power, including to issue monetary judgments.  28 U.S.C. § 2643.  The legislative history of this provision suggests that it was intended to allow the Court to enter judgment for refunds so that the "judgment would be paid in the same manner as any other judgment

against the United States," rather than requiring "the return [of] the appropriate papers to the Customs Service with an order that the entry be reliquidated in accordance with the decision of the court … which ha[d] the effect of requiring a refund of customs duties to the importer."  H.R. Rep. 1235, 96th Cong., 2d Sess., p. 60.  *See* Peter W. Rodino, "The Customs Courts Act of 1980," *N. Y. L. Sch. L. Rev.* 459, 467 (1981).  In other words, reliquidations are not strictly required, indicating that the scope of relief is not so limited.

The U.S. Supreme Court has long recognized the rights of injured, non-importers to seek reimbursement of duties or taxes improperly collected, so long as they preserved their claims and provided notice of the relief requested.  *See, e.g., United States v. Williams*, 514 U.S. 527 (1995) (28 U.S.C. § 1346 construed to allow suit by other than the individual against whom tax assessed); *Elliot v. Swarthout*, 35 U.S. 137, 154 (1836) ("There can be no hardship in requiring the party to give notice to the collector that he considers the duty claimed illegal, and put him on his guard, by requiring him not to pay over the money. . . . But if a party is entirely silent, and no intimation of an intention to seek a repayment of the money; there can be no ground upon which the collector can retain the money, or call upon the government to indemnify him against a suit.")

The Court's holdings on remedy in other tariff contexts are instructive - and again, not limited to ordering relief to importers only.  For example, in *Canadian Lumber Trade*, 517 F.3d at 1333, the Federal Circuit affirmed this Court's holding that the Canadian Wheat Board, a wheat seller -- not an importer or exporter -- had Article III standing because it was "likely" to suffer "economic injury" as a result of duties imposed on wheat from Canada, the proceeds of which were distributed to an entity promoting North Dakotan wheat. *Id.* at 1334.  In *Gilda Indus.*, 446 F.3d at 1279, the Court confirmed that the plaintiff had standing to bring a procedural claim and did not tie the relief to the fact that it was an importer, as opposed

to a purchaser of the goods at issue.  *Id.* (finding that USTR's inclusion of plaintiff's goods on the retaliation list subjected plaintiff to additional duties, sufficient to assert injury).

In fact, in numerous trade contexts, relief is ordered for non-importers, including on behalf of domestic producers and other interested parties.  *See, e.g., Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1365 (Fed. Cir. 2019) (permitting an interested party to challenge a scope ruling even though it was not the requestor of the ruling and had no imports subject to it at the time because, in part, because "the outcome of the cases could well affect whether [the interested parties] had to pay the duties on their merchandise"); *Invenergy*, 422 F. Supp. 3d at 1255  (granting preliminary injunction against imposition of safeguard measures on behalf of non-importer lead plaintiff);  *NRDC, Inc. v. Ross*, 331 F. Supp. 3d 1338 (Ct. Int'l Trade 2018) (adjudicating APA claims brought by environmental groups seeking USTR import ban).

The Court considered a broker's claim for a remedy pursuant to duty drawback statutory provisions in *Richard L. Jones Calexico, Inc. v. United States*, 2006 Ct. Int'l Trade LEXIS 111 (July 25, 2006).  There, the Court rejected Customs' argument that only the importer could seek a remedy under the reliquidation provisions for duty drawback and permitted the broker acting on the importer's behalf to maintain the action.   *Id.* at *17 (noting that the purpose of the statute is "to be a means 'for refunding money erroneously collected suggest[ing] that it should be interpreted *liberally*.'" *Citing G & R Produce Co. v. United States*, 381 F.3d 1328, 1332 (Fed. Cir. 2004) (emphasis added)).

A party need not be the entity directly regulated to bring APA claims.  *See Ass'n of Data Processing*, 397 U.S. at 153-155 (data processing providers had prudential standing to bring an APA challenge to an agency rule allowing banks to sell such services, even though the plaintiff was not the regulated entity, but a "competitor").  Here, Plaintiffs seek relief for duties that may ultimately be found

to have been erroneously collected and refunds as a form of relief should therefore be liberally construed. *Richard L. Jones Calexico, Inc.*, 2006 Ct. Int'l Trade LEXIS 111, *17.

**B.    USTR's Proceedings Apply to Interested Parties - Not Only Importers.**

As set forth above in the standing section, the statute expressly covers "interested persons."  *See* 19 U.S.C. § 2414(b); *see also Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,609 (Jul 17, 2018) (citing statutory provision in USTR's request for comments).  As "Lead Plaintiffs'" Cross Motion for Judgment on the Agency Record points out, hundreds of witnesses from a broad array of businesses, trade associations, consumer, and public interest groups appeared at the hearings and more than 9,000 comments were submitted.  ECF No. 358 at 29.

USTR's own regulatory actions regarding the List 3 and List 4A exclusion process seeking comments from "interested persons" further confirm that purchasers and users of imported products fall within the statute's zone of interests, as explained above.  *See* 83 Fed. Reg. at 33,609 ("In accordance with section 304(b) of the Trade Act (19 U.S.C. § 2414(b)), USTR invites comments from interested persons with respect to the proposed supplemental action to be taken in the investigation."); *see also Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019) ("USTR invites comments from interested persons with respect to the proposed action to be taken in the investigation.").  These instructions contained no limitation based on importer of record status.

In addition, the exclusion process solicited comments on a product-specific, not importer-specific, basis from a range of "requestors" who were asked to describe "their relationship to the product" as either

"Importer, U.S. Producer, Purchaser, Industry Association, or Others."  *See Procedures for Requests To Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (Jun. 24, 2019) (for List 3); *Procedures for Requests To Exclude Particular Products From the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 57,144 (Oct. 24, 2019) (for List 4A).

In other contexts, such as in Section 232 tariffs, specific relief was limited to the importer of record, indicating that the agency knew how to so limit relief but deliberately chose not to under Section 301.  *See, e.g., Thyssenkrupp Materials N.A., Inc. v. United States*, 498 F. Supp. 3d 1372, 1379-1380 (Ct. Int'l Trade 2021) (permitting a challenge to Commerce's exclusion process by a company that did not file an exclusion and finding the economic injury to be "redressable should the court come to a favorable decision" for plaintiff through a refund of duties paid or through injunctive relief).

**IV.      Relief Requested**

"Lead Plaintiffs'" proposed order seeks an instruction that "Defendants must refund, with interest, any duties paid by Plaintiffs pursuant to List 3 and List 4A."  ECF No. 358 at p.3.  This language tracks the proposed relief in Plaintiffs' complaints, and such language would apply to importers and non-importers,[4] who were harmed as a result of the imposition of the unlawful duties, where such Plaintiffs bear or bore the cost of the tariffs.

We respectfully request that the Court include in its order for relief the express right for Plaintiffs to be compensated for the harm resulting from such unlawful imposition of Section 301 tariffs.

**DATED:** <u>August 9, 2021</u>

<u>**/s/ Christine M. Streatfeild**</u>
Christine M. Streatfeild
Kevin M. O'Brien

**BAKER & MCKENZIE LLP**
815 Connecticut Avenue, NW
Washington, DC 20006

<u>**/s/ Nancy A. Noonan**</u>
Nancy A. Noonan
Angela M. Santos

**ARENT FOX LLP**
1717 K Street, NW
Washington, D.C. 20006

---

[4] It would also apply to members of associations where the association filed a complaint.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Court's Standard Chamber Procedure 2(b)(1) and the Court's Scheduling Order dated April 13, 2021, ECF No. 275, the undersigned certifies that the attached **AMICUS CURIAE BRIEF OF INTERESTED PARTIES** filed on August 9, 2021 complies with the word limitation requirement. The word count for the attached Amicus Curiae brief, as computed by Arent Fox LLP's word processing system is 4,614.

  **/s/ Nancy A. Noonan**
Nancy A. Noonan

Schedule A

## <u>INTERESTED PARTIES</u>

Plaintiffs listed below without asterisks are Baker and McKenzie clients. Plaintiffs listed below with asterisks are Arent Fox clients.

| Plaintiffs | CIT Case Number |
|---|---|
| American Trailer World Corp. * | 20-00714 |
| TexTrail, Inc., Carry-On Trailer, Inc. * | 20-00714 |
| Big Tex Trailer Manufacturing, LLC * | 20-00714 |
| PJ Trailers Manufacturing, Inc. * | 20-00714 |
| Flack Steel LLC * | 20-01026 |
| Flack Steel LTD DBA Flack Global Metals * | 20-01026 |
| Haas Automation Inc. * | 20- 01126 |
| Juniper Networks Inc. | 20-01201 |
| Juniper Networks (US) Inc. | 20-01201 |
| American Axle & Manufacturing, Inc. * | 20-01204 |
| Metaldyne M&A Bluffton, LLC * | 20-01204 |
| Metaldyne Powertrain Components, Inc. * | 20-01204 |
| Jabil Inc. f/k/a Jabil Circuit, Inc. * | 20-01270 |
| Jabil Defense And Aerospace Services, LLC * | 20-01270 |
| Jabil Silver Creek, Inc. f/k/a Wolfe Engineering Inc. * | 20-01270 |
| Nypro Inc. * | 20-01270 |
| N.P. Medical Inc. * | 20-01270 |
| Nypro Healthcare Baja Inc. * | 20-01270 |

**Schedule A**

| Plaintiffs | CIT Case Number |
|---|---|
| Nypro Puerto Rico Inc. * | 20-01270 |
| Hughes Network Systems, LLC * | 20-01496 |
| Martinrea International, Inc. * | 20-01534 |
| Martinrea Automotive Structures S. de R.L. de C.V. * | 20-01534 |
| Martinrea Automotive Structures (USA), Inc. * | 20-01534 |
| Martinrea Bishop Circle Assembly * | 20-01534 |
| Martinrea Hopkinsville, LLC * | 20-01534 |
| Martinrea Jonesville LLC * | 20-01534 |
| Agility Tooling Inc. * | 20-01534 |
| Icon Metal Forming, LLC * | 20-01534 |
| Martinrea Fabco * | 20-01534 |
| Martinrea Heavy Stampings Inc. * | 20-01534 |
| N.F. Smith & Associates, L.P. * | 20-01557 |
| Zurn Industries, LLC | 20-01650 |
| World Dryer Corporation | 20-01650 |
| Cisco Systems, Inc. | 20-03204 and 21-00212 |
| Meraki LLC | 20-03204 and 21-00212 |
| Luxtera LLC | 20-03204 and 21-00212 |
| Cisco Systems Capital Corporation | 20-03204 and 21-00212 |
| U.S. Motor Works LLC * | 21-00070 |