# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
THE HONORABLE CLAIRE R. KELLY, JUDGE
THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| IN RE SECTION 301 CASES | Court No. 21-00052-3JP |

## DECLARATION OF EXECUTIVE ASSISTANT COMMISSIONER ANNMARIE R. HIGHSMITH

I, AnnMarie R. Highsmith, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Assistant Commissioner, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since June 2021. My work ranges from enforcing over 500 U.S. trade laws and overseeing 14 trade agreements, to directing CBP's seven Priority Trade Issues in collaboration with 49 partner government agencies. From 2013 to 2021, I served as the Deputy Chief Counsel for CBP, and prior to that I served as the Associate Chief Counsel (Trade and Finance) of CBP. In that role, I served as the principal legal advisor for CBP on all matters involving customs laws, as they impact on trade, and a broad range of fiscal matters. I have been employed by CBP since 1992.

2. The Office of Trade (OT) consolidates the trade policy, program development, and compliance measurement functions of CBP, provides for the development of CBP's national strategy to facilitate legitimate trade, and manages the design and implementation of strategic initiatives for trade compliance and enforcement. OT directs

national enforcement responses through coordination with international partners and other U.S. government agencies, and it directs the enforcement of intellectual property rights (IPR), the identification of risks to detect and prevent the importation of contaminated agricultural or food products, the enforcement of free trade agreement eligibility, the administration of CBP's forced labor efforts, and the administration of the nation's antidumping and countervailing duty (AD/CVD) laws. Finally, OT oversees the issuance of all CBP regulations, legally binding rulings and decisions, informed compliance publications and structured programs for external CBP training and outreach on international trade laws and CBP regulations.

3. This declaration is made to provide context regarding the unworkable task CBP would face in order to comply with the Preliminary Injunction Order issued on July 6, 2021 in this case (the "Order"), which: (i) enjoins CBP from liquidating, during the pendency of this litigation, any Subject Entry (as defined in the Order) identified in the Repository by any of the over 6,700 plaintiffs in the over 3,700 cases filed to date (unless defendants opt to stipulate to refund duties found to be illegally collected); (ii) temporarily restrains CBP from liquidating any Subject Entry of any plaintiff during the period from July 6, 2021 through October 3, 2021 (as amended); and (iii) orders CBP to return to unliquidated status any entry inadvertently liquidated.

4. As of August 12, 2021, over 15.1 million entries have been made that are subject to Section 301 duties under List 3 or List 4A (for all importers, not just the over 6,700 plaintiffs who have filed actions). Of these entries, over 5.5 million remain unliquidated as of August 12, 2021. The total amount of Section 301 duties collected under List 3 and List 4A is over $81 billion.

5. CBP has strived to develop a workable process for suspending entries on the unprecedented, mass scale that would be required to implement the Order. We considered multiple options, from utilizing the agency's current technical capabilities, to creating new reports and other automated functionalities. However, creating new programming within the Automated Commercial Environment (ACE) to automate some of the necessary processes is not a feasible alternative for implementation in the short term as CBP currently has no funding for new ACE enhancements, and diversion of financial resources and computer programming personnel from other critical ACE upgrades, including cybersecurity enhancements, would have an unacceptable impact on that critical functionality. Moreover, planning, developing, and testing such programming would take significant time and could not be completed within the time frame for implementing the injunction.

6. Complying with the Order would be prohibitively resource-intensive for CBP. CBP calculates that it would require over 40 Import or Entry Specialists at the Centers of Excellence and Expertise (Centers) working full time throughout this litigation performing clerical updates that effectuate the anticipated suspensions of liquidation (based on the number of cases and plaintiffs filed to date), which does not account for time spent manually addressing any discrepancies and errors that will invariably arise in updating millions of liquidation records in ACE or the back-and-forth communications between the Centers and the thousands of plaintiffs regarding any issues affecting the entries for which they had requested suspension of liquidation. Bulk or batch processing could result in ACE system delays, further increasing the number of hours required to process the requests.

7. CBP does not have these personnel to spare as they are fully engaged and cannot be reassigned from other mission critical tasks. The reassignment of Center personnel would delay the entry summary processing of protests, post summary corrections, and validation of product exclusions for trade remedies, as well as inhibit enforcement efforts to address non-compliance with various priority trade issues such as trade agreement verifications (including USMCA), AD/CVD evasion, forced labor, and IPR seizures.

8. As previously explained to the Court in the Declaration of Thomas Overacker, suspending the liquidation of potentially millions of Subject Entries would divert significant resources away from the agency's numerous other critical functions, thereby compromising the broader mission of the agency. These other functions include: combatting transshipment and ensuring that duties are properly assessed and entries are timely liquidated; conducting Enforce and Protect Act investigations; instituting penalties and referring appropriate matters to Homeland Security Investigations; reviewing prior disclosures; conducting free trade agreement verifications; discretionary targeting efforts; and processing the dramatic increase in protests filed in the last year.

9. Moreover, additional CBP personnel would need to be dedicated to return inadvertently liquidated entries to unliquidated status, which may only be accomplished one entry at a time. The realignment of these personnel would impact the timely issuance of AD/CVD Injunction and Liquidation orders, enforcement actions would be delayed, as would trade remedy exclusion processing.

10. The circumstances show that, if we were to implement the process developed to date, complying with the Order through the process of suspension is simply not possible: the burden on the agency would be too immense, and the consequential impact on CBP's

programs too disruptive.  We foresee simply being unable to effectuate the suspension of millions of Subject Entries without repeatedly violating the preliminary injunction, and without unduly compromising the broader mission of the agency.

11. Accordingly, accepting the Court's alternate proposal, whereby defendants would stipulate to "refund any duties found to have been illegally collected" for the entries identified in the Repository, is the only feasible way for the Government to comply with the Order.  Although there is still burden associated with the alternate proposal, it will be significantly reduced in that it will eliminate the need for CBP to manually suspend liquidation in ACE for the entries placed in the Repository, which would have been required to effectuate the suspension of liquidation, and it will avoid the considerable risk that entries will deem liquidate at the conclusion of litigation, should CBP not be able to liquidate all Subject Entries within the six-month period set forth in 19 U.S.C. § 1504(d).

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 30th day of August, 2021.

                                                    _____
                                                    AnnMarie R. Highsmith
                                                    Executive Assistant Commissioner
                                                    Office of Trade
                                                    U.S. Customs and Border Protection