UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
          THE HONORABLE CLAIRE R. KELLY, JUDGE
          THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____
                                              :
                                              :
*In Re* Section 301 Cases                     :   Court No. 21-00052
                                              :
_____:

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO EXTEND TIME TO FILE REMAND RESULTS**

Plaintiffs oppose the Government's motion to extend the time for the Office of the United States Trade Representative (USTR) to file remand results (Dkt. No. 459). Given the limited nature of the Court's remand—which afforded USTR another chance to provide, within 90 days, the reasoned explanation it failed to provide when it imposed the List 3 and 4A tariffs—the agency cannot demonstrate "good cause" for an extension that would leave uncured its established legal violation for another two months to the continuing detriment of American businesses and consumers. The Government's primary justification—that USTR lacks resources to timely review the over 9,000 comments filed in response to proposed Lists 3 and 4A—only underscores USTR's inability to cure the defect at all: As this Court made crystal clear (Op. 61), USTR is permitted only to "elaborate" on preexisting rationales memorialized in the rulemaking record; remand is not an opportunity to concoct new rationales or develop new explanations based on a "revisiting" (Mot. 2) of the comments and testimony that USTR originally shrugged off in its rush to enact Lists 3 and 4A.

### A. The Court Remanded For Elaboration Of Preexisting Reasons For Rejecting Years-Old Comments, Not *Post Hoc* Creation Of Reasons Based On A New Review Of Those Comments

On April 1, 2022, the Court held that USTR violated a requirement of the Administrative Procedure Act by failing to "provide a response to the comments it solicited when providing the rationale for its final determinations" in List 3 and List 4. Op. 55. Although "USTR's failure to explain its rationale in the context of the comments it received leaves room for doubt as to the legality of its chosen courses of action," the Court opted not to vacate Lists 3 and 4A (as Plaintiffs had requested) "[f]or now." *Id.* at 59. Instead, it gave the agency a limited opportunity to provide the absent explanation for its original action, while setting fixed deadlines to ensure that this closely watched litigation, involving many thousands of stakeholders, would not unnecessarily bog down. *See id.* at 71 (ordering "that the USTR shall file its remand results on or before June 30, 2022," *i.e.*, within 90 days, and that the parties shall file a status report regarding the further disposition of the litigation 14 days thereafter).

In taking that step, however, this Court gave the agency a clear command: "USTR may only further explain the justifications it has [already] given for the modifications"—*i.e.*, "elaborate" on its reasons—but it "may not provide new ones." Op. 61 (internal quotation marks omitted); *see id.* (agency "may not identify reasons that were not previously given unless it wishes to 'deal with the problem afresh' by taking new agency action"). That holding was based on the Supreme Court's "clear" rule: "An agency must defend its actions based on the reasons it gave when it acted." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020). Anything else would constitute "impermissib[le] . . . *post hoc* reasoning," which cannot sustain agency action. Op. at 61; *see id.* (*Regents* "constitutes a warning to agencies regarding the

impermissibility of *post hoc* reasoning as much as it constrains the court's review of such reasoning provided pursuant to a remand.").

In short, this Court remanded without vacatur (for the time being) to give the agency another opportunity to flesh out reasons from the rulemaking record to explain why it categorically rejected the 9,000+ comments submitted to USTR in September 2018 and August 2019. But that limited opportunity for USTR to elaborate on its wholly inadequate original explanation was explicitly *not* an invitation for it to remedy a failure to grapple with those comments *ab initio* or to devise new rationales for dismissing them.

### B. USTR Is Not Entitled To More Time To Review And "Revisit" Comments It Purportedly Had Considered Already

In its motion, the Government freely admits that USTR needs more time to review and analyze the voluminous comments and testimony it received several years ago. In particular, according to the Government, USTR seeks additional time (1) to "[c]onduct[] an analysis to ascertain, where possible, the nature of the more than 9,000 public comments received with respect to List 3 and List 4A, including identifying comments pertaining to each of the issues that the Court's Opinion identified as requiring a response to public comment," as well as (2) to "[r]eview[] the thousands of pages of hearing testimony from 13 days of public hearings conducted during the List 3 and List 4 notice-and-comment periods." Mot. 2. That explanation misconceives the scope of the Court's remand and flunks the "good cause" standard.

First, the Government's asserted new review process falls well outside the limited purpose of this Court's remand. *Cf. SUFI Network Servs., Inc. v. United States*, 817 F.3d 773, 779 (Fed. Cir. 2016) (in considering scope of remand, "both the letter and the spirit of the mandate must be considered"). The Government repeatedly has assured the public—and this Court—that it had already "take[n] account of" and "carefully reviewed the public comments and the [hearing]

3

testimony" years ago. S.J. Mot. (Dkt. No. 314) at 47 (first alteration in original) (quoting Notice Imposing List 3, 83 Fed. Reg. 47,974, 47,975 (Sept. 21, 2018), and Notice Imposing List 4, 84 Fed. Reg. 43,304, 43,305 (Aug. 20, 2019)); *see id.* at 58-59 ("[T]he Federal Register notices announcing both trade actions clearly demonstrate that the USTR considered the views expressed in written comments and at the public hearings."); S.J. Reply (Dkt. No. 412) at 36-37 ("[T]he USTR considered" the public comments "before issuing a final rule."); *id.* at 40 ("USTR considered the comments submitted by interested parties and based its decisions on the relevant factors set forth in sections 307(a)(1)(B) and (C)."); *id.* at 42 ("[T]he USTR considered all public comments, . . . and it responded in a reasoned manner in compliance with the APA.").

But the opportunity to "elaborate" on a previously given rationale should not necessitate a laborious process of *re-reviewing* all 9,000 comments and 13 days of testimony—with newly hired staff, no less. *See* Mot. 3. Instead, those rationales should already exist—to the extent they exist at all—in the administrative record. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019) ("[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."); *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978) ("We have made it abundantly clear before that when there is a contemporaneous explanation of the agency decision, the validity of that action must 'stand or fall on the propriety of that finding[.] . . . If that finding is not sustainable on the administrative record made, then the [agency's] decision must be vacated and the matter remanded to [it] for further consideration."); *see also Regents*, 140 S. Ct. at 1909 (noting that rule "promotes agency accountability" and "instills confidence that the reasons given are not simply convenient litigating positions") (internal quotation marks and alteration omitted).

Second, an extension is unwarranted given that the Court already gave the agency *more time than it took to review comments in promulgating List 3 and List 4 initially*.  For List 3, the agency said that it "carefully reviewed" approximately 6,000 comments in just 15 days.  *See* Notice Extending Public Comment Period for List 3, 83 Fed. Reg. 38,760, 38,761 (Aug. 7, 2018) and Notice Imposing List 3, 83 Fed. Reg. at 47,975 (List 3 comments due September 6, 2018, and list finalized on September 21, 2018).  For List 4, the agency "[took] account" of approximately 3,000 comments in 64 days.  *See* Notice Requesting Comments on Proposed List 4, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019) and Notice Imposing List 4, 84 Fed. Reg. at 43,305 (List 4 comments due on June 17, 2019, and list finalized on August 20, 2019).  Given that USTR apparently was able to "carefully review[]" the original 9,000 comments in fewer than 90 days when promulgating Lists 3 and 4A, USTR should not be afforded on remand 150 days to "revisit" them.  Although USTR protests that it is now working with a reduced staff, *see* Mot. 3, its task according to the remand order is simply to elaborate on the reasons the original team gave.  It is legally irrelevant what explanations the *new* team can come up with after the fact.

The Government's request for more time is particularly perplexing because, as part of the four-year review process, "USTR staff" recently "reviewed all public comments submitted (or previously entered data) for Lists 1-4, nearly 13,000 comments, to identify persons who supported the trade action in order to notify them of their opportunity to request review of the actions taken under section 301."  Mot. 4.  USTR should not be granted additional time to review those comments yet again, just to provide an explanation of reasons that USTR is required to have chronicled years ago.

Third, in contrast to USTR's deficient showing, plaintiffs in this case—not just the test case plaintiffs, but the thousands of *In re Section 301* plaintiffs—face obvious prejudice from being

5

forced to continue to pay potentially unlawful tariffs while they await either vacatur or a final appealable judgment. This Court has already recognized that the agency committed a significant violation—a violation that casts "doubt as to the legality of [USTR's] chosen courses of action." Op. 59. Especially considering that the challenged tariffs remain in place "[f]or now," *id.*, the agency should not be permitted to require plaintiffs to suffer additional delay so that a new staff can review the comments and testimony afresh to formulate new reasons for USTR's years-old actions.

***

If USTR actually has a record of sufficient contemporaneous—not *post hoc*—reasons for rejecting the comments and testimony it received against promulgation of Lists 3 and 4A, USTR should easily be able to specify and elaborate on those reasons by this Court's generous 90-day deadline. If not, no amount of additional time would enable the "agency to cure the defect," Op. 59, and it would be appropriate to vacate Lists 3 and 4 without further delay. This Court should deny the Government's motion.

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Pratik A. Shah
James E. Tysse
Devin S. Sikes
Daniel M. Witkowski
Sarah B. W. Kirwin

Dated: June 21, 2022

AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, D.C. 20006