UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| *IN RE* SECTION 301 CASES | Before: Hon. Mark A. Barnett,<br>Hon. Claire R. Kelly, and<br>Hon. Jennifer Choe-Groves, Judges<br>Court No. 21-00052-3JP |

**BRIEF OF *AMICI CURIAE* VERIFONE, DRONE NERDS, AND SPECIALIZED IN SUPPORT OF PLAINTIFFS' COMMENTS ON THE REMAND DETERMINATION**

*Amici curiae* VeriFone, Inc. ("Verifone"), Drone Nerds, Inc. ("Drone Nerds"), and Specialized Bicycle Components, Inc. ("Specialized")[1] by counsel, and under Rule 7 of the U.S. Court of International Trade, state as follows in support of Plaintiffs' Comments on the Remand Determination and Plaintiffs' request for the Court to vacate Final List 3 and Final List 4:

**Relevant Background**

In its Further Explanation of the Final List 3 and Final List 4 Modifications ("Explanation"), the United States Trade Representative ("USTR") asserts that Final Lists 3 and 4 were properly issued and claims that "the Trade Representative's determination on each aspect of the determination were made in consideration of the public comments and testimony, as well as statutory considerations, including the direction of the President." ECF 467 at 90. Verifone, Drone Nerds, and Specialized file this brief to dispute that USTR took into consideration "public comments and testimony." To the contrary, USTR acted arbitrarily and capriciously by issuing final lists solely at the behest of the President.

---

[1] Verifone, Drone Nerds, and Specialized are individual claimants in the *In re Section 301* cases. *See* Court No. 1:20-cv-00630 (Verifone), Court No. 1:20-cv-00919 (Drone Nerds), and Court No. 1:21-cv-00051 (Specialized).

**Argument**

The Explanation demonstrates that USTR had almost no flexibility to exempt headings meeting the criteria for removal detailed in the relevant Federal Register notices. Following a robust notice and comment process for List 1, USTR granted a *de minimis* number of exemptions for Lists 2, 3, and 4. Importantly, headings meeting the requirements for an exemption and removed from prior lists were subsequently included on later lists. Indeed, roughly 2/3 of the headings granted exemptions from List 3 were added to Proposed List 4—and over **90%** of these headings were included on Final List 4. USTR provides no explanation or justification for its change in position, other than the President told it to do so. That violates the Administrative Procedure Act ("APA") because it is "arbitrary, capricious, an abuse of discretion, or otherwise unlawful." 5 U.S.C. § 706(2)(a).

I.   **Complying with the demands of the President was USTR's primary consideration in issuing Lists 3 and 4.**

**List 1 followed an expected and ordinary process.** USTR responded to comments to Proposed List 1 and made corresponding adjustments before issuing the final list. USTR notes that when it proposed List 1, it consisted of "1,333 eight-digit subheadings…with an approximate trade value of $50 billion." ECF 467 at 7. After comments, USTR trimmed the list to 818 subheadings with an approximate trade value of $34 billion. *See id.* at 8. This is a reduction of approximately 39% of the headings and 32% of the trade value—which seems to be an effective application of Section 301 and the APA's notice and comment requirements.[2]

---

[2] Final List 2 is not contested here. But USTR's review of comments appears to end with List 1. USTR initially proposed 284 subheadings on List 2 for an additional approximate trade value of $16 billion, which was specifically calibrated to "maintain the effectiveness of a $50 billion trade action" as demanded by the President. ECF 467 at 8. This resulted in a Final List 2 consisting of 279 subheadings—removal of a mere 5 subheadings—and still with an approximate trade value of $16 billion. *See id.*

**Unlike List 1, USTR ignored the APA process in finalizing List 3.** USTR proposed 6,031 subheadings on Proposed List 3, totaling approximately $200 billion in trade value, per the President's request. *See id.* at 9. USTR held a 6-day public hearing with "approximately 350 witnesses" and received "more than 6,000 comments." *Id.* at 12. However, USTR's Final List 3 still resulted in 5,745 subheadings "with an approximate annual trade value of $200 billion." *Id.* at 13. In other words, Final List 3 has 95.2% of the original subheadings and no reduction in approximate trade value. This is so unresponsive to the record that it shows USTR acted solely at the President's behest.

**USTR also ignored the APA process in finalizing List 4.** For Proposed List 4, USTR initially proposed 3,805 subheadings totaling approximately $300 billion in trade value. *See id.* at 16. USTR engaged in a similar comment period as List 3, holding a 7-day public hearing with "[o]ver 300 witnesses" testifying, in addition to receiving 3,000 written comments. *Id.* at 17. Even so, Final List 4 consisted of 3,782 subheadings (List 4A contained 3,243 subheadings; List 4B contained 555 subheadings) still totaling approximately $300 billion in trade value. *See id.* at 18. This is a less than a 1% reduction in subheadings and no reduction in approximate trade value. These numbers speak for themselves.

Even assuming *arguendo* that USTR can plausibly argue that it considered comments when formulating Lists 3 and 4, USTR admits that it included on Proposed List 4 "194 of the 297 tariff lines removed from *Final List 3*," *id.* at 73 (emphasis original), ultimately resulting in 180 "[o]f the 194 tariff lines removed from List 3" being on Final List 4, *id.* at 74. This is a classic example of robbing Peter to pay Paul. In addition, certain subheadings removed from Proposed List 1 also made it onto Final List 4. For example, HTS subheading 8470.50.00 (cash registers) was on Proposed List 1, which includes point of sale terminals imported by Verifone. *See* 83 Fed. Reg.

14,906, 14,933 (Apr. 6, 2018). That subheading was removed from Final List 1. *See* 83 Fed. Reg. 28,710, 28,710–756 (June 20, 2018). However, the same subheading appears again on Final List 4. *See* 84 Fed. Reg. 43,304, 43,325 (Aug. 20, 2019). There is no rational justification for USTR's actions other than getting to the President's numbers.

USTR's assertions that it took comments into consideration before it issued Final Lists 3 and 4 are "so implausible that [they] could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Instead, the explanation for this "unexplained departure from prior agency determinations," *Leggett & Platt, Inc. v. N.L.R.B.*, 988 F.3d 487, 494 (D.C. Cir. 2021), is that USTR had to set a total trade value to meet the President's demands. USTR fails to satisfy the Supreme Court's requirement that "an agency, in the ordinary course, should acknowledge that it is in fact changing its position and 'show that there are good reasons for the new policy.'" *F.C.C. v. Fox Television Stations, Inc.* ("*Fox II*"), 567 U.S. 239, 250 (2012) (quoting *F.C.C. v. Fox Television Stations, Inc.* ("*Fox I*"), 556 U.S. 502, 515 (2009)). USTR concedes it had no flexibility to remove tariff headings that met the removal criteria laid out by USTR itself, stating that "to maintain the $250 billion aggregate level of trade (that is, aggregated with the approximately $50 billion level of Lists 1 and 2) covered by additional duties directed by the President, only a limited number of subheadings could be removed." *Id.* at 27; *see also id.* at 73 ("[T]he Trade Representative had limited flexibility in removing additional tariff subheadings that would significantly decrease the overall trade value of the modification.").

This is directly contrary to this Court's Order, which states that "while the President's direction is statutorily significant, the USTR's invocation of the President's direction does not obviate the USTR's obligation to respond to significant issues raised in the comments." ECF 448

at 54. Moreover, the Explanation fails to address this Court's concerns that "the final determinations do not explain whether or why the President's direction constituted the only relevant consideration nor do those determinations address the relationship between significant issues raised in the comments and the President's direction." *Id.* at 55.

USTR's imposition of the tariffs under Section 301, while ordered by the President, cannot circumvent the APA's notice and comment process. USTR's concession that the tariffs had to meet certain total trade value thresholds is an admission that its actions were arbitrary and capricious by "rel[ying] on factors which Congress has not intended it to consider." *State Farm*, 463 U.S. at 43.

## II. USTR's exclusion process does not resolve this issue because USTR's process results in a negligible impact on the overall dollar value of tariffs.

USTR's exclusion process does not remedy the inappropriate re-inclusion of prior exemptions. The APA requires USTR to engage in a notice and comment process for the exclusions. The criteria USTR must consider for an exclusion is very similar to the criteria for exemptions. For USTR to grant an exclusion, the requestor must state "[w]hether the particular product is available only in China" or whether the "particular product…is available from sources in the United States and/or in third countries"; "[w]hether the imposition of additional duties on the particular product would cause severe economic harm"; and "[w]hether the particular product is strategically important" to China. 83 Fed. Reg. 32,181, 32,182–83 (July 11, 2018); *see also*, 84 Fed. Reg. 29,576, 29,577 (June 24, 2019) (for List 3); 84 Fed. Reg. 57,144, 57,146 (Oct. 24, 2019) (for List 4).

The Explanation states that "[e]ach of the four lists were subsequently modified by granting product-specific exclusions for products classified within a particular tariff subheading." ECF 467 at 21; *see also, id.* at 74 ("[T]o address comments…that the additional duties would cause severe economic harm…the Trade Representative determined to establish an exclusion process to allow

interested persons to request that particular products classified with an HTS subheading be excluded."); *id.* at 14, 28, 56 n.6, 77–78 (all further discussing the exclusion process). The government claims that it "received approximately 50,000 exclusion request[s] and approved approximately 7,000 requests" for exclusions, spread across all four lists. *See id.* at 21. That does not remedy USTR's procedural failure, for at least two reasons.

First, USTR fails to identify the dollar value of the exclusions either in the Federal Register or the Explanation, likely because—like USTR's revisions to List 3 and List 4—the approximate dollar value is unchanged or represents a *de minimis* change. Second, USTR's treatment of the exclusions is a similar change in position in violation of the APA as discussed in Section I, *supra*. For example, Specialized imports helmets from China under HTSUS 6506.10.3045. Specialized filed for an exclusion at USTR-2019-0017-46110. On March 31, 2020, USTR excluded that subheading from the imposition of the additional tariffs. *See* 85 Fed. Reg. 17,936, 17,938 (Mar. 31, 2020). When the exclusion expired, Specialized submitted an extension request, *i.e.*, USTR-2020-0027-56903. USTR did not grant the extension. Regardless, perhaps with the exception of the limited pandemic-related exclusions, all exclusions expired by October 2020, *see* 86 Fed. Reg. 56,345, 56,346 (Oct. 8, 2021), and USTR stated it would "evaluate the possible reinstatement of each exclusion on a case-by-case basis." *Id.* Rather than accept exclusion applications from any interested party, USTR considered reinstating exclusions only for products previously granted an exclusion that had been extended.[3] The only constant is the standard USTR allegedly considered

---

[3] Ultimately USTR reinstated 352 exclusions. ECF 467 at 21. These are set to expire on December 31, 2022. *See id.* (citing 87 Fed. Reg. 17,380 (Mar. 28, 2022)). USTR also extended 81 exclusions for products related to COVID-19, and these specific exclusions are set to expire a month earlier on November 30, 2022. *See* 87 Fed. Reg. 33,871 (June 3, 2022) (excluding from additional duties certain medical-care products needed to address the COVID–19 pandemic).

for granting exclusions, which mirrored the standard for exemptions and remained the same since July 2018. *Compare id.*, *with* 83 Fed. Reg. 32,181, 32,182–83 (July 11, 2018). But USTR has reached different results on the same product applying the same standard—and its Explanation never explains why.

The exclusions—the vast majority of which have expired—do not cure the APA violations committed during the List 3 and List 4 rulemaking process.

## Conclusion

Verifone, Drone Nerds, and Specialized concur with Plaintiffs' Comments on the Remand Determination and, for the additional reasons contained in this brief, respectfully request that the Court vacate USTR's Final List 3 and Final List 4 as arbitrary and capricious in violation of the APA.

Dated: September 14, 2022

Respectfully submitted,

VENABLE LLP

/s/ Alexander W. Koff
Alexander W. Koff
Ashleigh J. F. Lynn
705 East Pratt Street, Suite 900
Baltimore, MD 21202
Tel: (410) 244-7400
Fax: (410) 244-7742
akoff@venable.com
ajlynn@venable.com

Nicholas M. DePalma
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA 22182
Tel: (703) 760-1600
Fax: (703) 821-8949
nmdepalma@venable.com

*Counsel for amici curiae VeriFone, Inc., Drone Nerds, Inc., and Specialized Bicycle Components, Inc.*