**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:     THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
              THE HONORABLE CLAIRE R. KELLY, JUDGE
              THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____
                                               :
                                               :
*In Re* Section 301 Cases                   :       Court No. 21-00052
                                               :
_____:

**<u>PLAINTIFFS' COMMENTS ON THE UNITED STATES TRADE REPRESENTATIVE'S REMAND DETERMINATION</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................2

I.     USTR'S RULEMAKINGS IMPOSE TARIFFS ON VIRTUALLY ALL CHINESE GOODS.................................................................................2

II.    THIS LITIGATION AND THE COURT'S REMAND ORDER ...........................6

III.   USTR'S ISSUANCE OF THE REMAND DETERMINATION ...........................7

LEGAL FRAMEWORK.................................................................................................8

ARGUMENT.................................................................................................................9

I.     USTR FAILED TO HEED THIS COURT'S DIRECTIVE TO EXPLAIN FURTHER ANY JUSTIFICATIONS IT HAD GIVEN IN RESPONSE TO THE SIGNIFICANT COMMENTS RECEIVED .................................................9

II.    THE REMAND DETERMINATION IS LARGELY NON-RESPONSIVE, IMMATERIAL, OR *POST HOC* ........................................................................11

III.   USTR FAILED TO RESPOND ADEQUATELY TO MAJOR POLICY CONCERNS ..........................................................................................................15

A.    Damage to the Economy.........................................................................16

B.    Efficacy of the Tariffs ...........................................................................18

C.    Alternatives to Tariffs ...........................................................................19

CONCLUSION..............................................................................................................20

## TABLE OF AUTHORITIES

**CASES:**

*City of Portland, Oregon v. EPA,*
    507 F.3d 706 (D.C. Cir. 2007) ............................................................................................. 15

*Dep't of Com. v. New York,*
    139 S. Ct. 2551 (2019) ................................................................................................ 8, 9, 10

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
    140 S. Ct. 1891 (2020) ............................................................................................. *passim*

*Disabled Am. Veterans v. Gober,*
    234 F.3d 682 (Fed. Cir. 2000) ................................................................................................ 8

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) .............................................................................................................. 12

*In re Sang Su Lee,*
    277 F.3d 1338 (Fed. Cir. 2002) ........................................................................................ 8, 14

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin,*
    626 F.3d 84 (D.C. Cir. 2010) ................................................................................................. 8

*Invenergy Renewables LLC v. United States,*
    476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020) ................................................................. 7, 9, 13

*Mo. Pub. Serv. Comm'n v. FERC,*
    337 F.3d 1066 (D.C. Cir. 2003) ........................................................................................... 17

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ........................................................................................................... 8, 14

*Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.,*
    981 F.3d 1360 (Fed. Cir. 2020) .............................................................................................. 8

*Sacramento Mun. Util. Dist. v. FERC,*
    616 F.3d 520 (D.C. Cir. 2010) ............................................................................................. 17

*Vermont Yankee Nuclear Power Corp. v. NRDC,*
    435 U.S. 519 (1978) ......................................................................................................... 8, 10

**STATUTES:**

5 U.S.C.
    § 553(c) ................................................................................................................................... 7
    § 706(2)(a) .............................................................................................................................. 8

19 U.S.C.
    § 2411(b)(2) ...................................................................................................20

**FEDERAL REGISTER NOTICES:**

*Extension of Public Comment Period Concerning Proposed Modification of
    Action Pursuant to Section 301: China's Acts, Policies, and Practices Related
    to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg.
    38,760 (Aug. 7, 2018) ...............................................................................2, 4

*Notice of Modification of Section 301 Action: China's Acts, Policies, and
    Practices Related to Technology Transfer, Intellectual Property, and
    Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) ...........................3, 4, 17

*Notice of Modification of Section 301 Action: China's Acts, Policies, and
    Practices Related to Technology Transfer, Intellectual Property, and
    Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019) ...........................5, 6, 16

*Procedures for Requests To Exclude Particular Products From the August 2019
    Action Pursuant to Section 301: China's Acts, Policies, and Practices Related
    to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg.
    57,144 (Oct. 24, 2019) ...............................................................................14

*Request for Comments Concerning Proposed Modification of Action Pursuant to
    Section 301: China's Acts, Policies, and Practices Related to Technology
    Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608 (July 17,
    2018) ...........................................................................................................2, 3

*Request for Comments Concerning Proposed Modification of Action Pursuant to
    Section 301: China's Acts, Policies, and Practices Related to Technology
    Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564 (May 17,
    2019) ......................................................................................................4, 5, 10

## <u>INTRODUCTION</u>

This Court held that, in promulgating the List 3 and 4A tariff actions, USTR violated the Administrative Procedure Act by "fail[ing] to provide a response to the comments it solicited when providing the rationale for its final determinations."  Slip Op. 55 (Apr. 1, 2022), ECF No. 448.  In particular, the agency failed to "apprise the court how the USTR came to its decision to act and the manner in which it chose to act" in light of significant objections of U.S. businesses, workers, farmers, consumers, and government officials—including prescient warnings regarding threatened harms to the U.S. economy and the likely inefficacy of the challenged tariffs in curbing China's policies.  *Id.* at 53.  Although "USTR's failure to explain its rationale in the context of the comments it received leaves room for doubt as to the legality of its chosen courses of action," the Court opted not to vacate Lists 3 and 4A (as Plaintiffs had requested) "[f]or now."  *Id.* at 59. Instead, the Court gave the agency one final opportunity to flesh out reasons from the rulemaking record for why USTR rejected the 9,000+ comments it received.  The Court made explicit, however, that USTR's limited opportunity to elaborate on its conclusory explanation was not an invitation for it to remedy a failure to grapple with those comments *ab initio* or to devise new rationales for dismissing them.

USTR's response to that directive flunks the Court's test.  As confirmed by the 120 days USTR took (far longer than its original review) and the process it employed (a laborious *new* review of all comments and testimony), the agency did not elaborate on justifiable reasons already in the record.  Instead, the vast majority of the Remand Determination is immaterial (*e.g.*, expounding on why USTR *removed* certain products from the lists), unresponsive (*e.g.*, invoking the President's instruction as leaving USTR no alternative), or *post hoc* (which both the Supreme Court and this Court forbid).  As for the final few pages of the Remand Determination, the lone portion purporting to engage with the most significant comments challenging the wisdom of

1

USTR's List 3 and 4A tariff actions more broadly, USTR's response is facially (and fatally) deficient. The agency offers zero contemporaneous evidence, from the administrative record or otherwise, that it meaningfully grappled with those substantial comments *at the time* Lists 3 and 4A were developed. USTR did not weigh the costs and benefits to the U.S. economy, businesses, and consumers; evaluate whether the tariffs would be effective; or consider alternative measures. USTR's *post hoc*, litigation-driven efforts to paper over that gaping hole falls far short of basic administrative law standards.

To be sure, the agency remains free to take *new* agency action. But the time for shoring up the manifest notice-and-comment failures of the years-old tariff actions has long past. The Court should vacate the List 3 and 4A actions and order the refund of the duties paid forthwith.

## **BACKGROUND**

## I.    USTR'S RULEMAKINGS IMPOSE TARIFFS ON VIRTUALLY ALL CHINESE GOODS

Lists 1 and 2.  In 2018, USTR determined that certain acts, policies, and practices of the Government of China relating to technology transfer, intellectual property, and innovation were unreasonable or discriminatory and burden or restrict U.S. commerce. USTR thereby proposed, and ultimately adopted, a 25 percent tariff on $50 billion worth of annual imports from China. Slip Op. 6-7. The products subject to this initial imposition of tariffs are found in Lists 1 and 2. *Id.*

List 3.  China responded by raising tariffs on an equivalent amount of U.S. exports to China. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608-09 (July 17, 2018) ("List 3 Proposal"). That led USTR to propose a 10 percent tariff (later increased to 25 percent) on a further $200 billion worth of annual imports from China. *Id.*; *see Extension of Public Comment Period Concerning Proposed*

*Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760-61 (Aug. 7, 2018) ("List 3 Comment Extension").  USTR also requested comments from interested persons regarding "*any aspect* of the proposed supplemental action," including:

- "The specific tariff subheadings to be subject to increased duties";

- "The level of the increase, if any, in the rate of duty";

- "The appropriate aggregate level of trade to be covered by additional duties";

- Whether increased duties on certain products "would be practicable or effective to obtain the elimination of China's acts, policies, and practices"; and

- Whether increased duties on certain products "would cause disproportionate economic harm to U.S. interests."

List 3 Proposal, 83 Fed. Reg. at 33,609 (emphasis added).  Although USTR also "noted" the President's direction, it "did not treat that direction as dispositive in light of [its] solicitation of comments on a broad range of issues that could—and indeed, did—result in comments at odds with the President's direction."  Slip Op. 54-55.

In response, USTR received over 6,000 written comments, and approximately 350 witnesses appeared over the course of a six-day hearing from August 20-27, 2018.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974, 47,974 (Sept. 21, 2018) ("List 3 Notice").  Although many of the comments were filed by companies seeking removal of specific products from the list of targeted tariff subheadings, numerous importers and major trade and business associations filed comments generally opposing the tariff action in light of a variety of fundamental concerns:  (i) the likely ineffectiveness of the proposed tariffs in modifying China's behavior; (ii) the harm to U.S. consumers and businesses that would face higher prices and have

limited ability to switch supply chains; (iii) the threat that increased costs would hurt U.S. competitiveness globally; (iv) the likely retaliation from China if new tariffs were imposed; and (v) the fact that many products produced in China contain U.S. inputs or technology and are produced by U.S.-owned companies.  *See, e.g.*, PR-399 (Small Business and Entrepreneurship Council); PR-1439 (U.S. Chamber of Commerce (U.S. Chamber)); PR-5174 (American Farm Bureau Federation (AFBF)); PR-5237 (National Association of Manufacturers (NAM)); PR-5549 (Grocery Manufacturers Association and others); PR-5897 (National Retail Federal (NRF) joined by 150 other national and state trade associations); PR-5922 (Consumer Technology Association (CTA)); PR-5924 (Retail Industry Leaders Association (RILA)).

On September 17, 2018—just 11 days after the deadline to submit written comments and post-hearing rebuttal comments—USTR determined to impose tariffs on a list of tariff subheadings reflecting roughly $200 billion worth of Chinese goods at a rate of 10 percent.  PR-1 and PR-2 (Internal List 3 Decision Memorandum); *see* List 3 Comment Extension, 83 Fed. Reg. at 38,761. Excluding the annex of covered products, USTR's Federal Register notice announcing that determination was less than two pages.  Other than stating that USTR had "carefully reviewed the public comments and the testimony from the six-day public hearing," USTR did not specifically address *any* of the comments received.  List 3 Notice, 83 Fed. Reg. at 47,975.

List 4.  The United States and China subsequently engaged in negotiations regarding a number of trade issues, most of which were unrelated to the investigated intellectual property practices.  *See* PR-29.  When China retreated from certain negotiated commitments, USTR increased the List 3 duty rate to 25 percent (without additional modification procedures), and China again retaliated.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual*

*Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019) ("List 4 Proposal"). USTR proposed to impose duties of up to 25 percent on an additional $300 billion in annual imports from China (*i.e.*, List 4 products), which encompassed essentially all imports from China not already covered by the Section 301 tariffs. *Id.*

Once again, USTR invited interested persons to comment on "any aspect of the proposed action," including the products covered, duty rate, and aggregate level of trade to be covered by the duties. *Id.* at 22,565. USTR received nearly 3,000 written submissions, and more than 300 witnesses participated in a seven-day hearing held from June 17-25, 2019. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304, 43,304 (Aug. 20, 2019) ("List 4 Notice"). While many of the comments were filed by companies seeking the removal of specific products from proposed List 4, numerous associations filed comments opposing List 4 in whole, citing similar concerns to those raised in the comments on List 3 (such as the ineffectiveness of the tariffs and the harm to U.S. businesses, workers, farmers, and consumers caused by the tariffs and anticipated further Chinese retaliation). *See, e.g.*, PR-6644 (National Foreign Trade Council); PR-7517 (NAM); PR-7577 (National Association of State Departments of Agriculture (NASDA)); PR-7943 (AFBF); PR-8233 (RILA); PR-8533 (NRF); PR-8841 (U.S. Chamber).

USTR finalized the List 4 action on August 14, 2019, less than six weeks after the deadline for post-hearing submissions. PR-9 (Internal List 4 Decision Memorandum). USTR proceeded to impose a duty of 10 percent on tariff subheadings reflecting roughly $300 billion in Chinese goods. For subheadings where China's share of imports from the world was less than 75 percent (List 4A), the duty increase went into effect on September 1, 2019. List 4 Notice, 84 Fed. Reg. at 43,305. For subheadings where China's share of imports from the world was greater than 75

percent (List 4B), the duties were scheduled to go into effect on December 15, 2019, but USTR

suspended their imposition prior to that date.  *Id.*  Similar to USTR's List 3 final notice, USTR's

List 4 final notice (excluding the annex of covered subheadings) was less than two pages and did

not respond to any of the thousands of comments received.

## II.      THIS LITIGATION AND THE COURT'S REMAND ORDER

Thousands of companies filed lawsuits seeking vacatur of the List 3 and 4A actions and a

refund of the additional duties paid.  The Court's April 1, 2022 Opinion and Order agreed that

USTR failed to adequately respond to comments in violation of the APA.  Slip Op. 48-57.  The

Court explained that:

> The USTR's statements *** fail to apprise the court how the USTR came to its
> decision to act and the manner in which it chose to act, taking account of the
> opposition and support for the increased duties and the inclusion or exclusion of
> particular subheadings, the concerns raised about the impact of the duties on the
> U.S. economy, and the potential availability of alternative courses of action, within
> the context of the specific direction provided by the President.

*Id.* at 53.  The Court further held that "USTR's invocation of the President's direction does not

obviate the USTR's obligation to respond to significant issues raised in the comments."  *Id.* at 54.

The Court also rejected USTR's arguments that were based on decisions post-dating the final List

3 and 4A actions, and faulted USTR for failing to set forth its rationale for the composition of the

final lists of products covered by the duties.  *Id.* at 56-57.

Despite the deficiencies in USTR's rulemakings, the Court declined to vacate the List 3

and 4A actions, "[f]or now," and instead remanded for reconsideration or further explanation.  *Id.*

at 57, 59.  But the Court noted that Supreme Court precedent "cautions that the USTR may only

further explain the justifications it has given for the modifications.  It may not identify reasons that

were not previously given unless it wishes to 'deal with the problem afresh' by taking new agency

action." *Id.* at 61 (citation omitted) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1908 (2020)).

The Court further noted that USTR had asserted that its rationale for the List 3 and 4A actions could be discerned from certain internal USTR memoranda. *Id.* at 57 n.30. The Court observed that, in contravention of the APA, USTR did not incorporate the memoranda in the contested determinations or publish the memoranda for interested parties to examine. *Id.* (citing 5 U.S.C. § 553(c)). The Court stated that "[i]f, on remand, the USTR seeks to rely on the contents of the memoranda as evidence of the USTR's reasons for acting when and how it did such that a future rationale is not *post hoc*, the USTR must explain why that reliance is justified in light of" the Court's opinion in *Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1347 (Ct. Int'l Trade 2020), which held that nonpublic internal memoranda could not be considered part of the grounds invoked by the agency. Slip Op. 57 n.30.

## III. USTR'S ISSUANCE OF THE REMAND DETERMINATION

The Court initially gave USTR 90 days to issue its Remand Determination—a significantly longer period than the 11 days USTR took after the end of the comment period to finalize List 3 or the six weeks after the end of the comment period to finalize List 4. USTR requested an extension, citing the time needed to "revisit[]" more than 9,000 comments, analyze thousands of pages of hearing testimony, and provide the further explanation requested by the Court. Mot. to Extend Time at 2 (June 17, 2022), ECF No. 459. The Court granted USTR an additional 30 days, but reiterated that "USTR may only further explain the justifications it has given for the modifications" and "may not identify reasons that were not previously given unless it wishes to 'deal with the problem afresh' by taking new agency action." Order at 2 (June 22, 2022), ECF No. 461 (quoting *Regents*, 140 S. Ct. at 1908). Whereas USTR's original Federal Register notices

imposing the List 3 and 4 tariff actions spanned just four pages, USTR's Remand Determination consists of 88 pages of purported "further explanation."  Remand Determination 89.

## LEGAL FRAMEWORK

The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a).  To survive review under that standard, the agency must have "examined 'the relevant data' and articulated 'a satisfactory explanation' for [its] decision, 'including a rational connection between the facts found and the choice made.'"  *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see In re Sang Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002) (agency "must present a full and reasoned explanation of its decision," by "set[ting] forth its findings and the grounds thereof, as supported by the agency record").  "Conclusory statements that do not explain how a determination was reached are therefore insufficient."  Slip Op. 48 (citing *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin*, 626 F.3d 84, 94 (D.C. Cir. 2010)).  As most relevant here, "[a]n agency must respond in a reasoned manner to those comments that raise significant problems."  *Id.* at 49 (internal quotation marks and alteration omitted); *see Disabled Am. Veterans v. Gober*, 234 F.3d 682, 692 (Fed. Cir. 2000) (agency must respond to comments that "raise significant issues with respect to a proposed rule"), *overruled on other grounds by Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 981 F.3d 1360 (Fed. Cir. 2020).

Moreover, it is a "foundational principle of administrative law" that "[a]n agency must defend its actions based on the reasons it gave when it acted," not "belated justifications" and "impermissible *post hoc* rationalizations."  *Regents*, 140 S. Ct. at 1907-09; *see Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 549 (1978) ("[W]hen there is a contemporaneous

explanation of the agency decision, the validity of that action must stand or fall on the propriety

of that finding[.]" (internal quotation marks omitted)).  The contemporaneous justifications also

must have been made public, to ensure the agency's reasons "can be scrutinized by courts and the

interested public."  *Dep't of Com.,* 139 S. Ct. at 2575-76; *see, e.g.*, *Regents*, 140 S. Ct. at 1909

(purpose of "[r]equiring a new decision before considering new reasons" is to "ensur[e] that parties

and the public can respond fully and in a timely manner to an agency's exercise of authority");

*Invenergy Renewables*, 476 F. Supp. 3d at 1347 ("[A]dequate explanation of the agency's decision

has to be made public somewhere or in some manner allowing interested parties to review and

scrutinize it.").

## **ARGUMENT**

### I.    USTR FAILED TO HEED THIS COURT'S DIRECTIVE TO EXPLAIN FURTHER ANY JUSTIFICATIONS IT HAD GIVEN IN RESPONSE TO THE SIGNIFICANT COMMENTS RECEIVED

In giving USTR a limited opportunity to provide the absent explanation for its original

actions, this Court imparted a clear command: "USTR may only further explain the justifications

it has [already] given for the modifications"—*i.e.*, "elaborate" on its reasons—"not provide new

ones."  Slip Op. 61 (internal quotation marks omitted).  That holding follows from the Supreme

Court's "clear" precedent, which makes *post hoc* reasoning "impermissib[le]" and "constrains the

court's review of such reasoning provided pursuant to a remand."  *Id.* (citing *Regents,* 140 S. Ct.

at 1908).

Contrary to this command, USTR chose to undertake anew the review and analysis it

plainly failed to do the first time around.  USTR essentially admitted as much when seeking

additional time to submit the Remand Determination.  *See* Mot. to Extend Time at 2 (June 17,

2022), ECF No. 459 (seeking 60 additional days (1) to "[c]onduct[] an analysis to ascertain, where

possible, the nature of the more than 9,000 public comments received with respect to List 3 and

List 4A, including identifying comments pertaining to each of the issues that the Court's Opinion identified as requiring a response to public comment," as well as (2) to "[r]eview[] the thousands of pages of hearing testimony from 13 days of public hearings conducted during the List 3 and List 4 notice-and-comment periods").

But the opportunity to "elaborate" on a previously given rationale should not have necessitated a laborious *new* review of all 9,000 comments and 13 days of testimony.  Instead, to comply with the APA and this Court's order, those rationales *should have already existed* in the administrative record.  *See Dep't of Com.*, 139 S. Ct. at 2573 ("[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."); *Vermont Yankee*, 435 U.S. at 549 ("We have made it abundantly clear before that when there is a contemporaneous explanation of the agency decision, the validity of that action must stand or fall on the propriety of that finding[.] *** If that finding is not sustainable on the administrative record made, then the [agency's] decision must be vacated[.]" (internal quotation marks omitted)); *see also Regents*, 140 S. Ct. at 1909 (noting that the rule "promotes agency accountability" and "instills confidence that the reasons given are not simply convenient litigating positions" (internal quotation marks and alteration omitted)).  Indeed, the fact that USTR needed 120 days to issue its Remand Determination—significantly longer than the combined time it took to perform its original review—alone suggests that USTR has not merely "elaborated" on its prior responses to comments.[1]

_____

[1] For List 3, the agency said that it "carefully reviewed" approximately 6,000 comments in just 11 days.  *See* PR-1 at 3 and PR-2 (Internal List 3 Decision Memorandum) (List 3 comments due September 6, 2018, and list finalized on September 17, 2018).  For List 4, the agency "[took] account" of approximately 3,000 comments less than six weeks from post-hearing submissions.  *See* List 4 Proposal, 84 Fed. Reg. at 22,564 and PR-9 at 1 (Internal List 4 Decision Memorandum) (List 4 post-hearing submissions due July 2, 2019, and list finalized on August 14, 2019).

As explained below, the Remand Determination does not cure, but rather underscores, the original deficiencies in USTR's rulemaking.  The vast majority of USTR's new submission relates to issues that are either immaterial or non-responsive to this Court's remand order, or facially *post hoc*.  And the few conclusory pages USTR spends responding to the most significant comments—*i.e.*, those challenging on fundamental grounds the entire endeavor of the List 3 and 4 actions—fail to reflect any contemporaneous engagement with those comments and cannot satisfy USTR's basic procedural obligations under the APA.

## II.   THE REMAND DETERMINATION IS LARGELY NON-RESPONSIVE, IMMATERIAL, OR *POST HOC*

Rather than address the primary concern underlying the procedural APA violation (*i.e.*, comments raising major policy concerns against imposition of the challenged tariffs categorically), the lion's share of the Remand Determination seeks to answer a tangential question:  why USTR elected to remove particular subheadings from proposed Lists 3 and 4A.  A scan of the table of contents reveals that the vast majority of the substantive portion of the Remand Determination—through page 74—is dedicated to that question.  But Plaintiffs brought this case to contest the legality of and process for the imposition of the List 3 and 4A duties, not for further explanation as to why certain specific product categories were removed from the lists.  After spending dozens of pages addressing why it chose to *remove* various products, USTR spends only a handful of pages addressing why it chose to *keep* so many products on List 3 (Remand Determination 53-56) or List 4 (Remand Determination 72-74), as well as why it proceeded with imposing duties on arbitrary aggregate levels of trade and duty rates (Remand Determination 74-81), over the vociferous policy objections lodged during the comment processes.  Even then, most of the explanations are *post hoc* or otherwise legally inadequate, not "elaborat[ion]" on contemporaneous explanations as this Court instructed.  Slip Op. 61.

11

*First*, USTR's primary argument is that it lacked much discretion to remove tariff subheadings, to lower the duties, or to reduce the aggregate level of trade because the President had directed USTR to take action with respect to a certain level of imports. *See, e.g.*, Remand Determination 77 ("The President's direction was a key element in the Trade Representative's determination of the level of duty increase."); *id.* at 80 ("[T]he President's direction was central to the Trade Representative's determination of the appropriate aggregate level of the trade action."); *see also id.* at 27, 54, 73-74. Indeed, the *only* rationale offered for USTR's lack of responsiveness to the List 4 comments addressing specific products is that USTR had "limited flexibility" to remove additional tariff subheadings "[c]onsidering that the value of the proposed modification was approximately $300 billion, and the specific direction of the President to place tariffs on goods of China with a value of approximately $300 billion." *Id.* at 73.[2]

That excuse is not good enough—as a matter of law. As this Court has already held, "while the President's direction is statutorily significant, the USTR's invocation of the President's direction *does not obviate the USTR's obligation to respond to significant issues raised in the comments*." Slip Op. 54 (emphasis added). Despite the President's directives, USTR solicited comments on "a broad range of issues," including the duty rate, level of trade, and even the "wisdom of the enterprise." *Id.* at 53-55. Consequently, "USTR had a duty to respond to the comments" so that interested parties, the public at large, and this Court could understand why USTR reacted to the comments in the manner it did. *Id.* at 55. The President's direction "does not

---

[2] List 4 included 180 tariff subheadings that had been proposed for List 3 but were specifically removed before List 3's promulgation. Remand Determination at 74. Despite identifying the same factors as relevant to inclusion on both lists, USTR fails to provide "good reasons"—instead relying on the President's directive alone—for why it was appropriate to place duties on certain products in List 4 when USTR ostensibly had found that the harm of doing so would outweigh the likely benefits for List 3. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

obviate" the requirements rooted in the APA that USTR provide reasoned explanations and engage in consistent decision-making.

*Second*, USTR's other rationales are largely outside the administrative record or otherwise *post hoc*. For example, USTR explains that the Department of Commerce "recommended USTR remove eight tariff subheadings for certain critical inputs for manufactured goods." Remand Determination 51. This is the first time that detail has been revealed publicly. Commerce's recommendation and underlying reasoning are nowhere in the record for interested parties to review and scrutinize, and thus cannot be considered part of the agency's contemporaneous explanation. *Invenergy Renewables*, 476 F. Supp. 3d at 1347. Although USTR randomly selects a couple of comments and testimony that requested removal of certain inputs, it does not point to anything in the record reflecting USTR's own analysis of those comments. Remand Determination 51-53. Similarly, in USTR's discussions regarding why it exempted antiques and works of art from List 3 and certain chemicals and inputs for the textile industry in List 4, USTR cites interested parties' comments and hearing testimony, without identifying any prior explanation from USTR upon which it purports to be elaborating. *Id.* at 33-34, 48-51.

The same is true with respect to USTR's decision to maintain Lists 3 and 4A at the aggregate level of trade and level of duties proposed. USTR claims that it "sought to make a judgment that would strike the appropriate balance between exerting an appropriate amount of pressure on China to eliminate its harmful practices, while encouraging China to meaningfully engage in negotiations, against comments suggesting additional duties would result in severe economic harm to U.S. consumers and industries." *Id.* at 76-77. But USTR cites no contemporaneous explanation in the administrative record as to how USTR achieved that balance and why a lower aggregate amount or different duty rate would not reflect a better balancing of

13

those interests.  In addition, USTR notes that it delayed the imposition of 25 percent duties on List 3, but USTR again fails to cite any contemporaneous documents explaining the reasons for that initial delay or why a three-month delay was appropriate, particularly given that many commenters explained that changing suppliers takes months or even years.  *See, e.g.*, PR-5755 (Juvenile Products Manufacturing Association); PR-5897 (NRF and other organizations); PR-5922 (CTA); PR-8841 (U.S. Chamber).  Time and again, USTR fails to cite anything from the administrative record, and thus demonstrates no contemporaneous engagement with the many comments stating that the tariffs were too large, too fast, and too harmful to U.S. interests.  USTR does not identify the facts found and connect them to the choices made, rendering its explanations inadequate.  *State Farm*, 463 U.S. at 43; *Lee*, 277 F.3d at 1342.

*Finally*, USTR's responses are otherwise inadequate.  For example, USTR claims it created the List 4 exclusion process to address comments that certain products were not available outside of China or that the application of duties would cause severe economic harm.  Remand Determination 74.  But USTR does not explain in the Remand Determination, and certainly did not explain at the time it issued List 4, how *temporary* product exclusions that *might* be issued at some indefinite point in the future—pursuant to procedures that were not even announced until two months after List 4 was finalized[3]—protected companies in those circumstances.  Nor can the exclusion process for List 4 act as a sufficient response to the comments submitted with respect to List 3; as this Court already concluded (Slip Op. 56), USTR's final decision adopting List 3 lacked any reference to an exclusion process and thus could not satisfy USTR's APA obligations.  These reasons thus fail to substitute for a reasoned and legally valid justification for how USTR

---

[3] *See Procedures for Requests To Exclude Particular Products From the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 57,144 (Oct. 24, 2019).

determined the product composition of Lists 3 and 4A and the final duty levels to be applied to those products.

### III.    USTR FAILED TO RESPOND ADEQUATELY TO MAJOR POLICY CONCERNS

It is only after 80 pages of windup that USTR finally addresses commenters' major policy concerns with respect to the List 3 and 4A actions—namely, the damage to the U.S. economy, the tariffs' likely efficacy, and potential alternatives—and then crams its conclusory response into the last eight pages of its Remand Determination (at 81-89).  A closer look reveals why USTR tried to bury the lede.

As a preliminary matter, USTR cannot avoid its obligation to respond to significant comments attacking the List 3 and 4A tariff actions as a whole based on its assertion that "less than three percent of the overall comments" raised such concerns.  Remand Determination 23.  No one disputes that those comments were raised by associations representing vast swaths of the U.S. economy and hundreds of thousands of U.S. businesses, including the U.S. Chamber, NAM, NRF, and RILA.  Moreover, it is not the raw number of comments, but rather the content of those comments—which "raise points relevant to the agency's decision" and "which, if adopted, would require a change in an agency's proposed rule"—that makes them significant.  Slip Op. 49 (emphasis omitted) (quoting *City of Portland, Oregon v. EPA*, 507 F.3d 706, 715 (D.C. Cir. 2007)). "Having requested comments" on these topics, "the USTR had a duty to respond" meaningfully to "significant issues raised in the comments," Slip Op. 54-55, and to do so *contemporaneously* with the List 3 and 4A actions, *see Regents*, 140 S. Ct. at 1909.  Instead, USTR did not address them *at all*.

As indicated by USTR's continuing truncated treatment in its Remand Determination, USTR *still* has not engaged meaningfully with the strenuous objections of those most directly

impacted by the List 3 and 4A tariffs.   That is no surprise:   the record demonstrates zero contemporaneous consideration of those significant comments.

### A.      Damage to the Economy

USTR acknowledges that it received substantial comments from a number of large and diverse industry associations regarding the potential harm to the U.S. economy.   But USTR's "response" is entirely conclusory and, in any event, *post hoc*.

Rather than affirmatively stating that it reviewed and responded contemporaneously to comments regarding potential damage to the U.S. economy, all USTR can muster is that its "view" on such harm was "reflected in USTR's notices and press statements" (most of which pre-dated USTR's request for comments on Lists 3 and 4).   Remand Determination 82.   For instance, for List 3, USTR fails to cite a single document explaining how it engaged with the significant comments it solicited; instead, it cites only its notice of *List 1*, a press release associated with *List 2*, and a request for comments regarding *List 3*.   *See id.* at 82-83.   USTR never explains how statements it made *before* receiving comments on List 3 could constitute adequate "justifications" in response to those comments.   Slip Op. 61 (internal quotation marks omitted).

As for List 4, all USTR can point to is its statement that it delayed tariffs on certain subheadings where China accounted for more than 75 percent of imports from the world to provide a greater adjustment period, which USTR characterizes as having "decided to delay additional duties on certain consumer products."   Remand Determination 83-84.   But USTR plainly did not delay the List 4B duties *because* they were consumer products, but did so based solely on China's share of imports.   List 4 Notice, 84 Fed. Reg. at 43,305.   And that still does not explain why it proceeded with List 4A despite the identified consumer harms those additional tariffs posed. Beyond that, USTR treats harm to U.S. consumers as if that were the only harm that commenters identified.   But it was not:   commenters also raised issues regarding harm to U.S. businesses,

farmers, global competitiveness, and supply chains, among others. *See, e.g.*, PR-5237 (NAM); PR-8841 (U.S. Chamber). Merely phasing in a duty increase to alleviate harm to a subset of consumers is not responsive to those other important comments, and none of those other harms are discussed by USTR (then or now).

The more fundamental problem is that *no* meaningful response to the major comments— not even a *post hoc* one—can be discerned from the Remand Determination. USTR does not state that it found commenters' predicted harms unsupported, overstated, or unbelievable. Nor does USTR state, in light of those predicted harms, that it conducted any weighing (let alone a cost-benefit analysis) to determine that the benefits from the tariff action would outweigh those harms. For example, USTR still has not explained how (or even whether) it determined that the benefits of Lists 3 and 4A would outweigh (1) the negative impacts of increased costs on U.S. businesses that commenters identified, *see, e.g.*, PR-5237 (NAM), PR-5897 (NRF and other organizations), PR-5922 (CTA); (2) the likelihood of further harmful Chinese retaliation, *see, e.g.,* PR-5174 (AFBF), PR-7577 (NASDA); or (3) the fact that many Chinese products incorporate U.S. inputs or technology and are made by U.S.-owned companies, *see, e.g.*, PR-5237 (NAM), PR-8841 (U.S. Chamber). That failure violates the APA. *Compare*, *e.g.*, *Mo. Pub. Serv. Comm'n v. FERC*, 337 F.3d 1066, 1074 (D.C. Cir. 2003) (holding agency action arbitrary and capricious when agency failed to explain how it balanced competing factors), *with Sacramento Mun. Util. Dist. v. FERC*, 616 F.3d 520, 541-42 (D.C. Cir. 2010) (upholding agency action when agency "reflected on the competing interests at stake to explain why it struck the balance it did").

Given that USTR supposedly "carefully reviewed" the comments contemporaneously, List 3 Notice, 83 Fed. Reg. 47,975, USTR should be able to point to a portion of the administrative record, such as an internal decision memorandum, justifying its approach in light of the significant

comments received about predicted harms to the U.S. economy, U.S. businesses across sectors, and U.S. consumers. But it did not—because there is nothing to cite. The Remand Determination has not cured that fundamental notice-and-comment deficiency.

### B.    Efficacy of the Tariffs

USTR also acknowledges that many commenters, including major business organizations like the U.S. Chamber, explained why the proposed tariffs were unlikely to be effective. But again, USTR cites nothing from the record engaging with those comments.

USTR instead attempts to deflect by stating (without citation) that it "agreed with comments suggesting negotiations with China, but was not persuaded by comments which suggested that negotiations alone could be successful in obtaining the elimination of the harmful practices without accompanying economic pressure through additional tariffs." Remand Determination 86-87. But as many commenters explained, the choice was never between "negotiations alone," on the one hand, and placing tariffs on virtually all of Chinese trade, on the other. *See, e.g.*, PR-7577 (NASDA suggestions regarding building an international coalition to pressure China, bringing additional WTO cases, engaging directly with China, placing restrictions on Chinese investment, and having the Treasury Department sanction Chinese companies benefitting from stolen intellectual property); PR-5922 (CTA suggestions regarding increased promotion of existing trade tools and enforcement programs available to aggrieved companies, "[f]ocused and aggressive use" of laws such as Section 337 that are more targeted against the investigated Chinese practices, bilateral negotiation with China, use of the WTO, and entering into strategic trade agreements such as the Trans-Pacific Partnership). The false choice USTR offers does not obviate its obligation to consider and respond to significant comments going to the heart of the decision to impose the List 3 and 4A duties.

USTR also states that "China's conduct during the investigation indicated that previous actions were not sufficient to encourage China to change its acts, policies, and practices, and that more substantial trade actions were needed to encourage negotiations." Remand Determination 87. Basically, USTR's justification for rejecting arguments that the List 3 and 4 tariffs were not likely to be effective is that prior tariffs were not effective—precisely the point opponents of the tariffs made. *See, e.g.*, PR-5897 (NRF and other organizations); PR-5924 (RILA); PR-8841 (U.S. Chamber). USTR did not explain then, and does not explain now, why it viewed those comments as misguided, or why USTR reasonably expected additional tariffs to lead to fundamentally different results from their prior ineffective use. And USTR again fails to respond to the numerous arguments that many of the products on Lists 3 and 4 were not important to China—for example because they were not part of the Made in China 2025 initiative—and that placing tariffs on those products would not create leverage with China. *See, e.g.*, PR-606 (Juvenile Products Manufacturing Association); PR-5897 (NRF and other trade associations); PR-8841 (U.S. Chamber).

### C.    Alternatives to Tariffs

USTR also never engaged—and still does not engage—with comments proposing alternatives to the tariffs. Instead, USTR attempts to respond (for the first time) to a single proposal from HP, regarding whether Section 337 investigations would be a more effective path than a broad-based Section 301 action. But again, USTR fails to cite any contemporaneous documents, even an internal decision memorandum. Remand Determination 88-89. Instead, USTR asks this Court to accept at face value that comments like these were received, vetted, and rejected on their merits contemporaneously, and are not *post hoc* rationales concocted four years later. That is not how the APA's record-based review works.

In any event, Section 337 was just one of the potential alternatives that commenters offered; as noted, other alternatives included bilateral and multilateral negotiations, bringing additional WTO cases, investment restrictions, and sanctions. *See, e.g.*, PR-5922 (CTA) (suggesting promotion and use of existing trade tools and enforcement programs, bilateral negotiation with China, use of the WTO, and strategic trade agreements); PR-7517 (NAM) (suggesting continued use of WTO, existing U.S. enforcement mechanisms, and bilateral engagement with China); PR-7577 (NASDA) (suggesting all of these approaches). USTR engages with none of those alternatives (contemporaneously or in its Remand Determination).

Citing the President's directives, USTR claims that it "did not intend to invite comments on alternative measures to an action under Section 301 of the Trade Act." Remand Determination 88. But USTR invited comments on "any aspect" of its proposed actions, and cannot avoid its APA obligations by relying on presidential directives alone. Slip Op. 54-55; *see supra* 11-12. Once again, USTR does not cite anything from the record contemporaneous with its final List 3 and 4 Notices containing the reasoning USTR now proposes for dismissing those comments. In any event, Section 301 directs USTR to take "appropriate and feasible" action, 19 U.S.C. § 2411(b)(2), and comments regarding potential alternatives to tariff increases under Section 301 go directly to the question whether the largest tariff action in U.S. history was "appropriate and feasible." USTR's failure to give reasoned consideration to alternatives specifically raised by commenters, without any substantive explanation, renders its action arbitrary and capricious. *See, e.g.*, *Regents*, 140 S. Ct. at 1914-15.

## **CONCLUSION**

For the foregoing reasons, the Court should vacate the List 3 and 4A tariff actions and order Defendants to refund to Plaintiffs the duties paid thereunder.

Respectfully submitted,

_____
Matthew R. Nicely
Pratik A. Shah
James E. Tysse
Devin S. Sikes
Daniel M. Witkowski
Sarah B. W. Kirwin

Dated:  September 14, 2022

AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, D.C. 20006

*Counsel to Plaintiffs HMTX Industries LLC, Halstead New England Corporation, Metroflor Corporation, and Jasco Products Company LLC*

## CERTIFICATE OF COMPLIANCE

Undersigned hereby certifies that Plaintiffs' Comments on the United States Trade

Representative's Remand Determination complies with the 20-page limitation set forth in the

Court's August 15, 2022 Scheduling Order.


Dated:  September 14, 2022                      /s/ Matthew R. Nicely
                                                    Matthew R. Nicely
                                                    AKIN GUMP STRAUSS HAUER & FELD LLP