UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE; CLAIRE R. KELLY, JENNIFER CHOE-GROVES, JUDGES

_____

:
:
IN RE SECTION 301 CASES      :   Court No. 21-00052-3JP
:
_____:

## ORDER

Upon consideration of plaintiffs' and *amici curiae*'s comments regarding the Office of the United States Trade Representative's (USTR) Remand Determination (August 1, 2022), ECF No. 467, defendants' response thereto, and all other pertinent papers, it is hereby

ORDERED that USTR's Remand Determination complied with the Court's instructions in its Remand Order (April 1, 2022), ECF No. 448, and the requirements imposed under the Administrative Procedure Act to respond to significant public comments, and it is further

ORDERED that USTR's decision to impose the tariffs addressed in *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (U.S. Trade Rep. Sept. 21, 2018) (*Final List 3*), and *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 43,304 (U.S. Trade Rep. Aug. 20, 2019) (*Final List 4*) is sustained in all respects; and it is further

ORDERED that judgment will enter in favor of the United States.

_____
Chief Judge

_____
Judge

_____
Judge

Dated: _____
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE; CLAIRE R. KELLY, JENNIFER CHOE-GROVES, JUDGES

_____
|                                      : |
|                                      : |
IN RE SECTION 301 CASES               | : | Court No. 21-00052-3JP
|                                      : |
_____:

### DEFENDANTS' RESPONSE TO COMMENTS
### ON THE REMAND DETERMINATION

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

L. MISHA PREHEIM
Assistant Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

OF COUNSEL:

MEGAN GRIMBALL
Associate General Counsel
PHILIP BUTLER
Associate General Counsel
EDWARD MARCUS
Assistant General Counsel
Office of General Counsel
Office of the U.S. Trade Representative
600 17th Street N.W.
Washington, D.C. 20508

ELIZABETH A. SPECK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0369
Elizabeth.Speck@usdoj.gov

PAULA SMITH
Assistant Chief Counsel
EDWARD MAURER
Deputy Assistant Chief Counsel
VALERIE SORENSEN-CLARK
Attorney
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection
26 Federal Plaza, Room 258
New York, NY 10278

JAMIE L. SHOOKMAN
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, NY 10278
Tel: (212) 264-2107
Jamie.Shookman@usdoj.gov

SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7568
Sosun.Bae@usdoj.gov

November 4, 2022                    *Attorneys for Defendants*

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................1

SUMMARY OF THE ARGUMENT ...............................................................................2

ARGUMENT ....................................................................................................................3

I.      Standard Of Review ..............................................................................................3

II.     USTR Addressed All Significant Comments In Accordance With The APA And
        Explained Its Decisions Within The Context Of The President's Direction ......3

        A.      Response To Significant Comments ..........................................................4

                1.      The Inclusion Or Exclusion Of Specific Tariff Subheadings...........4

                2.      The Level Of Duty ...........................................................................4

                3.      The Aggregate Amount Of Trade ....................................................5

                4.      Harm To Consumers And The United States Economy...................5

                5.      The Legality And Efficacy Of The Tariffs.......................................6

                6.      Alternatives To Additional Section 301 Tariffs ..............................6

        B.      Role Of Presidential Direction..................................................................7

III.    Plaintiffs' And Amici's Criticisms Of The Remand Lack Merit.......................10

        A.      USTR Properly Implemented This Court's Remand Order, And Plaintiffs'
                Criticisms Reflect Their Misunderstanding Of Judicial Remands .......10

        B.      USTR Addressed The Categories Of Comments Identified By The Court...........15

        C.      USTR's Response To Public Comment Complied With The Remand
                Order's Instruction To Explain How USTR Considered The President's
                Direction ...................................................................................................17

        D.      USTR Considered Harm To Consumers And The United States Economy..........20

        E.      Plaintiffs' Disagreement Is Not A Valid Basis For Setting Aside The
                Remand ......................................................................................................22

        F.      Plaintiffs Fail To Understand That USTR Was Evaluating Whether To

Modify The Existing 301 Action .............................................................................23

CONCLUSION.............................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Ass'n of Priv. Sector Colleges & Univs. v. Duncan*,
    681 F.3d 427 (D.C. Cir. 2012) ................................................................. 17

*Bloomberg L.P. v. SEC*,
    45 F.4th 462 (D.C. Cir. 2022) ................................................................. 12

*Cayuga Nation v. Zinke*,
    302 F. Supp. 3d 362 (D.D.C. 2018) ......................................................... 22

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) .................................................................................. 3

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020) .................................................... 10, 11, 12, 13, 14

*Dorbest Ltd. v. United States*,
    547 F. Supp. 2d 1321 (Ct. Int'l Trade 2008) ............................................ 3

*Env't Health Tr. v. FCC*,
    9 F.4th 893 (D.C. Cir. 2021) ................................................................... 12

*FBME Bank Ltd. v. Mnuchin*,
    249 F. Supp. 3d 215 (D.D.C. 2017) ................................................... 16, 17

*Fisher v. Pension Benefit Guar. Corp.*,
    994 F.3d 664 (D.C. Cir. 2021) ................................................................. 11

*Florida Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ................................................................................ 10

*In re Section 301 Cases*,
    570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022) ................................... passim

*Invenergy Renewables LLC v. United States*,
    476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020) .......................................... 14

*Medtronic, Inc. v. Daig Corp.*,
    789 F.2d 903 (Fed. Cir. 1986) ........................................................... 13, 14

*Miami Free Zone Corp. v. Foreign-Trade Zones Bd.*,
    136 F.3d 1310 (Fed. Cir. 1998) ................................................................ 3

*Nat'l Mining Ass'n v. MSHA*,
   512 F.3d 696 (D.C. Cir. 2008) ................................................................... 17

*Nazareth Hosp v. Sec'y of HHS*,
   747 F.3d 172 (3d Cir. 2014) ...................................................................... 11

*NMB Sing Ltd. v. United States*,
   341 F. Supp. 2d 1327 (Ct. Int'l Trade 2004) ............................................... 3

*Olivares v. TSA*,
   819 F.3d 454 (D.C. Cir. 2016) .................................................................. 14

*Rhone Poulenc, S.A. v. United States*,
   592 F. Supp. 1318 (Ct. Int'l Trade 1984) ................................................. 14

*Simpson v. Young*,
   854 F.2d 1429 (D.C. Cir. 1988) .................................................................. 2

*Trust Chem. Co., Ltd. v. United States*,
   819 F. Supp. 2d 1373 (Ct. Int'l Trade 2012) ............................................ 16

*U.S. v. Chem. Found.*,
   272 U.S. 1 (1926) ..................................................................................... 14

*Union Steel v. United States*,
   823 F. Supp. 2d 1346 (Ct. Int'l Trade 2012) ............................................ 11

## Statutes

19 U.S.C. § 2411 ........................................................................... 1, 7, 22

19 U.S.C. § 2417 ........................................................................... 1, 7, 18

28 U.S.C. § 1581(i) ................................................................................. 3

28 U.S.C. § 2640(e) ................................................................................ 3

## Other Authorities

*Request for Comments Concerning Proposed Modification of Action Pursuant to
   Section 301: China's Acts, Policies, and Practices Related to Tech. Transfer,
   Intell. Prop., and Innovation*,
   83 Fed. Reg. 33,608 (U.S. Trade Rep. July 17, 2018) ................................... 6, 8, 24

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices*
   *Related to Tech. Transfer, Intell. Prop., and Innovation*,
   83 Fed. Reg. 47,974 (U.S. Trade Rep. Sept. 21, 2018) ...................................... 1, 4, 12, 14, 21

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices*
   *Related to Tech. Transfer, Intell. Prop., and Innovation*,
   84 Fed. Reg. 20,459 (U.S. Trade Rep. May 9, 2019) ....................................................... 6, 7, 8

*Request for Comments Concerning Proposed Modification of Action Pursuant to*
   *Section 301: China's Acts, Policies, and Practices Related to Tech. Transfer,*
   *Intell. Prop., and Innovation*,
   84 Fed. Reg. 22,564 (U.S. Trade Rep. May 17, 2019) ........................................................ 8, 24

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices*
   *Related to Tech. Transfer, Intell. Prop., and Innovation*,
   84 Fed. Reg. 43,304 (U.S. Trade Rep. Aug. 20, 2019) ...................................... 1, 6, 12, 21, 14

President of the United States, *Statement from the President Regarding Trade with* China
   (June 18, 2018), https://trumpwhitehouse.archives.gov/briefings-statements/statement-
   press-secretary-regarding-presidents-working-dinner-china .................................................... 7

President of the United States, *Statement from the President* (Sept. 17, 2018),
   https://trumpwhitehouse.archives.gov/briefings-statements/statement-from-the-
   president-4 .......................................................................................................................... 6, 8

Press Release, U.S. Trade Rep., *Statement by U.S. Trade Rep. Robert Lighthizer on*
   *Section 301 Action* (May 10, 2019), https://ustr.gov/about-us/policy-offices/press-
   office/press-releases/2019/may/statement-us-trade-representative ...................................... 7, 8

Defendants, the United States *et al.*, respectfully submit this response to the comments filed by plaintiffs (Pls. Cmts.), ECF No. 474, and by *amici curiae*, ECF No. 471-2 (VeriFone Cmts.); ECF No. 472 (RLC Cmts.), on the Office of the United States Trade Representative's (USTR) Remand Determination (Remand), ECF No. 467.

We respectfully request that the Court sustain the Remand and enter judgment for the United States because USTR has fully complied with the Court's remand order, *In re Section 301 Cases*, 570 F. Supp. 3d 1306, 1345 (Ct. Int'l Trade 2022) (*Remand Order*), and the Remand demonstrates that USTR did not act in an arbitrary or capricious manner when, at the specific direction of the President, it imposed additional tariffs on merchandise imported from the People's Republic of China (China) pursuant to sections 301-307 of the Trade Act of 1974 (the Trade Act), 19 U.S.C. § 2411 *et seq*.

## **BACKGROUND**

At the direction of the President, USTR imposed two tranches or lists of duties on imports from China under section 301 of the Trade Act to address China's forced technology transfer acts, policies and practices that were determined to be actionable in the investigation. After China not only refused to cease its adverse practices but also caused additional harm to U.S. commerce, USTR imposed two additional lists of duties on imported Chinese goods (Lists 3 and 4). 19 U.S.C. §§ 2417(a)(1)(B)-(C).[1] Plaintiffs filed suit alleging that USTR's decision to modify its prior action under section 301 to adopt Lists 3 and 4 violated the Trade Act and the Administrative Procedure Act (APA).

---

[1] *E.g.*, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Tech. Transfer, Intell. Prop., and Innovation*, 83 Fed. Reg. 47,974 (U.S. Trade Rep. Sept. 21, 2018) (*Notice Imposing List 3*); *Notice of Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Tech. Transfer, Intell. Prop., and Innovation*, 84 Fed. Reg. 43,304 (U.S. Trade Rep. Aug. 20, 2019) (*Notice Imposing Lists 4A-B*).

On April 1, 2022, the Court issued its *Remand Order* in which it rejected plaintiffs' primary claim that USTR had violated the Trade Act. *Remand Order*, 570 F. Supp. 3d at 1334. The Court held, however, that USTR had not satisfied the APA's requirement to respond to significant comments and it ordered a remand for USTR to reconsider its decision or to provide a further explanation and response. *Id.* at 1342-1345 & n.30. USTR subsequently filed a 90-page Remand, in which it provided further explanation and carefully grounded that explanation in contemporaneous, publicly available documents, such as *Federal Register* notices, press releases, Presidential statements and hearing transcripts.

## SUMMARY OF THE ARGUMENT

The Remand responds to all significant comments and more than satisfies USTR's obligations under the APA, which requires only that USTR "state the main reasons for its decision and indicate it has considered the most important objections." *See*, *e.g., Simpson v. Young*, 854 F.2d 1429, 1435 (D.C. Cir. 1988). Plaintiffs' main argument is inconsistent with the procedural posture of this litigation. While plaintiffs contend that USTR's Remand erred by elaborating upon its prior explanation for its action in response to concerns raised in public comments, the Court remanded the matter for this very purpose. USTR's further explanation of its original rationale for imposing tariffs is based upon the reasoning reflected in contemporaneous documents; plaintiffs' arguments that USTR engaged in impermissible, *post hoc* reasoning are thus wrong.

Plaintiffs also criticize USTR for not confining its explanations only to those comments that plaintiffs deem relevant. The *Remand Order* contained no such direction, however, and USTR followed the Court's instructions to address specific categories of significant comments.

Finally, plaintiffs' criticisms of USTR for identifying Presidential direction as a significant factor in its decision to impose Lists 3 and 4 ignore that Congress specifically preserved a role for the President in the Trade Act.  The Court recognized the President's right to provide "broad policy direction," *Remand Order*, 570 F. Supp. 3d at 1325 n.10, and ordered USTR to explain the role that Presidential direction played in its analysis.  Accordingly, USTR's reliance on that direction and explanation of how it factored into USTR's decision-making is entirely consistent with its obligations under the Trade Act and this Court's *Remand Order*.  Thus, none of plaintiffs' objections carry their burden of establishing that Lists 3 and 4A violate the APA.

## ARGUMENT

### I.      Standard Of Review

Remand determinations are reviewed "for compliance with the court's remand order." *Dorbest Ltd. v. United States*, 547 F. Supp. 2d 1321, 1324 (Ct. Int'l Trade 2008) (citing *NMB Sing Ltd. v. United States*, 341 F. Supp. 2d 1327 (Ct. Int'l Trade 2004)).  Because this action was brought pursuant to 28 U.S.C. § 1581(i), the applicable standard of review is established by section 706 of the APA.  28 U.S.C. § 2640(e); *Miami Free Zone Corp. v. Foreign-Trade Zones Bd.*, 136 F.3d 1310, 1312-1313 (Fed. Cir. 1998).  Thus, the Court analyzes whether the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or if the action failed to meet statutory, procedural, or constitutional requirements."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971) (cleaned up).

### II.     USTR Addressed All Significant Comments In Accordance With The APA And Explained Its Decisions Within The Context Of The President's Direction

As explained below, the Remand complies with the instructions provided by the Court. The Remand addresses all significant comments in accordance with the *Remand Order* and the

APA, including the specific categories of comments identified by the Court.  *Remand Order*, 570
F. Supp. 3d at 1339-43.  The Remand also explains USTR's decision-making "within the context
of the specific direction provided by the President."  *Id.* at 1341.

A.     **Response To Significant Comments**

1.     **The Inclusion Or Exclusion Of Specific Tariff Subheadings**

In accordance with the Court's order to respond to comments on the "inclusion or
exclusion of particular subheadings," *Remand Order*, 570 F. Supp. 3d at 1341, on pages 27
through 57 of the Remand, USTR explains how it considered written comments and hearing
testimony in determining whether to exclude particular subheadings on List 3, as well as how the
agency responded to requests for additions.  On pages 58 through 74, USTR similarly explains
how it determined the composition of List 4.  In making these determinations, USTR balanced
numerous factors to determine if the benefit of additional duties outweighed the potential harm,
*i.e.*, whether particular inclusions or exclusions served the agency's rationale that the additional
tariffs were an "appropriate" measure.  *See*, *e.g.*, Remand at 31, 33 (removing subheadings for
Chinese processing of U.S. caught seafood "[i]n light of how ineffective the additional duties
would likely be, the potential effects on the U.S. fishing industry, and potential benefits to
competing Chinese and Russian fishing industries") (citations omitted).

2.     **The Level Of Duty**

On pages 74 through 78 of the Remand, USTR addresses public comments concerning
the level of duty imposed by Lists 3 and 4.  USTR explains how it sought to balance the
President's specific direction and the commenters' concerns about potential harm by initially
imposing List 3 tariffs at the 10 percent level and later increasing the tariffs to 25 percent.
Remand at 77 (citing *Notice Imposing List 3*, 83 Fed. Reg. at 47,975).  Delaying the imposition

of tariffs at the 25 percent level, USTR explains, "served as a negotiating tool in discussions with China." *Id.* at 77-78 (citations omitted).  Similarly, for List 4, USTR balanced concerns that a 25 percent tariff would "lead to severe economic harm" by splitting the list into parts 4A and 4B, initially imposing List 4A at the 10 percent level, delaying the imposition of additional duties on consumer products where U.S. imports were more dependent on imports from China (List 4B), ultimately suspending those tariffs indefinitely and establishing a robust exclusion process. *Id.* at 78.

### 3.  The Aggregate Amount Of Trade

As for the aggregate level of trade to be covered by the proposed modifications, USTR notes that most commenters objected to the Lists 3 and 4 modifications altogether, and that it had rejected those comments after considering the statutory factors and the President's specific direction. *Id.* at 78-81.  USTR also notes that no commenter disputed that the Lists 1 and 2 actions had not been effective or that "China continued to impose increasing levels of harm on the U.S. economy." *Id.* at 79.

### 4.  Harm To Consumers And The United States Economy

In response to comments about consumer harm and damage to the U.S economy, USTR explains that "mitigating harm to U.S. consumers was an important consideration in developing and finalizing lists of products that would be subject to additional duties," as it had been since the beginning of USTR's investigation.  Remand at 82.  Citing relevant *Federal Register* notices, and consistent with its original justification that it had crafted an "appropriate" tariff action, USTR explains that to achieve this goal, Lists 1 and 2 included goods with the lowest impact on consumers. *Id.* (citations omitted).  Although List 3 included more consumer goods, USTR "took account of likely impacts on U.S. consumers" by removing subheadings "identified by

analysts as likely to cause disruptions to the U.S. economy." *Id.* at 83 (citing *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Tech. Transfer, Intell. Prop., and Innovation*, 83 Fed. Reg. 33,608, 33,609 (U.S. Trade Rep. July 17, 2018) (*Request for Comments for List 3*)).  While List 4 covered most remaining goods imported from China, USTR still sought to mitigate harm by initially imposing duties on List 4A at the 10 percent level, delaying the imposition of List 4B, and setting up an exclusion process.  Remand at 78 (citing *Notice Imposing Lists 4A-B*, 84 Fed. Reg. at 43,304).

### 5.   The Legality And Efficacy Of The Tariffs

USTR also responded to various comments challenging the legality of tariffs under sections 301 and 307 of the Trade Act.  Remand at 84-86.  In doing so, USTR provides a fuller explanation of how it evaluated public comments on the efficacy of additional tariffs based upon its experience negotiating with China, and how it balanced those comments with the President's specific direction.  Remand at 86-88.

### 6.   Alternatives To Additional Section 301 Tariffs

In the *Remand Order*, the Court noted that USTR had requested comment on "any aspect" of the proposed actions "including several points that arguably go to whether to impose additional duties at all."  *Remand Order*, 570 F. Supp. 3d at 1341 n.27.  USTR addresses this portion of the *Remand Order* by responding to comments on the efficacy and legality of additional tariffs, and by explaining that after the close of public comment, the President had directed it to take a specific final action.  Remand at 13-14 (citing President of the United States, *Statement from the President* (Sept. 17, 2018), https://trumpwhitehouse.archives.gov/briefings-statements/statement-from-the-president-4); Remand at 15 (citing *Notice of Modification of*

*Section 301 Action: China's Acts, Policies, and Practices Related to Tech. Transfer, Intell.*

*Prop., and Innovation*, 84 Fed. Reg. 20,459 (U.S. Trade Rep. May 9, 2019) (*Notice Increasing*

*List 3*)).  Once ordered to take final action, USTR was "subject to the specific direction . . . of the

President," 19 U.S.C. § 2417(a)(1), and it could not take any action without considering that

direction.  *See* 19 U.S.C. § 2411(b)(2).

In addition, pages 88-89 of the Remand respond to the final category of comments by

explaining that USTR "[c]onsider[ed] the President's March 22, 2018 directive to the Trade

Representative to, *inter alia*, 'take all appropriate action *under section 301 of the Trade Act* … to

address the acts, policies, and practices of China…' and the President's directives to take

subsequent action under section 301, in requesting broad-based comments."  Remand at 89

(citations omitted).  USTR "did not intend to invite comments on alternative measures to an

action under Section 301 of Trade Act."  *Id.*  Finally, USTR explained that it "continued to

consider Section 301 of the Trade Act to be the appropriate measure" to respond to China's

practices.  *Id.* at 89.

### B.        Role Of Presidential Direction

The Remand also addresses the Court's instruction to explain "whether and how" USTR

modified Lists 3 and 4 at the direction of the President.  *Remand Order*, 570 F. Supp. 3d at 1339.

As explained in the Remand, the President provided two directives for each of the challenged

trade actions.  At the time it requested public comment, the President had directed USTR to

identify goods for additional tariffs.  *See* Remand at 9 (citing President of the United States,

*Statement from the President Regarding Trade with* China (June 18, 2018),

https://trumpwhitehouse.archives.gov/briefings-statements/statement-press-secretary-regarding-

presidents-working-dinner-china); *see also* Remand at 16 (citing Press Release, U.S. Trade Rep.,

*Statement by U.S. Trade Rep. Robert Lighthizer on Section 301 Action* (May 10, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/may/statement-us-trade-representative) ("order[ing] USTR to begin the process of raising tariffs on essentially all remaining imports from China, which are valued at approximately $300 billion.").  After the close of public comment, the President directed USTR to take final action.  *See* Remand at 13 (citing President of the United States, *Statement from the President* (Sept. 17, 2018), https://trumpwhitehouse.archives.gov/briefings-statements/statement-from-the-president-4); *see also* Remand at 15 (citing *Notice Increasing List 3,* 84 Fed. Reg. at 20,459).

Turning to how USTR applied the President's directives in modifying the 301 action – that is, how USTR determined which subheadings from the Harmonized Tariff Schedule to select for List 3 – USTR explained that it considered both public comment and inter-agency recommendations to determine which duties would "not be practicable or effective to eliminate China's acts, policies, and practices," and which would cause "disproportionate economic harm." Remand at 55, 29-54.[2]  To reach the aggregate level of trade directed by the President, however, "only a limited number of subheadings could be removed," and USTR required a "clear showing" of the factors identified in USTR's request for comments.  Remand at 27-28.  For example, in response to comments that child safety furniture (high-chairs, car seats, playpens, *etc.*) had limited availability outside of China, and that additional duties could result in families using products that put children at greater risk of serious injury or death, USTR removed certain subheadings from the final list.  Remand at 43-44.  Conversely, if the only harm identified was that duties would result in higher prices to consumers, especially if goods under the particular

---

[2]   *See also Request for Comments for List 3*, 83 Fed. Reg. at 33,609 (emphasis added); *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Tech. Transfer, Intell. Prop., and Innovation*, 84 Fed. Reg. 22,564, 22,565 (U.S. Trade Rep. May 17, 2019) (*Request for Comments for List 4*).

subheading could be sourced outside of China, USTR found no "disproportionate economic harm" and kept the disputed subheadings on the final list. *Id.* Through over 30 pages of examples, the Remand shows "the relationship between significant issues raised in the comments and the President's direction," *Remand Order*, 570 F. Supp. 3d at 1339, with respect to the final List 3. Remand at 27-58.

USTR explained that it removed fewer subheadings from the proposed List 4, both because of the President's direction and the agency's own "determination that this was the appropriate level for the List 4 modification." Remand at 73. Given "the need to cover essentially all products not covered by previous actions," USTR "included on (*Proposed List 4*) 194 of the 297 tariff lines removed from *Final List 3*." *Id.* at 73-74. USTR nevertheless removed goods that it determined were "vital to the defense and national security of the United States and were only available in sufficient quantities from China," in addition to splitting List 4 into Lists 4A and 4B and delaying, and ultimately indefinitely suspending, List 4B. *Id.* at 58-59 (citations omitted). USTR also explained that "[u]nlike List 3, where [USTR] had greater flexibility in removing products from the final list and did not establish an exclusion process . . . for *Final List 4*, the exclusion process was established for products subject to additional duties at the ten percent level." *Id.* at 78.[3]

Further, in accordance with the *Remand Order*, USTR explained how Presidential directives guided the aggregate amount of trade and duty rate, along with other considerations, including USTR's own judgment. Remand at 27-28, 73-78.

---

[3] An exclusion process was also established for List 3, but not until after the final list was issued and additional duties were raised from 10 percent to 25 percent.

**III.    Plaintiffs' And Amici's Criticisms Of The Remand Lack Merit**

    **A.    USTR Properly Implemented This Court's Remand Order, And Plaintiffs' Criticisms Reflect Their Misunderstanding Of Judicial Remands**

In response to plaintiffs' motion for judgment on the agency record, the Court concluded that USTR's imposition of the Lists 3 and 4 tariffs was a permissible exercise of its discretion, but that USTR had not adequately responded to comments offered by the public.  Thus, the Court remanded this matter for reconsideration *or* further explanation.  *Remand Order*, 570 F. Supp. 3d at 1334, 1342-45.  Plaintiffs, however, criticize USTR for providing exactly what the Court requested, contending that USTR could not re-examine the record and could instead only parrot existing statements in the administrative record.  *Id.* at 1343; *see also*, *e.g.*, Pls. Cmts. at 10 (stating that "those rationales *should have already existed* in the administrative record"); *id.* at 13 (criticizing USTR for citing "no contemporaneous explanation in the administrative record").

Plaintiffs' crabbed view of judicial remands for further agency explanation finds no support in or after the Supreme Court's decision in *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020), which – as this Court recognized, *Remand Order*, 570 F. Supp. 3d at 1345 – expressly acknowledged that an agency may on remand further explain a prior justification.  USTR faithfully followed this Court's instructions, providing the additional explanation requested by the Court of the agency's contemporaneous reasons for determining that Lists 3 and 4 were "appropriate" measures in light of the significant comments its received and the President's direction to take action.

As the Supreme Court held in *Florida Power & Light Company v. Lorion*, 470 U.S. 729, 744 (1985), and reiterated in *Regents*, a court may remand for a fuller explanation of the reason or reasons for any agency's action if it concludes the agency's initial explanation is inadequate under the APA.  "When an agency's initial explanation indicates the determinative reason for the

final action taken, the agency may elaborate later on that reason (or reasons) but may not provide

new ones." *Regents*, 140 S. Ct. at 1908 (cleaned up).  Thus, on remand, the agency may:

 (1) "choose[] to offer 'a fuller explanation of the agency's reasoning *at the time of the agency*

*action*'"; or (2) "choose[] to 'deal with the problem afresh' by taking *new* agency action,'" in

which case the agency is "not limited to its prior reasons but must comply with the procedural

requirements for new agency action."  *Fisher v. Pension Benefit Guar. Corp.*, 994 F.3d 664, 669

(D.C. Cir. 2021) (quoting *Regents*, 140 S. Ct. at 1907-08).

 Where agencies provide the requested elaboration of their original reasoning, courts

routinely sustain agency determinations.  *See, e.g.*, *Nazareth Hosp v. Sec'y of HHS*, 747 F.3d

172, 185 (3d Cir. 2014) (sustaining agency's determination following remand in which the

agency was ordered to provide further explanation of issues raised in public comments); *see also*

*Union Steel v. United States*, 823 F. Supp. 2d 1346, 1348 (Ct. Int'l Trade 2012) ("Commerce has

provided the explanation in the *Remand Results* and the court finds it sufficient to uphold the

determination here.").

 Plaintiffs assume a very different administrative law regime, under which any agency

response to a previously unaddressed comment on remand would constitute an impermissible

*post hoc* rationale.  *See*, *e.g.*, Pls. Cmts. 10 (conflating USTR's responses to unaddressed

comments with "rationales" for the agency's action that must already "*exist*[] in the

administrative record").  Under this view, an agency that fails to respond to even a single

significant comment would have no choice on remand except to take new action.  But that is not

the law – an agency's explanation as to how comments intersected with its original justification

for its action is not an impermissible, *post hoc* rationale.  To the extent plaintiffs suggest that any

new review or analysis undertaken to elaborate upon the agency's original rationale is forbidden

on remand, they ignore the consistent judicial remand practice post-*Regents*.  *E.g.*, *Bloomberg L.P. v. SEC*, 45 F.4th 462, 477 (D.C. Cir. 2022) (remanding in light of "the Commission's failure to respond to relevant and significant comments about the direct and indirect costs" of a "proposed data service," and "find[ing] that on remand, 'the Commission can redress its failure of explanation' by analyzing the costs" to be incurred); *Env't Health Tr. v. FCC*, 9 F.4th 893, 909, 914 (D.C. Cir. 2021) (remanding for, *inter alia*, the Commission to "address the impacts of [radiofrequency] radiation on the environment" in connection with its radiation-exposure guideline where the Commission "completely failed even to acknowledge, let alone respond to, comments" on the issue).  Plaintiffs' suggestion that new responses to comments are "facially *post hoc*," Pls. Cmts. 11, and their apparent embrace of a rule that would force agencies to restart an entire administrative process on any inadequate-response-to-comments remand, finds no support in *Regents* or cases implementing its guidance.

Further, USTR faithfully implemented this Court's remand order and the APA, including this Court's *Regents*-based cautions against *post hoc* rationales.  As set forth in Section II, above, USTR addressed each category of significant comments as directed by the Court, elaborating on its prior justifications based on contemporaneous public statements and documents that USTR considered when making its original decision.  USTR was clear that it was "provid[ing] a more detailed explanation," Remand 25, regarding the key, original rationales for its tariff decision: the President's direction and its own predictive judgment that the tariffs were "appropriate" within the meaning of the statute.  *See Notice Imposing List 3*, 83 Fed. Reg. at 47,974-75; *Notice Imposing Lists 4A-B*, 84 Fed. Reg. at 43,304-05; *see also* Remand at 89-90 (concluding that on remand the USTR had "explain[ed] the Trade Representative's rationale for the decision making in the context of the comments received").  And USTR specified that on remand it was detailing

how the Presidential direction "factored into the Trade Representative's determination to take action, the manner in which the Trade Representative acted, and the Trade Representative's consideration of public comments in light of that direction."  Remand 25-26; *see also id.* at 38-74 (repeatedly referencing the influence of the President's direction in responding to comments regarding the contents of the lists); *id.* at 76-81 (noting the role the President's direction had in setting the level of duty to be imposed and the aggregate trade value of the action).  Similarly, USTR explained the ways in which "the Trade Representative [had] also considered whether the proposed action, including duties on particular subheadings, was appropriate" under the statute and "a matter of predictive judgment to obtain the elimination of China's acts, policies and practices subject to the investigation."  Remand at 25; *see id.* at 88-89 (explaining that a "broad-based response such as Section 301, would be a more effective tool in responding to China's broad policies," than responses proposed by commenters).  Such explanations fall squarely within the Court's instruction to "further explain the justifications [USTR] has given for the modifications" without "identify[ing] reasons that were not previously given" for its action. *Remand Order*, 570 F. Supp. 3d at 1345.

Plaintiffs argue that in responding to comments, USTR offered *post hoc* rationales for its tariff action because, *e.g.*, USTR "does not point to anything in the record reflecting USTR's own analysis of those comments."  Pls. Cmts. 13; *id.* at 14 (arguing that the Remand demonstrates "no contemporaneous engagement" with issues involving economic harm).  But as explained above, this argument misunderstands *Regents* and would make it impossible for an agency ever to stand by its decision in remedying a failure to respond to comments.  USTR is presumed to have considered all of the issues and all of the evidence in the record in making its decision. *Cf. Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986) ("We presume

that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise.");

*Cf. Rhone Poulenc, S.A. v. United States*, 592 F. Supp. 1318, 1326 (Ct. Int'l Trade 1984) (citing

*U.S. v. Chem. Found.*, 272 U.S. 1, 14-15 (1926)).  Here, USTR based its comment responses on

the record on which its original decision was made, including hearing transcripts, *Federal*

*Register* notices, and press statements.  *See, e.g.,* Remand at 28-75 (citing *Federal Register*

notices, hearing testimony and other contemporaneous documents to support its responses to

significant comments); *id*. at 27-51, 83-84 (drawing from several contemporaneous sources to

provide further explanation and context as to how USTR sought to address comments concerning

harm to the U.S. economy).  USTR's careful citations to, and discussion of, those documents and

comments "illuminates" how USTR contemporaneously grappled with the "significant issues"

identified by the Court and supports the justifications already set forth in its *Federal Register*

notices that the Court deemed too conclusory.  *Regents*, 140 S. Ct. at 1908; *see also Olivares v.*

*TSA*, 819 F.3d 454, 464 (D.C. Cir. 2016) (accepting a post-decision explanation that

"illuminate[s] the reasons that are implicit in the internal materials" and thus "furnishes an

explanation of the agency action that is necessary to facilitate effective judicial review") (cleaned

up).[4]

---

[4] In the few instances in which USTR relied on contemporaneous public documents that
were not in the record, defendants moved to correct the record.  With respect to the identification
of specific advice from the inter-agency Section 301 Committee, Remand at 26, USTR explained
that the identification of specific committee member advice is consistent with the Court's
decision in *Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1347 (Ct. Int'l
Trade 2020), because USTR referenced the advice both in its *Federal Register* notices and at
public hearings.  *Notice Imposing List 3*, 83 Fed. Reg. 47,974; *Notice Imposing Lists 4A-B*, 84
Fed. Reg. at 43,304.  The additional, non-public details regarding that advice were included "to
provide the Court with a complete picture of the Committee recommendations on which USTR
acted."  Remand at 26.  Such material does not offer new reasoning made after the fact; rather, it
is evidence of the reasoning underlying USTR's original rationales.

Plaintiffs are on no firmer ground in contending that the time the agency took to carry out this Court's instructions on remand means that it engaged in *post hoc* reasoning. *See* Pls. Cmts. 1, 7, 9-10 (invoking USTR's request for more time to analyze comments and review testimony). Plaintiffs' description of the timeframe on which USTR issued Lists 3 and 4 is flawed, and incorrectly assumes that USTR did not review any public comments during the notice-and-comment period until *after* the dockets were closed. *See* Pls. Cmts. at 1, 7. In fact, USTR reviewed comments as they were submitted, considering and reviewing the comments for Lists 3 and 4 for a combined total of 161 days— which is significantly longer than the 120 days USTR took to implement the *Remand Order*.

## B. USTR Addressed The Categories Of Comments Identified By The Court

Next, plaintiffs criticize USTR for addressing in the Remand discussion of issues plaintiffs consider to be unnecessary. Pl. Cmts. at 11. But USTR was following the Court's instructions. The *Remand Order* directed USTR to respond to significant comments, and it specifically identified particular categories of comments for USTR to address.

For example, plaintiffs criticize USTR for not devoting enough pages to "comments raising major policy concerns against imposition of the challenged tariffs categorically," contending that "[p]laintiffs brought this case to contest the legality of and process for the imposition of the List 3 and 4A duties, not for further explanation as to why certain specific product categories were removed from the lists." Pls. Cmts. at 11. Similarly, plaintiffs complain that USTR erred in focusing on issues such as the exclusion of particular subheadings. *Id.* Among the specific issues that the Court directed USTR to address, however, were its "reasons for placing products on the lists or removing products therefrom," *Remand Order*, 570 F. Supp. 3d at 1343, and comments relating to the "opposition and support for the increased duties and the

inclusion or exclusion of particular subheadings." *Id.* at 1341.  Accordingly, the issues that

plaintiffs argue USTR should not have addressed are ones that USTR was expressly required by

the Court to further explain.  *See Trust Chem. Co., Ltd. v. United States*, 819 F. Supp. 2d 1373,

1378 (Ct. Int'l Trade 2012) (articulating the standard of review on remand as "compl[iance] with

the terms of the court's remand order").

      Further, "[t]here is no requirement . . . that [USTR] respond to significant comments in a

manner that satisfies the commenter," *FBME Bank Ltd. v. Mnuchin*, 249 F. Supp. 3d 215, 222

(D.D.C. 2017), and nothing in the *Remand Order* required USTR to adopt plaintiffs' view that a

certain subset of comments related to plaintiffs' lawsuit required the most discussion.  Pls. Cmts.

at 11.  Notably, in criticizing USTR for failing to spend more time addressing their particular

arguments, plaintiffs ignore that more than 8,500 of the roughly 9,000 comments that USTR

received concerned removal of specific tariff headings.  Pls. Cmts. at 15.  Many of those

comments, including comments submitted by some plaintiffs, were submitted in support of the

tariff action and were only seeking removal of their products.  *See*, *e.g*., Comments of HEAD

USA, PR-8209 ("HEAD USA fully supports USTR in its efforts to obtain the elimination of

China's unfair acts, policies, and practices related to technology transfer, intellectual property,

and innovation. However, none of those goals are furthered by imposing an additional tariff on

tennis balls.").

      Comments on specific tariff headings cannot be "immaterial," insignificant, or

"tangential" when approximately 97 percent of commenters raised these concerns.  Pls. Cmts. at

11.  And the subheading-specific distinctions are what resulted in the composition of the final

versions of Lists 3 and 4.  Moreover, while plaintiffs seek to divorce USTR's response to

comments in this category from its response to "major policy concerns" concerning "damage to

the U.S. economy," Pls. Cmts. at 11, 15, it is clear from USTR's response that damage to the U.S. economy factored into USTR's determination of whether to include or exclude specific subheadings.  *See*, *e.g.*, Remand at 46-47 (explaining the decision to remove certain subheadings for chemical pesticide inputs where China accounted for 70 percent or more of U.S. imports due to possible disruptions and harm to the U.S. economy).  Nor is there merit to plaintiffs' criticism that USTR spent "only a handful of pages addressing why it chose to *keep* so many products on List 3."  Pls. Cmts. at 11.  In fact, USTR explains the factors it weighed in detail in pages 27-72.

Regardless, the Remand does not "bury" anything.  Pls. Cmts. at 15.  USTR responded to all significant comments, thus satisfying the APA's requirement to identify the major policy issues raised in the rulemaking and to "explain[ ] why the agency resolved the issues as it did." *Nat'l Mining Ass'n v. MSHA*, 512 F.3d 696, 700 (D.C. Cir. 2008); *FBME*, 249 F. Supp. 3d at 222 ("[T]o respond adequately, the agency must only address significant comments in a reasoned manner.") (cleaned up).  The requirement to respond to significant comments is "not particularly demanding" and does not require an agency to provide lengthy or detailed responses.  *Ass'n of Priv. Sector Colleges & Univs. v. Duncan*, 681 F.3d 427, 442 (D.C. Cir. 2012) (cleaned up).  The Remand surpasses this standard of review.

**C.    USTR's Response To Public Comment Complied With The Remand Order's Instruction To Explain How USTR Considered The President's Direction**

Plaintiffs and *amici* also criticize USTR's explanation of "whether and how" it modified Lists 3 and 4 at the President's direction.  *See Remand Order*, 570 F. Supp. 3d at 1339; *see also* Pls. Cmts. at 1 (remand is "unresponsive" as it "invoke[es] the President's instruction as leaving USTR no alternative"); *id.* at 20 (arguing that USTR's response attempts to "avoid its APA obligations by relying on presidential directives alone"); *see also* VeriFone Cmts. at 1 ("USTR acted arbitrarily and capriciously by issuing final lists solely at the behest of the President.").

These comments, however, reflect a misunderstanding of the Trade Act, the *Remand Order*, and the APA's requirements.

The plain language of the Trade Act demonstrates that both the President and USTR may play a role in modifying a section 301 action. *See* 19 U.S.C. § 2417(a)(1) (USTR may "modify or terminate" any section 301 action "subject to the specific direction, if any, of the President"). As the Court explained, even when Congress transferred authority over section 301 actions to USTR in the 1988 amendments to the Trade Act, it preserved a significant role for the President. *Remand Order*, 570 F. Supp. 3d at 1325 n.10.

As explained in the Remand and above at pages 8-10, the President provided two directives for each of the challenged trade actions. Thus, contemporaneous documents demonstrate that USTR acted at the President's direction, just as Congress envisioned when it amended the Trade Act in 1988. Further, as the Remand shows for both lists, Presidential directives were a "key element" in determining the appropriate action, *id.* at 77, but not the only consideration. Here, the Court found that while "Congress delegated to the USTR authority over modifications to section 301 actions," *Remand Order*, 570 F. Supp. 3d at 1325, "the President's specific direction, if any, is a statutory consideration for which the agency must account." *Id.* at 1339. In the Remand, USTR explained that although it had limited flexibility as a result of the President's specific direction as to certain aspects of the proposed lists – particularly as to the level of duty or aggregate amount for List 4 – it nevertheless exercised its own judgment, based on the factors outlined in the Remand, to determine what action was appropriate within the flexibility that it retained. Remand at 27-28, 77-78.

Thus, as the Court's order acknowledges, the question on remand is not *whether* USTR acted at the President's direction, but *how* that direction factored into USTR's review process.

*See Remand Order*, 570 F. Supp. 3d at 1341 ("[T]he final determinations do not explain whether or why the President's direction constituted the only relevant consideration nor do those determinations address the relationship between significant issues raised in the comments and the President's direction.").  Although "references invoking the President's direction, without more" cannot "satisfy the APA's requirement for a concise statement of basis and purpose," *id.* at 1341 n.8, the Court found that USTR "could have explained its rationale with respect [to] the comments *in light of the specific Presidential directives* it was given." *Id.* at 1341-42 (emphasis added).  Also, the Court recognized that USTR's statement of basis and purpose is necessarily "within the context of the specific direction provided by the President." *Id.* at 1341.  As set forth at pages 8-10 above and in this section, USTR complied with the *Remand Order*.

Amici are also misguided in claiming that USTR's limited "flexibility to exempt headings meeting the criteria for removal detailed in the relevant Federal Register notices" demonstrates an APA violation.  VeriFone Cmts. at 2.  This is just another version of plaintiffs' attack on the President's role under section 301.[5]  As noted, however, this Court concluded that the President was statutorily authorized to direct agency action under the statute.  *Remand Order* at 1325 n.10, 1339.  Further, USTR also explained that the President's direction comported with USTR's own judgment.  Remand at 27-28, 73-78.  Nor does the fact that the Trade Representative removed fewer subheadings from the proposed List 3 than from prior lists, or that it removed only 25 subheadings from the proposed List 4, demonstrate an APA violation.  *See* VeriFone Cmts. at 2, 6 (claiming USTR's revisions to Lists 3 and 4 reflect "a change in position").  The Remand

---

[5]  *Amici* make other, similar objections as to how the Remand describes USTR's limited flexibility in determining the final lists.  *E.g.,* VeriFone Cmts. at 3 ("Final List 3 has 95.2% of the original subheadings and no reduction in approximate trade value").  USTR's explanation of how the President's directives were considered in creating the final lists satisfies its APA obligations.  Also, the decisions regarding extensions of exclusion requests and the "dollar value of the exclusions" postdate Lists 3 and 4 and are irrelevant.  *Id.* at 6.

explains why, in accordance with the President's direction, USTR sought to exert more pressure on China through List 3 than it had previously.  Remand at 33.  The Remand also explains why following "China's retreat from specific commitments undertaken during the negotiations, and actions or threatened actions by China to further harm the U.S. economy," USTR determined, in accordance with the President's direction, that List 4 would cover essentially all remaining imports from China, and that it would split List 4 into Lists 4A and 4B and delay, and ultimately indefinitely suspend, List 4B.  *Id.* at 58.

In sum, USTR does not invoke the Presidential directives to "obviate" its obligation to respond to significant comments.  Pls. Cmts. at 12.  The Remand *is* USTR's written response to public comment, and it describes how the Presidential directive guided the trade actions, along with USTR's own judgment, inter-agency recommendations, and public comment.

### D.   USTR Considered Harm To Consumers And The United States Economy

Plaintiffs raise several claims that USTR failed to consider economic harm, none of which have merit.  First, plaintiffs claim that the Remand "demonstrates no contemporaneous engagement" with comments addressing economic harm.  Pls. Cmts. at 14.  But USTR cited numerous contemporaneous documents showing that it considered economic harm in crafting an "appropriate" action within the meaning of sections 301 and 307 of the Trade Act at the time Lists 3 and 4 were issued.  *See* Remand at 81-84 (citing public comments, *Federal Register* notices and contemporaneous press releases).  As discussed above, USTR was permitted to respond to public comments in the Remand by further elaborating on its justifications for modifying the tariff actions with reference to contemporaneous documents that USTR considered in making its original decision.

Second, plaintiffs argue that USTR's reliance on documents predating the final Lists 3 and 4 (such as those related to Lists 1 and 2) to show that it considered economic harm cannot "constitute adequate 'justifications'" for the challenged trade actions.  Pls. Cmts. at 16.  This ignores that the challenged trade actions were modifications of an existing tariff action, an action that plaintiffs have never contested as unlawful.  USTR cites these documents to show that it considered concerns about economic harm during the entire section 301 investigation.  *See* Remand at 6-10.  Moreover, the date of these documents, which predate Lists 3 and 4, further show that USTR's explanation on this score is hardly *post hoc.*

Third, plaintiffs and *amici* claim, incorrectly, that the only relevant discussion of economic harm appears in the Remand's final pages.  As noted, however, the entire discussion of USTR's subheading-specific decisions demonstrates a focus on a broad scope of economic concerns raised in public comments.  *See*, *e.g.*, Remand at 47 (removing subheadings covering chemical inputs for pesticides "due to its lack of availability outside of China and possible disruptions and harm to the U.S. economy"); *see id.* at 32 (removing subheadings covering seafood because of comments discussing "harm [to] U.S. processors, distributors, retailers and restaurants that depend on year-round supply of seafood to meet domestic demand").

In addition, plaintiffs and *amici* ignore that USTR proposed Lists 3 and 4 because China's retaliatory actions were causing further harm to the U.S. economy.  *Notice Imposing List 3*, 83 Fed. Reg. at 47,975; *see also Notice Imposing Lists 4A-B*, 84 Fed. Reg. at 43,304-05.  Contrary to plaintiffs' and *amici's* assertions, *see* Pls. Cmts. at 16-17; RLC Cmts. at 8-10, the analysis throughout the Remand demonstrates that USTR addressed economic harm concerns.

In any event, USTR was not required to respond to every comment raising economic concerns, *see Remand Order*, 570 F. Supp. 3d at 1340-43, or to state whether each predicted

harm was "unsupported, overstated, or unbelievable."  Pls. Cmts. at 17.  Indeed, *any* additional

duties are likely to cause some level of harm to some stakeholders.  Remand at 33, 68.  Thus,

USTR did not seek to eliminate all harm, but rather, to mitigate "disproportionate harm."  *Id.* at

55, 29-54.  Contrary to plaintiffs' claims, this process required USTR to weigh factors "to

determine that the benefits from the tariff action would outweigh those [predicted] harms."  Pls.

Cmts. at 17; *see also*, *e.g.*, Remand at 55-56 (not removing subheadings for appliance inputs

where importers "reflect[ed] on increased costs for consumers and supply chain disruptions," but

did not "demonstrate how the additional duties would cause *disproportionate* economic harm to

U.S. interests," and where removal would reduce the aggregate amount of the proposed action by

10.5 billion dollars); *id.* at 38 (not removing consumer electronics subheadings "[g]iven the

value of imports . . . and the inclusion of Made in China 2025 products").

### E.      Plaintiffs' Disagreement Is Not A Valid Basis For Setting Aside The Remand

Plaintiffs and *amici* raise several unfounded objections that amount to mere disagreement

with USTR's reasoning and invite the Court to substitute its judgment for the agency's.  This is

"not a sufficient basis for [a court] to overturn an agency decision under the APA."  *Cayuga*

*Nation v. Zinke*, 302 F. Supp. 3d 362, 370 (D.D.C. 2018).

For example, on page 19 of plaintiffs' comments, they quibble with "USTR's

justification for rejecting arguments that the List 3 and 4 tariffs were not likely to be effective"

because the prior Lists 1 and 2 actions had not been effective.  Plaintiffs also criticize USTR for

including products that were not part of the Made in China 2025 initiative.  *See* Pls. Cmts. at 19;

Remand at 76-77, 87 (explaining USTR's reasoning); *but see* 19 U.S.C. § 2411(c)(3)(B)

(authorizing action "against any goods or economic section," not only those involved in the

investigated practices).  Similarly, plaintiffs and *amici* disagree that the delay in imposing 25

percent duties on List 3, and the delay implementing List 4B, would sufficiently address

economic harm concerns, Pls. Cmts. at 14; RLC Cmts. at 9-10, and plaintiffs criticize USTR for proceeding with List 4A at all.  Pls. Cmts. at 16.  None of these objections reflects a lack of adequate explanation in violation of the APA.

F.   **Plaintiffs Fail To Understand That USTR Was Evaluating Whether To Modify The Existing 301 Action**

Finally, there is no merit to plaintiffs' criticisms that USTR failed to adequately consider alternatives to the tariffs.  Pls. Cmts. at 18-20.  Specifically, plaintiffs argue that USTR did not evaluate alternatives to the 301 modifications such as the use of other tariff laws or "building an international coalition to pressure China."  Pls. Cmts. at 18-19.  In raising this argument, plaintiffs ignore that that the additional tariffs imposed through Lists 3 and 4A were *modifications to an existing tariff action* brought under section 301.  The initial 301 action has not been challenged by plaintiffs or by parties in any other lawsuit.  Thus, USTR necessarily focused upon the actions set forth in section 301(c), which enumerate actions that USTR may take to obtain the elimination of a particular trade action.  Indeed, the actions that USTR ultimately elected to take – the imposition of tariffs and entering into binding agreements – are two of the major actions available under the statute.

Nothing in the *Remand Order* requires USTR to research all of the legal alternatives proposed in the public comments to address China's harmful behavior outside of the framework of section 301, particularly when the President has already directed USTR, in accordance with the governing statute, to propose, and then to make modifications to its prior 301 actions.  Moreover, plaintiffs ignore that USTR had already undertaken some of the alternatives proposed, including "bilateral negotiation with China" and "bringing additional WTO cases."  Pl. Cmts. at 18; Remand at 6, 14-15, 28-29, 58-59, 77-79, 86-88.

Nor do the *Federal Register* notices, which requested comments on "any aspect *of the proposed supplemental action*" support plaintiffs' interpretation of the requests for comments as inviting alternatives to an action under section 301 of the Trade Act.  *Request for Comments for List 3*, 83 Fed. Reg. at 33,609 (emphasis added); *Request for Comments for List 4*, 84 Fed. Reg. at 22,565 (emphasis added).  As USTR explained, it interpreted this language to mean any aspect *of the proposal to modify the existing trade action through additional actions authorized under section 301 of the Trade Act.*  Remand at 10-11, 16, 88-89.  Plaintiffs ignore the plain language of the *Federal Register* notices, as well as the enumerated examples of "any aspect," which include comments on particular subheadings, the level of duty and the appropriate aggregate level of trade, *not* comments on diverse legal alternatives.  *Request for Comments for List 3*, 83 Fed. Reg. at 33,609; *Request for Comments for List 4*, 84 Fed. Reg. at 22,565.  Thus, "any aspect" cannot be divorced from the framework of the 301 actions that existed at the time, and which USTR was proposing to modify.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain the Remand and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

OF COUNSEL:

MEGAN GRIMBALL
Associate General Counsel
PHILIP BUTLER
Associate General Counsel
EDWARD MARCUS
Assistant General Counsel
RACHEL HASANDRAS
Assistant General Counsel
Office of General Counsel
Office of the U.S. Trade Representative
600 17th Street N.W.
Washington, D.C. 20508

/s/ Elizabeth Speck
ELIZABETH A. SPECK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0369
Elizabeth.Speck@usdoj.gov

PAULA SMITH
Assistant Chief Counsel
EDWARD MAURER
Deputy Assistant Chief Counsel
VALERIE SORENSEN-CLARK
Attorney
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection
26 Federal Plaza, Room 258
New York, NY 10278

/s/ Jamie L. Shookman
JAMIE L. SHOOKMAN
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, NY 10278
Tel: (212) 264-2107
Jamie.Shookman@usdoj.gov

SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7568
Sosun.Bae@usdoj.gov

November 4, 2022

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

I, Jamie L. Shookman, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Brach, International Trade Field Office, who is responsible for the Defendants' Response to Comments on the Remand Determination dated November 4, 2022, certify that this memorandum complies with the 25-page limitation set forth in the Court's August 15, 2022 Scheduling Order.

/s/ Jamie L. Shookman