**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:   THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
          THE HONORABLE CLAIRE R. KELLY, JUDGE
          THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |  |
|---|---|---|
| *In Re* Section 301 Cases | : : : : : | Court No. 21-00052 |

**PLAINTIFFS' REPLY REGARDING THE REMAND DETERMINATION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................2

    I.     AN AGENCY'S INABILITY TO DEMONSTRATE THAT IT CONSIDERED SIGNIFICANT COMMENTS REQUIRES VACATUR ...............2

    II.    THE REMAND DETERMINATION FAILS TO SATISFY THE COURT'S REMAND ORDER AND THE APA .........................................................................4

         A.    Presidential Direction Does Not Excuse USTR's Obligation To Exercise Its Own Judgment About "Appropriate" Action In Response To Comments .................................................................................4

         B.    USTR's Reasoning Is Manifestly Inadequate .............................................5

               1.    *Level of Duty and Amount of Trade* ...................................................6

               2.    *Harm to U.S. Consumers and the U.S. Economy* .............................7

               3.    *Alternatives to List 3 and List 4* .........................................................8

CONCLUSION .......................................................................................................................9

# **TABLE OF AUTHORITIES**

**CASES:**

*Action on Smoking & Health v. C.A.B.*,
   713 F.2d 795 (D.C. Cir. 1983) ................................................................................................3

*Chamber of Com. of U.S. v. SEC*,
   412 F.3d 133 (D.C. Cir. 2005) ................................................................................................9

*Changzhou Wujin Fine Chem. Factory Co. v. United States*,
   701 F.3d 1367 (Fed. Cir. 2012) ...............................................................................................7

*Comcast Corp. v. FCC*,
   579 F.3d 1 (D.C. Cir. 2009) ............................................................................................3, 10

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   140 S. Ct. 1891 (2020) ..............................................................................................2, 4, 5, 10

*In re Sang Su Lee*,
   277 F.3d 1338 (Fed. Cir. 2002) ...............................................................................................6

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*,
   626 F.3d 84 (D.C. Cir. 2010) ..................................................................................................3

*Levesque v. Block*,
   723 F.2d 175 (1st Cir. 1983) ...................................................................................................3

*Lilliputian Sys., Inc. v. Pipeline & Hazardous Materials Safety Admin.*,
   741 F.3d 1309 (D.C. Cir. 2014) .............................................................................................2

*Michigan v. EPA*,
   576 U.S. 743 (2015) ............................................................................................................4, 7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ..................................................................................................................2

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) ..................................................................................................................7

*Spirit Airlines, Inc. v. U.S. Dep't of Transp.*,
   997 F.3d 1247 (D.C. Cir. 2021) .............................................................................................8

*Tex Tin Corp. v. EPA*,
   992 F.2d 353 (D.C. Cir. 1993) ................................................................................................3

*Wages & White Lion Invs., L.L.C. v. FDA*,
   16 F.4th 1130 (5th Cir. 2021) .................................................................................................4

**STATUTES:**

19 U.S.C.
    § 2411(b) ............................................................................................................. 4, 9
    § 2417(a)(1) ............................................................................................................. 9
    § 2417(a)(1)(B) ....................................................................................................... 4
    § 2417(a)(1)(C) ....................................................................................................... 4

**FEDERAL REGISTER NOTICES:**

83 Fed. Reg. 47,974 (Sept. 21, 2018) ............................................................................. 6

84 Fed. Reg. 43,304 (Aug. 20, 2019) .............................................................................. 6

**STATUTES:**

19 U.S.C.
    § 2411(b) ............................................................................................................. 4, 9
    § 2417(a)(1) ............................................................................................................. 9
    § 2417(a)(1)(B) ....................................................................................................... 4
    § 2417(a)(1)(C) ....................................................................................................... 4

**FEDERAL REGISTER NOTICES:**

83 Fed. Reg. 47,974 (Sept. 21, 2018) ............................................................................. 6

84 Fed. Reg. 43,304 (Aug. 20, 2019) .............................................................................. 6

## **INTRODUCTION**

The Government's response ("Defs. Cmts.") is less notable for what it says than for what it lacks: any showing that USTR considered commenters' major objections contemporaneously with its decisions to levy the List 3 and List 4A tariffs on hundreds of billions of dollars of imports from China. That deficiency is no mere procedural fault, but rather confirms that the agency never considered the most important aspects of the issue before it. USTR mischaracterizes Plaintiffs' main argument as seeking to bar USTR from "elaborating upon its prior explanations for its action." Defs. Cmts. 2. Plaintiffs' actual objection is that USTR points to no explanation from the contemporaneous record—beyond presidential direction—for its rejection of the most serious objections. USTR cannot "elaborate" on explanations it never gave.

USTR predictably falls back on the mantra that it followed the President's command. *Id.* at 1-10, 12-13, 17-20, 23. But the Court instructed that because "it is still the USTR that is acting for purposes of the APA," Op. 21-22 & n.10, USTR must "consider factors other than the President's direction," Op. 55. USTR, however, simply "acted at the President's direction." Defs. Cmts. 18. That explains why nothing in the record shows that USTR exercised its own judgment in response to the significant policy objections to the List 3 and List 4 actions *before* imposing those tariffs—and why USTR *still* does not offer any reasoned basis for why it rejected those objections on their merits.

If USTR wishes to assess and address the significant comments, evaluate the costs of further tariff actions, and then impose the List 3 and List 4A tariffs going forward, it may take new action. But USTR may not keep the tariffs in place on the basis of conclusory and *post hoc* rationales. This Court should vacate the List 3 and List 4A actions.

**ARGUMENT**

I.   **AN AGENCY'S INABILITY TO DEMONSTRATE THAT IT CONSIDERED SIGNIFICANT COMMENTS REQUIRES VACATUR**

Consistent with the APA, this Court remanded the List 3 and List 4A actions for "reconsideration or further explanation regarding the USTR's rationale for imposing the tariffs" in light of the comments received and the "statutory factors relevant to the USTR's determination"—namely, "ensuring that appropriate action is taken to eliminate discriminatory and burdensome acts and the President's specific direction, if any." Op. 49-50, 52-53, 57. Because "[a]n agency must defend its actions based on the reasons it gave when it acted," *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 140 S. Ct. 1891, 1909 (2020), this Court cautioned that USTR "may only further explain the justifications it has given for the modifications"—not offer new justifications, Op. 61 (citing *Regents*, 140 S. Ct. at 1908).

An agency's obligation to consider significant comments before taking action is not merely a formality, *see Regents*, 140 S. Ct. at 1909, but rather embodies the foundational administrative-law principle that an agency acts arbitrarily when it "entirely fail[s] to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Failing to respond to comments is significant insofar as it "demonstrates that the agency's decision was not based on a consideration of the relevant factors." Op. 49 (internal quotation marks omitted). The Government is thus wrong to suggest that "USTR is *presumed* to have considered all of the issues and all of the evidence in the record in making its decision." Defs. Cmts. 13 (emphasis added). On the contrary, an agency's apparent "fail[ure] to consider \*\*\* conspicuous issues \*\*\* raises doubts about whether the agency appreciated the scope of its discretion or exercised that discretion in a reasonable manner." *Regents*, 140 S. Ct. at 1916; *see Lilliputian Sys., Inc. v. Pipeline & Hazardous Materials Safety Admin.*, 741 F.3d 1309, 1312 (D.C.

Cir. 2014) ("An agency's failure to respond to relevant and significant public comments generally demonstrates that the agency's decision was not based on a consideration of the relevant factors.") (internal quotation marks omitted). "Conclusory statements that do not explain how a determination was reached," moreover, are "insufficient." Op. 48 (quoting *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 94 (D.C. Cir. 2010)). Accepting such statements would allow the agency to "act now, make up reasons later," without consequence. *Levesque v. Block*, 723 F.2d 175, 180 (1st Cir. 1983).

For that reason, courts regularly have held that an agency failed to provide non-conclusory, non-*post hoc* reasoning sufficient to sustain agency action—even after remanding to give the agency a second chance to cure its APA violation. *See, e.g.*, *Comcast Corp. v. FCC*, 579 F.3d 1, 9 (D.C. Cir. 2009); *Tex Tin Corp. v. EPA*, 992 F.2d 353, 355 (D.C. Cir. 1993) ("It is too late for the Agency to base its listing on a new theory[.]"). In *Comcast*, the D.C. Circuit noted that it had "not hesitated to vacate a rule when the agency has not responded *** to an argument inconsistent with its conclusion," and thus vacated where the FCC "either cannot or will not" consider one of the factors the court had identified. 579 F.3d at 8-9. It held that the disruptive effect of vacatur "is weighty only insofar as the agency may be able to rehabilitate its rationale for the regulation," and the fact that the agency "twice tried and twice failed" rendered that prospect unlikely. *Id.* at 9; *see also Action on Smoking & Health v. C.A.B.*, 713 F.2d 795, 798 n.2 (D.C. Cir. 1983) (vacatur appropriate where "the required explanation of the agency's action is totally absent, or 'palpably inadequate'").

The Government contends that there is a "consistent judicial remand practice post-*Regents*" that allows agencies to analyze and address comments for the first time on remand without taking new agency action. Defs. Cmts. 11-12. But neither of the Government's cases even cites *Regents*,

3

let alone sheds light on the choice USTR faced between elaborating on previously given rationales or "'deal[ing] with the problem afresh' by taking new agency action." Op. 61 (quoting *Regents*, 140 S. Ct. at 1908); *see also Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1136 (5th Cir. 2021) (scrutiny of agency "*post hoc* rationalizations" is not "toothless"; "[i]n fact, after *Regents*, it has serious bite").

## II. THE REMAND DETERMINATION FAILS TO SATISFY THE COURT'S REMAND ORDER AND THE APA

### A. Presidential Direction Does Not Excuse USTR's Obligation To Exercise Its Own Judgment About "Appropriate" Action In Response To Comments

The Government spends much of its response defending USTR's reliance on presidential direction to impose the List 3 and List 4A tariffs. Defs. Cmts. 7-10, 17-20. But this Court has already held that presidential direction "does not obviate the USTR's obligation to respond to significant issues raised in the comments." Op. 53-54; *see id.* at 55 (USTR "indicated its willingness to consider factors other than the President's direction in the respective NPRMs.").

As the Court's remand order makes clear, presidential direction is just one factor for USTR to consider. Because "Congress delegated *to the USTR* authority over modifications to section 301 actions," USTR—not the President—is the one "acting for purposes of the APA." Op. 21-22 & n.10 (emphasis added). Thus, the "statutory factors relevant to the USTR's determination of whether and how to modify its action include" not only "the President's specific direction, if any," but also independently "ensuring that *appropriate* action is taken to eliminate discriminatory and burdensome acts." Op. 50 (emphasis added) (citing 19 U.S.C. §§ 2417(a)(1)(B), (C), 2411(b)). The Supreme Court has recognized that "appropriate" is a broad term, which encompasses consideration of all relevant factors and "requires at least some attention to cost." *Michigan v. EPA*, 576 U.S. 743, 752 (2015). Furthermore, "[n]o regulation is 'appropriate' if it does significantly more harm than good." *Id.*

4

The Remand Determination and the Government's response, with their excessive focus on presidential direction, make no showing that USTR actually weighed the wide-ranging economic harms identified in significant comments (*see* Pls. Cmts. 16-18) before taking action. Instead, the Remand Determination makes clear that presidential direction was dispositive. *Id.* at 11-12. While asserting USTR's "limited flexibility as a result of the President's specific directions," the Government claims that USTR "nevertheless exercised its own judgment, based on the factors outlined in the Remand, to determine what action was appropriate within the flexibility that it retained." Defs. Cmts. 18. But what was the specific reasoning that caused USTR to agree with the President's directives and to reject commenters objections? USTR does not say. Although USTR baldly asserts that "the President's direction comported with USTR's own judgment," *id.* at 19, such "[c]onclusory" explanations are "insufficient," Op. 48.

In the absence of any record-grounded explanation, the Government effectively asks the Court to take its word for the proposition that USTR exercised independent judgment in deciding whether to proceed with the tariffs, at what rates, and in what amounts, *apart from* presidential direction. That will not do, under either this Court's remand order or APA precedent. Although USTR explained "why the USTR deemed China's ongoing and retaliatory conduct actionable," Op. 53, the record remains devoid of any reasoned explanation as to how USTR arrived at the conclusion that the List 3 and List 4A actions overall were "appropriate"—and thus "raises doubts about whether the agency appreciated the scope of its discretion or exercised that discretion in a reasonable manner," *Regents*, 140 S. Ct. at 1916.

**B.     USTR's Reasoning Is Manifestly Inadequate**

Stripped of its undue reliance on presidential direction, USTR offers no acceptably reasoned explanation for its actions in light of commenters' significant objections.

5

1.   *Level of Duty and Amount of Trade*

In responding to Plaintiffs' arguments regarding USTR's failure to provide a reasoned explanation for the duty rates and amount of trade covered by the List 3 and List 4A actions, the Government offers nothing beyond its assertion that USTR had "limited flexibility as a result of the President's specific direction."  Defs. Cmts. 18.  The Government does not point to anything resembling an independent analysis by USTR of the comments received—either then or now—to arrive at the conclusion that the duty levels and aggregate amounts of covered trade were "appropriate."  In passing, the Government suggests that USTR "balanced numerous factors to determine if the benefit of additional duties outweighed the potential harm."  *Id.* at 4-5.  But the evidence it cites is wholly conclusory.  Although USTR claimed that it was "mindful of comments" that U.S. businesses would suffer "severe economic harm," the cited pages do not discuss any comments at all, let alone ones on economic harm.  *See* Remand Determination at 77-78 (citing 83 Fed. Reg. 47,974, 47,975 (Sept. 21, 2018) and 84 Fed. Reg. 43,304, 43,305 (Aug. 20, 2019)).

To be sure, USTR points to passages in the Remand Determination that show contemporaneous engagement with comments seeking removal of certain categories of products. *See, e.g.*, Defs. Cmts. 4 (discussing "U.S. caught seafood").  But such item-specific analyses do not show that USTR exercised its "own judgment" regarding the *overall* levels of the duty or the amount of trade to be covered.  *Id.* at 19.  USTR was required to "present a full and reasoned explanation of its decision" on such significant issues raised in the comments by "set[ting] forth its findings and the grounds thereof, as supported by the agency record."  *In re Sang Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002).  Non-responsive and conclusory statements grounded in presidential direction do not show that USTR engaged in reasoned decision-making when it selected the duty rates and covered amounts of trade.

6

### 2.   *Harm to U.S. Consumers and the U.S. Economy*

In response to Plaintiffs' arguments that USTR failed to give reasoned consideration to the harm caused to U.S. consumers and the economy, the Government relies on documents related to List 1 and List 2, which obviously long pre-dated the comments to which USTR was supposedly responding.  Defs. Cmts. 21.  USTR's statements in those *List 1 and List 2* documents could not show that USTR grappled with significant comments in promulgating *List 3 or List 4*.  See *Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) ("The grounds upon which an administrative order must be judged are those upon *which the record discloses* that its action was based.") (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)) (emphasis added).  Whatever consideration USTR gave to the costs of List 1 and List 2, which imposed tariffs on approximately $50 billion of non-consumer goods, it cannot substitute for a reasoned consideration of comments about the costs of later imposing tariffs on *hundreds of billions* of dollars of additional (including consumer) goods.

The Government fares no better in pointing to USTR's general citation to the harm caused by China's retaliation as a reasoned consideration of costs and benefits.  Defs. Cmts. 22.  The trade value affected by the List 3 and List 4A tariffs was magnitudes more than the trade value of China's retaliatory tariffs.  Even if some benefit could be derived by countering China's retaliation, the fundamental point commenters raised was that USTR's proposed cure for China's unfair acts was worse than the disease.  *See, e.g.*, Pls. Cmts. 3-5, 16-18; RLC Cmts. 2, 8-9.  "No regulation is 'appropriate' if it does significantly more harm than good."  *Michigan*, 576 U.S. at 752.  There is zero evidence, beyond its bare say-so, that USTR did any sort of weighing of the costs against the potential benefits of its actions.

The Government also argues that USTR considered economic harm in deciding which tariff line items should remain on the final Lists and which ones should be removed. Defs. Cmts. 22. But again, USTR's explanations regarding its decisions with respect to a small subset of the many requests to remove specific tariff line items from the Lists do not show that it grappled with the cumulative harms of imposing tariffs on hundreds of billions of dollars of imports—*i.e.*, the critical comments regarding the "wisdom of the enterprise." Op. 53. Indeed, the Government's acknowledgement that USTR was "limited" in its ability to remove items from the Lists due to the President's directives undermines any claim that USTR's line-item-specific decisions substitute for a reasoned decision that the benefits of the *aggregate* tariff actions were worth the costs.

Finally, in response to Plaintiffs' argument (Pls. Cmts. 18-19) that USTR failed to provide a reasoned response to comments questioning the efficacy of the proposed List 3 and List 4 tariffs, all the Government can muster is that the argument reflects Plaintiffs' "disagreement" with USTR. Defs. Cmts. 22-23. But the point is that those same areas of disagreement were raised in comments, meaning USTR was bound by the APA to respond before taking action. USTR *still* has not responded to comments pointing out that the List 3 and List 4 actions would not be effective, considering that (as the Government itself admits) "the *List 1 and 2 actions* had not been effective." *Id.* at 5 (emphasis added). USTR's explanations are missing, conclusory, or (at best) *post hoc*—and USTR cites nothing in the record showing otherwise.

    3.  *Alternatives to List 3 and List 4*

USTR concedes that it failed to consider contemporaneously a number of alternatives proposed by interested parties. Defs. Cmts. 24. But "[a]n agency is required to consider responsible alternatives to its chosen policy and to give a reasoned explanation for its rejection of such alternatives. This principle goes to the heart of reasoned decisionmaking[.]" *Spirit Airlines,*

8

*Inc. v. U.S. Dep't of Transp.*, 997 F.3d 1247, 1255 (D.C. Cir. 2021) (internal quotation marks and citation omitted); *see Chamber of Com. of U.S. v. SEC*, 412 F.3d 133, 145 (D.C. Cir. 2005) ("[W]here a party raises facially reasonable alternatives, the agency must either consider those alternatives or give some reason for declining to do so.") (internal quotation marks and ellipsis omitted).

To justify its disregard of the comments raising alternatives, the Government asserts that it did not intend to solicit such comments. Defs. Cmts. 7-8, 24. The Government's contention is both incorrect and irrelevant. Regardless of USTR's subjective intent, potential alternatives to the tariffs fell squarely within the categories of information that USTR solicited in its notices of proposed rulemaking. *See* Op. 51 (noting that categories of comments "[c]onsistent with the NPRMs" included "whether alternative measures would be more effective").

In any event, by requiring USTR to consider whether tariff action is "appropriate" in both taking actions initially and in modifying such actions, the *statute* makes comments on alternatives to the tariffs relevant. 19 U.S.C. §§ 2411(b), 2417(a)(1). Comments explaining that alternative measures would better address China's IP practices or cause less collateral damage to U.S. interests bear directly on whether the action taken is "appropriate." For that reason, the Government's further assertion that USTR did not consider alternatives to the List 3 and List 4 actions because it was modifying a prior Section 301 action (Defs. Cmts. 23) is nonresponsive and nonsensical; the fact that USTR had taken prior Section 301 action did not necessarily make USTR's further tariff action appropriate. USTR's conceded failure to give reasoned consideration to alternatives renders its determination arbitrary and capricious.

## CONCLUSION

This Court could have vacated the List 3 and List 4A tariff actions the first time around in light of USTR's gross failure to respond to any of the thousands of comments received. Despite

9

being afforded a second opportunity to satisfy its basic APA obligations, USTR's effort falls woefully short of providing a reasoned and permissible response for rejecting the comments wholesale, let alone one grounded in the contemporaneous rulemaking record as the APA demands. The prospect of disruption to the Government arising from vacatur cannot justify keeping the List 3 and List 4A actions in place where, as here, the agency cannot "rehabilitate its rationale for the regulation," *Comcast Corp.*, 579 F.3d at 9—particularly given the substantial *ongoing* disruptive effect of the tariffs on millions of American consumers, businesses, and farmers.

It is precisely in cases like this, where agency action is so consequential, that the APA's procedural safeguards are most critical and must be respected. "[P]articularly when so much is at stake, *** the Government should turn square corners in dealing with the people." *Regents*, 140 S. Ct. at 1909 (internal quotation marks omitted). The Court should now vacate the List 3 and List 4A tariff actions and order refunds of the duties paid thereunder.

                                                  Respectfully submitted,

                                                  Matthew R. Nicely
                                                  Pratik A. Shah
                                                  James E. Tysse
                                                  Devin S. Sikes
                                                  Daniel M. Witkowski
                                                  Sarah B. W. Kirwin

Dated: December 5, 2022                 AKIN GUMP STRAUSS HAUER & FELD LLP
                                                  2001 K Street, NW
                                                  Washington, D.C. 20006

                                                  *Counsel to Plaintiffs HMTX Industries LLC, Halstead New England Corporation, Metroflor Corporation, and Jasco Products Company LLC*

## CERTIFICATE OF COMPLIANCE

Undersigned hereby certifies that Plaintiffs' Reply Regarding the Remand Determination complies with the 10-page limitation set forth in the Court's August 15, 2022 Scheduling Order.

Dated:  December 5, 2022                             /s/ Matthew R. Nicely
                                                                               Matthew R. Nicely
                                                                               AKIN GUMP STRAUSS HAUER & FELD LLP