Slip Op. 23-35

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| IN RE SECTION 301 CASES | Before: Mark A. Barnett, Claire R. Kelly, and Jennifer Choe-Groves, Judges Court No. 21-00052-3JP |

## <u>OPINION AND ORDER</u>

[Sustaining *Final List 3* and *Final List 4* as amended on remand by the Office of the United States Trade Representative; granting Defendants' second motion to correct the administrative record.]

Dated: March 17, 2023

Pratik Shah, Akin Gump Strauss Hauer & Feld LLP, of Washington, DC, argued for Plaintiffs HMTX Industries LLC, et al.  With him on the brief were Matthew R. Nicely, James E. Tysse, Devin S. Sikes, Daniel M. Witkowski, and Sarah B. W. Kirwin.

Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendants United States, et al.  With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, L. Misha Preheim, Assistant Director, Justin R. Miller, Attorney-In-Charge, International Trade Field Office, Sosun Bae, Senior Trial Counsel, and Jamie L. Shookman, Trial Attorney.  Of Counsel on the brief were Megan Grimball, Associate General Counsel, Philip Butler, Associate General Counsel, and Edward Marcus, Assistant General Counsel, Office of General Counsel, Office of the U.S. Trade Representative, of Washington, DC, and Paula Smith, Assistant Chief Counsel, Edward Maurer, Deputy Assistant Chief Counsel, and Valerie Sorensen-Clark, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, NY.

Alexander W. Koff, Venable LLP, of Baltimore, MD, argued for Amici Curiae VeriFone, Inc., et al.  With him on the brief were Ashleigh J. F. Lynn and Nicholas M. DePalma, Venable LLP, of Tysons Corner, VA.

Joseph R. Palmore and Adam L. Sorensen, Morrison & Foerster LLP, of Washington, DC, for Amici Curiae Retail Litigation Center, et al.

Barnett, Chief Judge:  Plaintiffs HMTX Industries LLC, Halstead New England Corporation, Metroflor Corporation, and Jasco Products Company LLC commenced the first of approximately 3,600 cases[1] ("the Section 301 Cases") contesting the imposition of a third and fourth round of tariffs by the Office of the United States Trade Representative ("USTR" or "the Trade Representative") pursuant to section 307 of the Trade Act of 1974 ("the Trade Act"), 19 U.S.C. § 2417 (2018).[2]  *See generally* Am. Compl., *HMTX Indus. LLC v. United States,* No. 20-cv-177 (CIT Sept. 21, 2020), ECF No. 12 ("20-177 Am. Compl.").  USTR imposed the contested duties, referred to herein as "List 3" and "List 4A," in September 2018 and August 2019, respectively.  *See Notice*

---

[1] This figure reflects the approximate number of cases assigned to this panel.  Cases raising similar claims filed on or after April 1, 2021, are stayed without an order of assignment.  *See* U.S. Ct. of Int'l Trade Admin. Order 21-02.

[2] Citations to the United States Code are to the 2018 version, unless otherwise specified.  Section 307 provides, *inter alia*:

> (a) In general
>
> > (1) The Trade Representative may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, that is being taken under section 2411 of this title if—
> > > (A) any of the conditions described in section 2411(a)(2) of this title exist,
> > > (B) the burden or restriction on United States commerce of the denial rights, or of the acts, policies, and practices, that are the subject of such action has increased or decreased, or
> > > (C) such action is being taken under section 2411(b) of this title and is no longer appropriate.

19 U.S.C. § 2417(a)(1).  The Section 301 Cases are named in recognition of the fact that claims raised therein contest modifications of tariffs initially imposed pursuant to section 301 of the Trade Act, 19 U.S.C. § 2411.

*of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) ("*Final List 3*"); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 43,304 (Aug. 20, 2019) ("*Final List 4*").[3]  Plaintiffs alleged that USTR exceeded its statutory authority and violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), when it promulgated List 3 and List 4A.  20-177 Am. Compl. ¶¶ 63–75.

In *In Re Section 301 Cases*, 46 CIT __, 570 F. Supp. 3d 1306 (2022), the court rejected Defendants' ("the Government") argument that Plaintiffs' claims were non-justiciable and addressed Plaintiffs' substantive and procedural challenges.[4]  Although the court sustained USTR's statutory authority to impose the tariffs pursuant to section 307(a)(1)(b) of the Trade Act, *id.* at 1323–35, the court remanded the matter for USTR

---

[3] Within *Final List 4*, USTR segregated the tariff subheadings into List 4A and List 4B with staggered effective dates (September 1, 2019, and December 15, 2019, respectively).  84 Fed. Reg. at 43,305.  USTR promulgated List 3 and List 4A as modifications of two prior rounds of tariffs, referred to herein as "List 1" and "List 2." *See Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Tech. Transfer, Intell. Prop., and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018) (promulgating List 1); *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Tech. Transfer, Intell. Prop., and Innovation*, 83 Fed. Reg. 40,823 (Aug. 16, 2018) (promulgating List 2).
[4] The court presumes familiarity with *In Re Section 301 Cases,* which sets forth in detail background on the imposition of List 3 and List 4A duties, and the case management procedures the court employed to handle the Section 301 Cases.

to comply with the APA requirement for a reasoned response to comments submitted during the List 3 and List 4A rulemaking proceedings.  *Id.* at 1335–45.[5]

This matter is now before the court following USTR's filing of its remand redetermination.  *See* Further Explanation of the Final List 3 and Final List 4 Modifications in the Section 301 Action: China's Acts, Policies, and Practices Related to Tech. Transfer, Intell. Prop., and Innovation, Pursuant to Ct. Remand Order ("Remand Results"), ECF No. 467.  In the Remand Results, USTR (1) identified the documents underlying its response to comments; (2) provided additional explanation supporting the removal or retention of certain tariff subheadings from List 3 and List 4A; (3) addressed comments concerning the level of duties to be imposed and the aggregate level of trade subject to the duties; and (4) addressed comments concerning potential harm to the domestic economy, the legality and efficacy of the tariffs, and suggested alternative measures.  *See id.* at 23–89.

Plaintiffs and *Amici*[6] filed comments opposing the Remand Results and seeking vacatur of List 3 and List 4A.  *See* Pls.' Cmts. on the [USTR's Remand Results] ("Pls.' Cmts."), ECF No. 474; Pls.' Reply Regarding the Remand Determination ("Pls.' Reply Cmts."), ECF No. 482; Br. of Amici Curiae Retail Litig. Ctr., Inc., Nat'l Retail Fed'n, Am. Apparel and Footwear Assoc., Consumer Tech. Assoc., Footwear Distributors and

---

[5] Finding authority pursuant to section 307(a)(1)(B), the court declined to address USTR's authority pursuant to section 307(a)(1)(C).  *In Re Section 301 Cases*, 570 F. Supp. 3d at 1334–35.  The court rejected Plaintiffs' remaining APA claims and granted in part the Government's motion to correct the record.  *Id.* at 1345–49.
[6] The court authorized additional plaintiffs in the Section 301 Cases to participate in this litigation as *amici curiae*.  Std. Procedural Order 21-02 at 4, ECF No. 82.

Retailers of Am., Juvenile Prods. Mfrs. Assoc., and Toy Assoc. ("RLC's Br."), ECF No.
472; Br. of Amici Curiae Verifone, Drone Nerds, and Specialized in Supp. of Pls.' Cmts.
on the [Remand Results] ("Verifone's Br."), ECF No. 471-2.  The Government filed
responsive comments in support of the Remand Results.  *See* Defs.' Resp. to Cmts. on
the [Remand Results] ("Defs.' Resp. Cmts."), ECF No. 479.  The Government also filed
its second motion to correct the record.  Defs.' Second Mot. to Correct the R. ("2nd Mot.
Correct R."), ECF Nos. 466, 466-1.  The court heard oral argument on February 7,
2023.  Docket Entry, ECF No. 488.

For the following reasons, the court sustains *Final List 3* and *Final List 4* as
amended by the Remand Results and grants the Government's second motion to
correct the record.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(B) (2018 & Supp. II
2020), which grants the court "exclusive jurisdiction of any civil action commenced
against the United States . . . that arises out of any law of the United States providing
for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons
other than the raising of revenue."

The APA directs the court to "hold unlawful and set aside agency action, findings,
and conclusions found to be--(A) arbitrary, capricious, an abuse of discretion, or
otherwise not in accordance with law; [or] . . . (C) in excess of statutory . . . authority;
[or] . . . (E) unsupported by substantial evidence."  5 U.S.C. § 706(2).

DISCUSSION

Plaintiffs and *Amici* challenge the Remand Results on two grounds.  They first assert that USTR's Remand Results constitute impermissible *post hoc* reasoning pursuant to *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020).  Next, to the extent that USTR's Remand Results survive *Regents*, Plaintiffs challenge the substantive adequacy of USTR's response to certain comments.  Following disposition of these issues, the court addresses the Government's second motion to correct the record.

## I.      The Rule Against *Post Hoc* Rationalization

### A.      Parties' Contentions

Plaintiffs contend that USTR contravened the court's remand order by undertaking a new review and analysis of the comments.  Pls.' Cmts. at 9–10.  Plaintiffs argue that, instead, judicial precedent limits USTR to elaborating on a "prior response to comments" located somewhere in the administrative record.  *Id.* at 10; *see also id*. at 13–14 (arguing that USTR failed to demonstrate consideration of comments contemporaneous with the issuance of *Final List 3* and *Final List 4* upon which it now seeks to elaborate).  Having failed to do so, Plaintiffs assert that vacatur is merited.  Pls.' Reply Cmts. at 2–4.

The Government contends that Plaintiffs' view of the permissible limits of the remand finds no support in *Regents* or subsequent cases remanding actions for an agency to respond to comments.  Defs.' Resp. Cmts. at 10; *see also id.* at 11–12 (citing *Bloomberg L.P. v. SEC*, 45 F.4th 462, 477 (D.C. Cir. 2022); *Env't Health Trust v. FCC*, 9

F.4th 893, 909, 914 (D.C. Cir. 2021)).  The Government further contends that taking

Plaintiffs' argument to its logical conclusion would require any agency that fails to

address significant comments to undertake a new agency action on remand.  *Id.* at 11.

Instead, the Government maintains that USTR's Remand Results constitute permissible

elaboration on the underlying justifications for the actions taken, namely, "the

President's direction and [the Trade Representative's] predictive judgment that the

tariffs were 'appropriate' within the meaning of the statute."  *Id.* at 12; *see also id.* at 20.

### B.    USTR's Response to Comments is Not Impermissibly *Post Hoc*

The APA requires agencies conducting notice and comment rulemaking to

"incorporate in the rules adopted a concise general statement of their basis and

purpose."  5 U.S.C. § 553(c).  "The basis and purpose statement is inextricably

intertwined with the receipt of comments."  *Action on Smoking & Health v. Civ.*

*Aeronautics Bd.*, 699 F.2d 1209, 1216 (D.C. Cir. 1983) (footnote citation omitted).  An

agency "must respond in a reasoned manner to those [comments] that raise significant

problems."  *City of Waukesha v. EPA*, 320 F.3d 228, 257 (D.C. Cir. 2003) (quotations

and citation omitted).  "Significant comments are those 'which, if true, raise points

relevant to the agency's decision *and which, if adopted, would require a change in an*

*agency's proposed rule*.'"  *City of Portland v. EPA*, 507 F.3d 706, 715 (D.C. Cir. 2007)

(quoting *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35 n.58 (D.C. Cir. 1977)).

The court previously found that "USTR's statements of basis and purpose . . .

indicate why the USTR deemed China's ongoing and retaliatory conduct actionable,"

namely, "China's unfair practices" and "the specific direction of the President."  *In Re*

*Section 301 Cases*, 570 F. Supp. 3d at 1340 (citing *Final List 3*, 83 Fed. Reg. at

47,974–75; *Final List 4*, 84 Fed. Reg. at 43,304–05).  The court further found, however,

that although USTR's notices of proposed rulemaking ("NPRMs")[7] indicated the Trade

Representative's "willingness to consider factors other than the President's direction,"

the contested final actions "do not explain whether or why the President's direction

constituted the only relevant consideration nor do those determinations address the

relationship between significant issues raised in the comments and the President's

direction."  *Id.* at 1341.[8]  In explaining its decision to remand without vacatur, the court

observed that "*Regents* . . . constitutes a warning to agencies regarding the

impermissibility of *post hoc* reasoning as much as it constrains the court's review of

such reasoning provided pursuant to a remand."  *Id.* at 1344 (citing *Regents*, 140 S. Ct.

at 1908).

When "reviewing agency action, a court is ordinarily limited to evaluating the

agency's contemporaneous explanation in light of the existing administrative record."

---

[7] For the NPRMs, see *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Tech. Transfer, Intell. Prop., and Innovation*, 83 Fed. Reg. 33,608 (July 17, 2018) ("*List 3 NPRM*"), and *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Tech. Transfer, Intell. Prop., and Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019) ("*List 4 NPRM*").

[8] *Final List 3* referenced the removal of tariff subheadings in response to comments.  83 Fed. Reg. at 47,975 (noting that USTR, "at the direction of the President, has determined not to include certain tariff subheadings listed in the Annex to the [List 3 NPRM]").  *Final List 4* asserted that "The Trade Representative's determination takes account of the public comments and the testimony from the seven-day public hearing, as well as the advice of the interagency Section 301 committee and appropriate advisory committees."  84 Fed. Reg. at 43,305.

*Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019).  When the grounds invoked

by an agency "are inadequate, a court may remand for the agency" to pursue one of two

options.  *Regents*, 140 S. Ct. at 1907.[9]  Option one permits the agency to provide "a

fuller explanation of the agency's reasoning *at the time of the agency action*."  *Id.*

(quoting *Pension Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990)).  Option one "has

important limitations," such that "[w]hen an agency's initial explanation 'indicate[s] the

determinative reason for the final action taken,' the agency may elaborate later on that

reason (or reasons) but may not provide new ones."  *Id.* at 1908 (quoting *Camp v. Pitts*,

411 U.S. 138, 143 (1973) (per curiam)) (second alteration in original).  Option two

permits an agency to "'deal with the problem afresh' by taking *new* agency action."  *Id.*

(quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947)).  An agency acting in

accordance with option two "is not limited to its prior reasons but must comply with the

procedural requirements for new agency action."  *Id.*

Plaintiffs argue that USTR's response to comments is impermissibly *post hoc*

pursuant to *Regents* insofar as USTR undertook a new review and analysis of the

---

[9] *Regents* concerns the U.S. Department of Homeland Security's ("DHS") rationale for rescinding the program referred to as "Deferred Action for Childhood Arrivals," or "DACA."  140 S. Ct. at 1901.  DHS did not engage in "notice and comment" rulemaking pursuant to 5 U.S.C. § 553(b)–(c).  Instead, DHS attempted to rescind DACA through the issuance of two consecutive executive memoranda.  *Id.* at 1901, 1903–04.  After the D.C. District Court held that the first memorandum, issued by DHS Acting Secretary Elaine C. Duke, was too "conclusory . . . to explain the change in [DHS's] view of DACA's lawfulness," the Acting Secretary's "successor, Secretary Kirstjen M. Nielsen," issued a new memorandum purporting to elaborate on the reasoning provided in Acting Secretary Duke's Memorandum.  *Id.* at 1904.  Despite this characterization, the Court held that "Secretary Nielsen's reasoning bears little relationship to that of her predecessor" and was instead "impermissible post hoc rationalization[]."  *Id.* at 1908–09.

comments on remand and failed to identify analysis of the comments contemporaneous

with the issuance of *Final List 3* and *Final List 4*.  *See, e.g.*, Pls.' Cmts. at 9–11.

USTR's analysis of the comments, Plaintiffs contend, required a new rulemaking.  *See*

Pls.' Reply Cmts. at 1 ("If USTR wishes to assess and address the significant

comments, evaluate the costs of further tariff actions, and then impose the List 3 and

List 4A tariffs going forward, it may take new action.").  Plaintiffs seek to distinguish an

agency's failure to address comments, which they assert can be remedied by further

explanation on remand (i.e., *Regents*' option one), from an agency's failure to analyze

or consider comments, which they assert cannot be remedied without a new rulemaking

(i.e., *Regents*' option two).  Oral Arg. (Feb. 7, 2023) at 59:30–1:00:50 (time stamp from

the recording), *available at* https://www.cit.uscourts.gov/sites/cit/files/020723-21-00052-

3JP.mp3.

  Plaintiffs' distinction is unsupported.  Since *Regents*, as in this case, courts have

ordered remands for agencies to respond to significant comments.  *See, e.g.*,

*Bloomberg*, 45 F.4th at 477–78; *Env't Health*, 9 F.4th at 909, 914; *AT&T Servs., Inc. v.*

*FCC*, 21 F.4th 841, 843, 853 (D.C. Cir. 2021).  Such cases do not distinguish between

failures of explanation and failures of consideration.  *See, e.g.*, *AT&T Servs.*, 21 F.4th at

853 ("The failure to respond to comments is significant only insofar as it demonstrates

that the agency's decision was not based *on a consideration* of the relevant factors.")

(citation omitted) (emphasis added); *see also W. Coal Traffic League v. Surface Transp.*

*Bd.*, 998 F.3d 945, 954 (D.C. Cir. 2021) (likening the failure to respond to comments to

the "fail[ure] to consider an important aspect of the problem") (quoting *Motor Vehicle*

*Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Accordingly, USTR's Remand Results are not impermissibly *post hoc* simply because

USTR analyzed and addressed the comments on remand.  *Cf. FBME Bank Ltd. v.*

*Mnuchin*, 249 F. Supp. 3d 215, 223 (D.D.C. 2017) (reviewing an agency's response to

comments on remand).  Nevertheless, the court must reconcile USTR's response to

comments with *Regents* and the rule against *post hoc* rationalization.

    To begin with, the court remanded the matter for USTR to respond to the

comments it had already received.  *See In Re Section 301 Cases*, 570 F. Supp. 3d at

1338–43.[10]  In discussing the limits of option one, *Regents* cites to an opinion from the

U.S. Court of Appeals for the D.C. Circuit for the proposition that an agency may

provide an "amplified articulation" of a prior "conclusory" rationale.  *Regents*, 140 S. Ct.

at 1908 (quoting *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 5–6 (D.C. Cir. 2006)).  Consistent

with this notion, although USTR's reasons for agreeing or disagreeing with certain

---

[10] In this respect, the underlying case is different from *Regents*.  In the context of this
case, taking new agency action would require USTR to issue new NPRMs, which would
appear to be an inefficient mechanism for responding to comments USTR already
received.  Other courts have likewise grappled with *Regents*' formulation of the rule
against *post hoc* rationalization and its application in circumstances dissimilar from
those before the *Regents* court.  In *Doe v. Lieberman*, 2022 WL 3576211 (D.D.C. Aug.
11, 2022), the D.C. District Court addressed whether an agency's explanation on
remand for an earlier evidentiary determination survived *Regents*' rule against *post hoc*
rationalization.  *Id.* at *1, 5.  The court found that *Regents* did not apply because
although *Regents* cabins an agency's reasoning on remand to its initial determinative
reason(s), there, the agency did not provide a determinative reason for its evidentiary
decision in its initial determination.  *Id.* at *5.  Further, in addressing the plaintiff's
arguments, the court explained that requiring the agency to reconsider the termination
afresh based on a conclusory evidentiary ruling did not make sense "in the context of
evidentiary rulings in agency adjudications."  *Id.* at *6.

comments are more expansive than what it previously offered, USTR does not offer new determinative reasons for its actions.[11]

Since *Regents*, some courts have questioned *Alpharma*'s formulation of the rule; in particular, its apparent focus on the author rather than the timing of the supplemental explanation.  *See Doe*, 2022 WL 3576211, at *5; *United Food and Com. Workers Union, Local No. 663 v. U.S. Dep't of Ag.*, 532 F. Supp. 3d 741, 779 (D. Minn. 2021); *cf. IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 76–77 (2022) (rejecting similar language from a pre-*Alpharma* case).  However, as indicated by the *Regents* court's citation, *Alpharma* remains good law to the extent that it requires any supplemental decision to be prepared by the appropriate decisionmaker and tethered to the original justification for the action.

Moreover, while *Alpharma* does not involve an agency's response to comments,[12] it is analogous to the extent that it discusses judicial review of an agency's

---

[11] In explaining USTR's decision to remove certain critical inputs for manufactured goods from List 3, USTR stated that, "[t]hrough the interagency process the Department of Commerce recommended USTR remove eight tariff subheadings."  Remand Results at 51.  Plaintiffs argue that "[t]his is the first time that detail has been revealed publicly" and that "Commerce's recommendation and underlying reasoning are nowhere in the record."  Pls.' Cmts. at 13.  The confidential administrative record ("CR") index provided to the court indicates that CR-1 constitutes a "Confidential Summary of Confidential Advisory Committee Advice," the production of which is "subject to 19 U.S.C. § 2155(g)."  ECF No. 298 at 4.  Following oral argument on the remand determination, the Government provided a redacted version of CR-1, which was previously included in the public administrative record ("PR") as PR-9057.  *See* Defs.' Notice of Filing Doc. Referenced During Oral Arg., ECF Nos. 489, 489-1.  Even accepting Plaintiffs' premise that this input is newly shared, it does not suggest a new determinative reason for USTR's decision.

[12] *Alpharma* addresses the U.S. Food and Drug Administration's adjudication of a petition to revoke the agency's approval of a generic animal drug.  460 F.3d at 4.

response, on remand, to concerns raised on the record during the adjudication and prior to the final agency action at issue.  *See* 460 F.3d at 5–7.[13]  Here, as in *Alpharma*, USTR's Remand Results provide an "amplified articulation" of the grounds for its actions.  USTR further explained the removal or retention of certain tariff subheadings, its decision to set the level of duties on the specified aggregate level of trade notwithstanding the stated concerns, and its decision to proceed despite the proffered alternatives.  In so doing, USTR responded to significant concerns within the context of China's actionable conduct and the specific direction of the President.  Thus, while USTR provided a fuller explanation of its reasoning, it was "a fuller explanation of [its] reasoning *at the time of the agency action*."  *Regents*, 140 S. Ct. at 1907–08 (quoting *Pension Benefit Guar. Corp.*, 496 U.S. at 654 ).[14]  Without anything new to propose in new NPRMs, the court is not convinced by Plaintiffs' arguments to require USTR to conduct new notice-and-comment rulemakings.

---

[13] This court previously recognized the instructiveness of "judicial precedent from the D.C. Circuit . . . in light of the court's expertise in the area of administrative law."  *In Re Section 301 Cases*, 570 F. Supp. 3d at 1324 n.7.

[14] Plaintiffs cite two cases supporting their view that "courts regularly have held that an agency failed to provide non-conclusory, non-*post hoc* reasoning sufficient to sustain agency action—even after remanding to give the agency a second chance to cure its APA violation."  Pls.' Reply Cmts. at 3 (citing *Comcast Corp. v. FCC*, 579 F.3d 1, 9 (D.C. Cir. 2009); *Tex Tin Corp. v. EPA*, 992 F.2d 353, 355 (D.C. Cir. 1993)).  Neither case is analogous.  In *Comcast*, the D.C. Circuit vacated a rule when the agency had failed to consider important concerns the court raised in prior litigation involving an earlier iteration of the same rule.  579 F.3d at 8–10.  In *Tex Tin*, the court held that an agency impermissibly based its decision on remand "on a new theory."  *Id.* at 355 (citing *Anne Arundel Cty., Md. v. EPA*, 963 F.2d 412, 418 (D.C. Cir.1992)).  As discussed above, USTR did not do so here.

## II.    USTR's Response to Comments

The court previously held that "[h]aving requested comments on a range of issues, USTR had a duty to respond to the comments in a manner that enables the court to understand 'why the agency reacted to them as it did.'"  *In Re Section 301 Cases*, 570 F. Supp. 3d at 1341 (quoting *Auto. Parts & Accessories Ass'n v. Boyd*, 407 F.2d 330, 338 (D.C. Cir. 1968)).  The court now turns to the question whether, through the Remand Results, USTR has fulfilled that requirement.

### A.    Parties' Contentions

Plaintiffs contend that USTR's reliance on Presidential direction to explain its lack of discretion is legally insufficient given the breadth of USTR's request for comments.  Pls.' Cmts. at 12–13; Pls.' Reply Cmts. at 5.  Plaintiffs fault USTR for failing to explain why it agreed with the President's direction or how it arrived at the conclusion that the actions were "appropriate" within the meaning of the statute.  Pls.' Reply Cmts. at 4–5.

Plaintiffs further contend that USTR responded to major policy concerns raised in the comments in an inadequate and conclusory manner.  Pls.' Cmts. at 15–17.  Plaintiffs assert that USTR failed to explain why the benefits of the actions outweighed their costs in terms of economic harm.  *Id.* at 17; Pls.' Reply Cmts. at 7–8.  Plaintiffs also argue that USTR failed to address concerns about the perceived ineffectiveness of the tariffs or proposed alternatives to the increased tariffs.  Pls.' Cmts. at 18–20; Pls.'

Reply Cmts. at 8–9.  *Amici* advance similar arguments.  *See* RLC's Br. at 5–10;

Verifone's Br. at 2–5.[15]

The Government contends that USTR adequately explained the role that

Presidential direction played in its decision-making.  Defs.' Resp. Cmts. at 17–19.  The

Government also argues that the entirety of the Remand Results—not just the final few

pages—reflects USTR's consideration of the potential for disproportionate economic

harm.  *Id.* at 21–22.  The Government further asserts that Plaintiffs' additional

arguments "amount to mere disagreement" with USTR's explanation, *id.* at 22–23, and

USTR was not required to consider each alternative because USTR tailored its NPRMs

specifically to modifying the original section 301 actions, *id.* at 23–24.

### B.    USTR's Response to Comments Meets APA Requirements

The standard that an agency's response to comments must meet "is not

particularly demanding."  *Nat'l Mining Ass'n v. Mine Safety & Health Admin.*, 116 F.3d

520, 549 (D.C. Cir. 1997) (per curiam) (quoting *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186,

197 (D.C. Cir. 1993)).  For "judicial review . . . to be meaningful," the agency's

explanation must enable the court "to see what major issues of policy were ventilated by

the informal proceedings and why the agency reacted to them as it did."  *Auto. Parts &*

*Accessories Ass'n*, 407 F.2d at 338.  The court will "uphold a decision of less than ideal

---

[15] Verifone's arguments appear to digress into complaints about USTR's decisions
regarding specific exclusions.  *See* Verifone's Br. at 6–7 (discussing USTR's decisions
to grant, but not thereafter to reinstate, certain exclusions).  Specific exclusion decisions
are not, however, at issue in this case.

clarity if the agency's path may reasonably be discerned." *Nat'l Mining Ass'n*, 116 F.3d at 549 (quoting *State Farm*, 463 U.S. at 43).  With these principles in mind, the court considers the matters it required USTR to address on remand.

### 1. Presidential Direction

The court previously held that the imposition of List 3 and List 4A duties constituted agency—not Presidential—action.  *In Re Section 301 Cases*, 570 F. Supp. 3d at 1323–26.  The court also recognized, however, that "the President's specific direction, if any, is a statutory consideration for which the agency must account."  *Id.* at 1339.  The court faulted USTR for relying on Presidential direction without explaining "the relationship between significant issues raised in the comments and the President's direction."  *Id.* at 1341.

The Remand Results demonstrate USTR's adherence to the specific direction of the President in terms of the level of duty increase and the aggregate level of trade affected by the actions.  *See* Remand Results at 27–28, 74, 77.  While it is clear from the Remand Results that USTR did not interpret the statute to accord USTR much discretion to deviate from the President's direction, *see id.* at 77–78, USTR also explained that the judgments reflected in the construction of *Final List 3* and *Final List 4A* were its own, *see id.* at 80–81.

USTR explained that "[t]he aggregate level of trade included in the President's directive and reflected in *Final List 3* . . . reflected the need to cover a substantial percentage of U.S. imports from China," *id.* at 80, and that "[t]he Trade Representative determined that covering a substantial percentage of U.S. goods exported from China

was appropriate to obtain the elimination of China's harmful acts, policies, and

practices," *id.* at 81.  Likewise, USTR stated that "*Final List 4* reflected the judgment that

covering essentially all products not covered by previous actions was needed to obtain

the elimination of China's acts, policies and practices."  *Id.*  USTR explained that the

levels of duties imposed reflected its judgment regarding "the appropriate balance" to

strike "between exerting an appropriate amount of pressure on China to eliminate its

harmful practices, while encouraging China to meaningfully engage in negotiations,

against comments suggesting additional duties would result in severe economic harm to

U.S. consumers and industries."  *Id.* at 77.  USTR also explained its exercise of

discretion to determine the tariff subheadings that would be subject to List 3 and List 4A

duties and establish an exclusion process for products subject to List 4A duties.  *See id.*

at 77–78.[16]

Plaintiffs fail to persuade the court that USTR was required to provide additional

explanation regarding its reasons for agreeing with the President that the chosen

actions were "appropriate."  Pls.' Reply Cmts. at 5.  The court discusses USTR's

response to comments raising policy concerns below and considers this explanation

responsive to the question of whether the actions were appropriate.  Moreover, the

court recognizes that USTR's consideration of significant comments must account for

---

[16] While USTR ultimately established an exclusion process for products subject to List 3 duties, *see Procs. for Requests to Exclude Particular Prods. From the Sept. 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Tech. Transfer, Intell. Prop., and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019), it did not do so initially because USTR "had greater flexibility" to exempt products from the outset, Remand Results at 78.

"section 301's statutory purpose to eliminate the burden on U.S. commerce from

China's unfair acts, policies, and practices" and any "specific direction [from] the

President."  *In Re Section 301 Cases*, 570 F. Supp. 3d at 1340.  In remanding *Final List*

*3* and *Final List 4*, the court admonished USTR for its failure to respond to comments

"within the context of the specific direction provided by the President."  *Id.* at 1340–41.

The court did not order USTR to analyze the President's directives.[17]  In contrast to the

conclusory treatment of comments in *Final List 3* and *Final List 4*, the Remand Results

reflect USTR's conclusion that statutory language linking any modification to the specific

direction of the President constrained USTR's ability to depart from that direction and

explained USTR's position vis-à-vis the President's direction.  Nothing more was

required.

### 2.  Harm to the U.S. Economy

Plaintiffs assert that the Remand Results reflect no weighing of the costs of the

actions, identifying such concerns as "increased costs on U.S. businesses," additional

"Chinese retaliation," and impacts on U.S. businesses that export inputs or technology

---

[17] Plaintiffs previously conceded that they do not contest "subjective determination[s] of
what is 'appropriate' (or any other discretionary determination[s])."  Pls.' Mem. in Supp.
of Pls.' Cross-Mot. for J. on the Agency R. and Resp. to Defs.' Mot. to Dismiss/Mot. for
J. on the Agency R. at 51, ECF No. 358; *see also* Oral Arg. (Feb. 1, 2022) at 1:17:50–
1:18:12, *available at* https://www.cit.uscourts.gov/sites/cit/files/020122-21-00052-
3JP.mp3 (during the first hearing on the merits, Plaintiffs explained that they do not
seek to challenge "the dollar amount" of tariffs and that USTR retains "vast discretion"
regarding such determinations).  The court is therefore circumspect in requiring further
explanation from USTR regarding such discretionary matters that are likely not judicially
reviewable.  *Cf. Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986)
(explaining that the political question doctrine precludes judicial review of "policy
choices" committed to the Executive Branch).

to China.  Pls.' Cmts. at 17.[18]  While USTR must explain how it "resolved any significant

problems raised by the comments," it "need not respond to every comment."  *Action on*

*Smoking*, 699 F.2d at 1216.  In the Remand Results, the court readily discerns USTR's

attempts to balance commenters' concerns about economic harm with the specific

direction it had received from the President and the ongoing need to respond to China's

acts, policies and practices burdening U.S. commerce.

In responding to such comments, USTR explained that it "shared the view that

mitigating harm to U.S. consumers was an important consideration in developing and

finalizing lists of products that would be subject to additional duties."  Remand Results

at 82.  USTR pointed to prior tariff actions (i.e., List 1 and List 2) in which USTR sought

to avoid consumer impact.  *Id.*  For List 3, USTR noted that "the selection process"

considered "likely impacts on U.S. consumers, and involved the removal of subheadings

identified by analysts as likely to cause disruptions to the U.S. economy."  *Id.* at 83

(citing *List 3 NPRM*, 83 Fed. Reg. at 33,609).  USTR further noted that concerns about

economic harm prompted USTR "to initially set the duties at 10 percent for three

months."  *Id.* at 77 (citing *Final List 3*, 83 Fed. Reg. at 47,975).

USTR acknowledged that List 4A resulted in additional "duties on essentially all

remaining imports from China, thus necessitating the need for USTR to include

consumer products."  *Id.* at 83.  USTR noted, however, that by segregating certain

---

[18] Plaintiffs also fault USTR for relying on documents that predate the imposition of List
3 and List 4 duties.  Pls.' Cmts. at 16.  USTR did not cite such documents as evidence
of its contemporaneous response to comments.  Rather, USTR cited such documents
as evidence of USTR's ongoing consideration of harm.  *See* Remand Results at 82–84.

goods into List 4B, it "would delay additional duties for products where China's share of imports from the world is 75 percent or greater to 'provide a longer adjustment period.'" *Id.* (quoting *Final List 4*, 84 Fed. Reg. at 43,305).  USTR also pointed to the announcement of an exclusion process as responsive to these concerns.  *Id.* at 84 (citing *Final List 4*, 84 Fed. Reg. at 43,305).

In addition to these broader considerations, USTR's decisions at the subheading level reflect USTR's weighing of economic harm.  *See, e.g.*, Remand Results at 27–28 (discussing USTR's requirement for a "clear showing" of ineffectiveness or harm to remove subheadings from List 3 in order to retain the $250 billion aggregate level of trade directed by the President); *id.* at 31 (weighing costs and benefits of including rare earths and critical minerals and deciding to remove those subheadings); *id.* at 33 (same for U.S.-caught seafood); *id.* at 62–63 (same for child safety seats).

While framing the issue as a procedural failure to explain, Plaintiffs effectively take issue with the conclusions USTR reached.  *See* Pls.' Reply Cmts. at 7 (arguing that "the fundamental point commenters raised was that USTR's proposed cure for China's unfair acts was worse than the disease" and that "[n]o regulation is 'appropriate' if it does significantly more harm than good") (quoting *Michigan v. EPA*, 576 U.S. 743, 752 (2015)).[19]  Mere disagreement with USTR's actions is not a basis for the court to

---

[19] *Michigan* addressed a provision in the Clean Air Act that "instructed EPA to add power plants to [a] program if (but only if) the Agency finds regulation 'appropriate and necessary.'"  *Michigan*, 576 U.S. at 752.  Citing administrative practice when deciding whether to regulate such matters, the *Michigan* Court considered cost "an important aspect of the problem" that EPA had to address in the context of that case.  *Id.* at 752–

overturn them.  *See Rodriguez-Jimenez v. Garland*, 20 F.4th 434, 439 (9th Cir. 2021)

("[W]e cannot overturn the agency's decision based on mere disagreement.").  It is not

the court's role to reweigh the evidence or opine on USTR's (or the President's) policy

choices, such as the appropriate "cure" for China's conduct.  *See Downhole Pipe &*

*Equip., L.P. v. United States*, 776 F.3d 1369, 1376–77 (Fed. Cir. 2015).  As discussed

above, USTR accounted for concerns regarding the potential for economic harm within

the context of the statutory factors it was required to consider and adequately explained

how it did so.[20]

### 3.  Efficacy of the Tariffs

USTR explained that it was not persuaded by "comments which suggested that

negotiations alone could be successful in obtaining the elimination of the harmful

practices without accompanying economic pressure through additional tariffs."  Remand

Results at 86–87.  USTR acknowledged "that previous actions were not sufficient to

encourage China to change its acts, policies, and practices" but nevertheless found

---

53.  The Court acknowledged, however, that "the phrase 'appropriate and necessary' does not [always] encompass cost."  *Id.* at 752.

[20] Although commenters objecting to the tariffs based on economic harm may have been guided by their respective experiences with List 1 and List 2 duties, concerns about the future impact of the List 3 and List 4A duties were, to some extent, speculative.  USTR therefore had a limited record with which to balance such harm against the harm caused by China's ongoing unfair trade practices.  It is also worth noting that the statute accounts for economic harm caused by section 301 tariffs in the context of USTR's four-year review of necessity.  When deciding whether to continue a section 301 action beyond the specified four-year timeframe, the statute requires USTR to consider the effectiveness of the action, alternatives to such action, and "the effects of such actions on the United States economy, including consumers."  19 U.S.C. § 2417(c)(3).

"that more substantial trade actions were needed to encourage negotiations" with China.  *Id.* at 87.  USTR also accounted for concerns of inefficacy in its decisions regarding inclusion or omission of certain subheadings.  *See, e.g.*, *id*. at 29, 33, 34, 55; *cf. List 3 NPRM*, 83 Fed. Reg. at 33,609 (seeking comments on "whether imposing increased duties *on a particular product* would be practicable *or effective* to obtain the elimination of China's acts, policies, and practices") (emphasis added).

Plaintiffs accuse USTR of "deflect[ing]" by contextualizing the choice as one "between 'negotiations alone'" and "placing tariffs on virtually all of Chinese trade."  Pls.' Cmts. at 18.  That is not an accurate summation of USTR's response.  USTR's statements were responsive to commenters seeking to dissuade USTR from imposing *any* increased duties and instead to persuade USTR to adopt other courses of action, including negotiations with China.  *See* Remand Results at 86.

Plaintiffs further argue that USTR effectively admitted that prior section 301 actions were ineffective and still failed to respond to concerns that List 3 and List 4A duties would likewise be ineffective.  Pls.' Cmts. at 19; Pls.' Reply Cmts. at 8.  It is unclear, however, what more USTR could state on this point.  Absent contrary record evidence, USTR was not bound to agree with commenters characterizing tariffs as an ineffective option simply because List 1 and List 2 duties were deemed insufficient.  Section 307(a) authorizes USTR to modify prior actions precisely when they have been ineffective in reducing "the burden or restriction on United States commerce of the denial rights, or of the acts, policies, and practices, that are the subject of such action." 19 U.S.C. § 2417(a)(1)(B).

### 4.  Alternatives to the Tariffs

On remand, USTR pointed, by way of example, to comments suggesting

alternative action under section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337.

Remand Results at 88.  USTR responded to such comments by explaining that section

337 could not address the "broader set of issues" identified as the basis for the

underlying section 301 investigation.  *Id.*  USTR further explained that it "did not intend

to invite comments on alternative measures" because the President directed USTR to

act under sections 301 and 307 of the Trade Act.  *Id.* at 89.

Plaintiffs argue that USTR engaged with just one of many proposed alternatives,

which is insufficient given the invitation for "comments on 'any aspect' of its proposed

actions."  Pls.' Cmts. at 20.  Considering alternatives, Plaintiffs argue, was also

necessary for USTR to determine whether additional action was "appropriate."  *Id.*

As USTR explained, however, it *was* pursuing additional courses of action, such

as initiating a dispute at the World Trade Organization, requesting consultations with

China, and proceeding with negotiations.  *See, e.g.*, Remand Results at 6 n.2, 87.

Moreover, in the NPRMs, USTR did not seek comments generally on how to respond to

China's acts, policies and practices, but instead requested comments on "any aspect *of*

*the proposed supplemental action*," and provided comment topics relevant to such

action.  *List 3 NPRM*, 83 Fed. Reg. at 33,609 (emphasis added); *cf. List 4 NPRM*, 84

Fed. Reg. at 22,565.  Thus, while USTR's request was broad to the extent that it

requested comments on "any aspect" of the proposal, it was also more limited in scope

than Plaintiffs suggest.  Accordingly, USTR adequately explained its disinclination to

consider each alternative.  *Cf. Nat'l Mining Ass'n*, 116 F.3d at 549 (finding adequate an agency's brief dismissal of certain proposed safety standards as "outside the scope of this rulemaking" based on the court's understanding "that the agency was choosing to impose some standards without addressing 'everything that could be thought to pose any sort of problem'") (citation omitted).[21]

In view of the foregoing, the court finds that USTR has complied with the court's remand order and has supplied the necessary explanation supporting the imposition of duties pursuant to *Final List 3* and *Final List 4.*

### III.   Defendants' Second Motion to Correct the Record

The Government moves to correct the record to include several *Federal Register* notices, USTR press releases, and one Presidential memorandum, all marked as Exhibits C through K, respectively.  2nd Mot. Correct R. at 1–2, Exs. C–K.[22]  "Plaintiffs [took] no position on the motion, on the understanding that the Government has forfeited reliance on documents not cited in its previous merits briefing to this Court."  *Id.* at 2.[23]

---

[21] Actions under section 337 rest with the U.S. International Trade Commission, not the Trade Representative.  *See* 19 U.S.C. § 1337(a)(1), (b)(1).  Thus, Plaintiffs' reliance on cases concerning an agency's failure to consider options within its purview is misplaced. *See* Pls.' Reply Cmts. at 8–9 (citing *Spirit Airlines, Inc. v. U.S. Dep't of Trans. and FAA*, 997 F.3d 1247, 1255 (D.C. Cir. 2021); *Chamber of Com. of U.S. v. SEC*, 412 F.3d 133, 145 (D.C. Cir. 2005)).

[22] There were no Exhibits A or B attached to the motion, presumably because two prior documents USTR sought to include in the record were labeled as such.  *See* Defs.' Mot. to Correct the R., Exs. A–B, ECF No. 441.

[23] To the extent that Plaintiffs' position is based on their arguments concerning *post hoc* rationalization, the court disagrees with Plaintiffs' position for the reasons stated above. *Supra*, Discussion Section I.B.

For purposes of APA review, the administrative record consists of "all documents and materials directly or indirectly considered by agency decisionmakers." *Ammex, Inc. v. United States*, 23 CIT 549, 556, 62 F. Supp. 2d 1148, 1156 (1999) (quoting *Thompson v. U. S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989)).  Additionally, CIT Rule 73.3(a)(1) requires an agency to file, *inter alia*, "[a] copy of the contested determination and the findings or report on which such determination was based."

Exhibits C, E, G and H constitute *Federal Register* notices regarding the initial investigation, determination, and actions taken with respect to List 1 and List 2.  2nd Mot. Correct R. at 3, Exs. C, E, G, H.  Exhibit D constitutes a Presidential memorandum issued in conjunction with USTR's section 301 investigation findings.  *Id.* at 3, Ex. D.  Exhibit F is a USTR press release concerning List 1 and List 2.  *Id.* at 3, Ex. F.  These documents all predate USTR's issuance of *Final List 3* and "were indirectly considered."  *Id.* at 4.  Exhibit J is a conforming amendment published in the Federal Register regarding List 3 previously included in the record in an unpublished form as PR 5.  *Id.* at 3, 5, Ex. J.  Inclusion of these documents is appropriate.

Exhibits I and K constitute press releases published a few days prior to USTR's publication of *Final List 3* and *Final List 4*, respectively.  *Id.* at 3, Exs. I, K.  The Government argues that the press releases are properly before the court pursuant to CIT Rule 73.3(a)(1) because they were "issued in conjunction with" *Final List 3* and *Final List 4*.  *Id.* at 4–5.  Consistent with the Government's representations regarding the relationship of these documents to the contested determinations, and their contemporaneous preparation with those determinations, the court finds that the

documents are part of the record and will allow the Government to amend the record accordingly.

Accordingly, the Government's second motion to correct the record will be granted.

**CONCLUSION AND ORDER**

In accordance with the foregoing, it is hereby

**ORDERED** that the tariff actions imposed by the Office of the United States Trade Representative and styled as *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018), and *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 43,304 (Aug. 20, 2019), as amended on remand by Further Explanation of the Final List 3 and Final List 4 Modifications in the Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, Pursuant to Court Remand Order, ECF No. 467, are **SUSTAINED**; and it is further

**ORDERED** that Defendants' second motion to correct the record, ECF No. 466, is **GRANTED**; and it is further

**ORDERED** that, on or before March 27, 2023, the Government shall file updated administrative record indices reflecting corrections granted herein and in Slip Op. 22-32.

The court will enter judgment in *HMTX Indus. LLC v. United States,* No. 20-cv-177, accordingly.

/s/ Mark A. Barnett
Mark A. Barnett, Chief Judge

/s/ Claire R. Kelly
Claire R. Kelly, Judge

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated: March 17, 2023
         New York, New York